**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| BRENDAN J. BERGER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:19-cv-00099-SJD |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | Judge: Hon. Susan J. Dlott |
| EXAMINERS, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION FOR PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Plaintiff, Brendan J. Berger incorporates by reference, Plaintiff's Motion for Preliminary Injunction[1] as if set forth fully herein at length.  Mr. Berger has brought an action against the National Board of Medical Examiners (NBME) for violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, et. seq.   Mr. Berger, an individual with disabilities, has requested appropriate testing accommodations when taking the United States Medical Licensing Exam (USMLE) Step 2 Clinical Knowledge (CK), which is prepared and administered by the NBME. Because Mr. Berger has a disability that affects his reading, the speed at which he reads and processing of information, he needs the accommodation of 100% extended time (also referred to as double extended time) over two days of testing, extra break time and distraction limited testing environment on the USMLE Step 2 CK, in order to best ensure that the results of the USMLE Step 2 CK reflect his aptitude or achievement level and not his disability.

---

[1] All Declarations and Exhibits referenced herein are incorporated by reference and filed along with the Motion for Preliminary Injunction.

Mr. Berger is a bright and talented individual who has struggled throughout his entire education with a learning disability. Since October 2013, Mr. Berger has made three separate requests to Defendant for accommodations on the USMLE pursuant to the ADA and provided the extensive documentation for accommodations.  Despite extensive historical and current documentation substantiating his disability and need for accommodations, Defendant has set up barriers by repeatedly denying his valid requests for testing accommodations. The ADA prohibits entities such as the Defendant from discriminating against people with disabilities in the administration of examinations such as the USMLE Step 2 CK. 42 U.S.C. §12189.

 Without the requested accommodations, Mr. Berger will be deprived of the benefit of testing that accurately reflects his abilities and aptitude; he will lose the benefit of extensive preparation and study for the USMLE Step 2 CK, he will be denied the opportunity to compete with the other medical students on a level playing field. Moreover, Mr. Berger has already taken the USMLE Step 2 CK two times without accommodations and consequently failed both times because of his disabilities. If Mr. Berger takes the exam a third time and fails, he will be dismissed from medical school and will be forever barred from becoming a physician.

Mr. Berger must take the USMLE Step 2 CK no later than August 28, 2019, and because of extreme prejudice resulting in irreparable harm that Mr. Berger will suffer if he is not properly accommodated on the USMLE Step 2 CK, he seeks an order from the court granting his motion to compel the Defendant to provide the requested appropriate accommodations.

## II.      STATEMENT OF FACTS

Mr. Berger is a student in his final year of medical school. He has completed all the required coursework and clinical rotations to graduate. In order for Mr. Berger to obtain his medical licensure and graduate from medical school, he is required to pass several of the USMLE Step exams, namely the USMLE Step 1, USMLE Step 2 Clinical Skills (CS) and

USMLE Step 2 CK. Mr. Berger has passed the USMLE Step 1 and USMLE Step 2 CS. However, he has failed the USMLE Step 2 CK on two prior attempts. He has been preparing to take the USMLE Step 2 CK, which he plans to take in August 2019 in order to be considered for a residency, which will commence in the Summer 2020.

Mr. Berger is affected by a Specific Learning Disorder with impairments in reading and written expression and Attention Deficit Hyperactivity Disorder (ADHD), which substantially impairs the major life activities of reading, spelling, cognitive processing speed, attention and concentration.  On lengthy academic tasks and/or examinations, which are strictly timed, he requires extra time to take the examination. Defendant NBME has on multiple occasions denied Mr. Berger's requests for additional time (100% extended time) while taking the USMLE Step 2 CK, in spite of extensive documentation supporting the request for accommodations. The documentation furnished to Defendant, which supports Mr. Berger's request for accommodations included several evaluations conducted by qualified professionals, educational records, approval of accommodations by the various schools that Mr. Berger attended, approval of accommodations by his medical school, and approval of accommodations by other standardized test agencies. In denying Mr. Berger's requests, NBME flatly ignores the conclusions of experts and professionals who have evaluated Mr. Berger's disability first hand.

A.    **Mr. Berger's History of Disability and Accommodations**

At the start of Mr. Berger's education, learning problems with early literacy, receptive-expressive language, and attention were evident. At the age of six (1992) he was evaluated and a reading (dyslexia) disorder and writing disorder were reported. Declaration of Brendan Berger (Berger Decl. ) ¶ 7 In Mr. Berger's second grade school year, attention and processing speed limitations compounded his learning problems and ADHD was reported. Berger Decl. ¶ 7.

School based intervention for reading and writing were implemented at school in first grade, coupled with additional remedial reading support at Mr. Berger's home. Berger Decl. ¶ 7.

Because Mr. Berger was making limited progress in school coupled with the need for more individualized attention, he was home schooled from second through fourth grade. Berger Decl. ¶ 8. Mr. Berger returned to school in fifth grade, where he attended St. Gabriel Consolidated School. He continued to experience difficulties with oral reading, reading comprehension, writing, attention and focus. His teachers accommodated his impairments by providing him with extra time to complete tests and in-class assignment, he was allowed to take tests in a quiet environment and he was afforded the opportunity to orally explain written test question responses. He also utilized audio books to augment his reading literacy. St. Gabriel Consolidated School provided Mr. Berger with accommodations from fifth through eighth grades. Berger Decl. ¶ 9, Exhibit 1.

In high school, while attending Archbishop Moeller, Mr. Berger continue to experience difficulty with reading and writing. In particular, Mr. Berger experienced difficulty completing school-based tests within the time limits provided. Mr. Berger was referred to an educational specialist to conduct an evaluation. Based on the evaluation report, Archbishop Moeller developed an Assistance Program that provided accommodations, which included extended time on assessments to be administered in a separate area, utilization of audio tapes of novels and direct instruction to develop independent reading and writing strategies. Berger Decl. ¶ 10-12, Exhibit 2. During high school, Mr. Berger applied to the College Board for accommodations on the SAT exams. In November 2003, the College Board approved and implemented accommodations including 50% extended time on the SAT exams. Berger Decl. ¶ 14, Exhibit 4.

Mr. Berger commence his undergraduate matriculation at the University of Cincinnati (UC). In order to address his impairments, he applied for accommodations with UC's

4

Department of Student Services, which approve several accommodations including, double extended time for testing, use of a proof reader and access to books in digital/audio format. These accommodations were implemented throughout Mr. Berger's matriculation at UC. Berger Decl. ¶ 16, Exhibit 9 Mr. Berger received a Bachelor of Arts and a Bachelor of Science from UC in June 2009. During the 2009-2010 Spring quarter, Mr. Berger completed post-baccalaureate science courses at UC, where he continued to receive accommodations, which included double extended time on exams. Berger Decl. ¶ 17-18.

In the Fall 2009, Mr. Berger planned to take the MCAT, which is a standardized exam required for entry into many medical schools. Mr. Berger was not approved for accommodations on the MCAT. Prior to taking the MCAT, Mr. Berger studied extensively. While taking the MCAT, he utilized various compensatory strategies in an attempt to maximize the amount of questions he answered. Nevertheless, he was unable to complete most sections of the MCAT and had to guess on many of the questions. Consequently, because Mr. Berger did not receive appropriate accommodations on the MCAT, he was unable to demonstrate his true skills and knowledge. Berger Decl. ¶ 19.

In May 2011, Mr. Berger commence attending American University of the Caribbean School of Medicine (AUC). Mr. Berger furnished the most current documentation supporting his request for accommodations. AUC approved for Mr. Berger to receive 50% extended time on all examinations and quizzes, which included 50% extended time and a distraction reduce environment. Berger Decl. ¶ 20-21, Exhibit 10. While the documentation furnished to AUC supported 100% extended time and he received 100% extended time at UC, on information and belief, AUC did not approve 100% extended time because it lacked the resources to offer any student 100% extended time. Berger Decl. ¶ 21.

Over the course of Mr. Berger's post-secondary education, he has received several psychoeducational evaluations conducted by qualified professionals licensed to administer such evaluations. Specifically, Cheryl M. Beach, Ph.D. evaluated Mr. Berger in June 2010, July 2013, December 2014 and July 2017. Dr. Beach's evaluation reports indicated that Mr. Berger has a Reading Disorder, a Disorder of Written Expression and ADHD. She recommended accommodations, which included 100% extended time, stop-the-clock rest breaks, testing over multiple days and testing in a distraction limited environment. Exhibits 5-8.

B.        **The United States Medical Licensing Exam**

The USMLE is a three step (Step 1, Step 2 CK, Step 2 CS and Step 3) examination, the successful completion of which is required for medical licensure in the United States. (see https://usmle.org/) The USMLE Step 2 CK examination is a computerized examination, which consists of questions presented in multiple choice formats.  The USMLE Step 2 CK has approximately 318 multiple choice test items, divided into eight 60-minute blocks with no more than 40 questions in each block, administered in one nine-hour testing session. (see, https://usmle.org/step-2-ck/) Mr. Berger must pass the USMLE Step 2 CK in order to maintain his eligibility to remain in medical school.  Furthermore, passing the USMLE Step 2 CK is required to graduate from AUC, to enter into a residency program and to ultimately obtain medical licensure.  Furthermore, a failed attempt on the USMLE Step 2 CK will result in Mr. Berger's dismissal from AUC. Berger Decl. ¶ 3, 45.

C.        **Defendant's Denials of Mr. Berger's Request for Accommodations**

On or about October 3, 2013, Mr. Berger submitted his request for accommodations on the USMLE Step 1. Mr. Berger provided NBME with hundreds of pages of documents, which included several psycho-educational evaluation reports prepared by psychologists, school records from his primary, secondary and post-secondary education. The foregoing documentation

demonstrated that several qualified professionals who evaluated Mr. Berger at different times, recommended accommodations, including extended time on tests and standardized examinations and that he previously received extended time on exams in grade school, middle school, high school, college and medical school and on the College Board examinations. Berger Decl. ¶ 23 By letter dated December 23, 2013, (80 days after the request) Defendant NBME informed Mr. Berger that his request for accommodations for the USMLE Step 1 was denied and that no accommodations were approved. Berger Decl. ¶ 24

Mr. Berger made an extraordinary effort over a five-month period studying for the USMLE Step 1. He sat for the USMLE Step 1 on March 28, 2014. Due to Mr. Berger's disabilities, he was unable to complete a substantial portion of the exam causing him to guess answers or rush through many of the exams reading vignettes or questions. Despite the difficulty Mr. Berger encountered completing the USMLE Step 1 exam, he narrowly passed the exam with a score of 198 (192 was set as the passing score) Berger Decl. ¶ 25-27.

On or about March 18, 2015, Mr. Berger submitted his request for accommodations on the USMLE Step 2 CK. In addition, to the prior documentation furnished to the NBME, he also provided additional documentation from Dr. Beach and AUC supporting his request for accommodations. NBME unreasonably delayed its decision and by letter dated July 24, 2015, (128 days after the request) Defendant NBME informed Mr. Berger that his request for accommodations for the USMLE Step 2 CK was denied and that no accommodations were approved. Berger Decl. ¶ 28.

On or about February 24, 2018, Mr. Berger submitted a third request for accommodations on the USMLE Step 2 CK. Mr. Berger's request for accommodations included 100% extended time over two days of testing, extra break time and distraction limited testing environment. The documentation furnished to NBME included but was not limited to Dr. Beach's various reports

dating back to 2010, records concerning accommodations implemented from his middle school, high school, college and medical school and documentation from the College Board approving accommodations for the SAT. Berger Decl. ¶ 30, See Exhibits 1, 2, 4, 5, 6, 7, 8, 9, 10. By letter dated May 27, 2018 (92 days the request) Defendant NBME, for the third time, denied Mr. Berger's request for accommodations. Berger Decl. ¶ 31, Exhibit 11. In addition to NBME's discriminatory denials (as discussed below), NBME's unreasonable delays in responding to Mr. Berger's requests violated the ADA and are further examples of its discriminatory conduct.[2]

### D. Mr. Berger's Experience Taking the USMLE Step 2 CK

While Mr. Berger has been preparing extensively for many hours each day over several months, as he has done with other timed standardized examinations, he has found that due to his deficits in reading, thinking, concentrating, studying and processing information, he is unable to complete the examination questions under standard timed conditions. Berger Decl. ¶ 25-27, 29, 32-37. The construct and timing of the USMLE Step 2 CK creates challenges and exposes his substantial impairments of major life activities to an extreme that he has not experienced with other standardized examinations. Mr. Berger has been unable to complete a substantial portion of the USMLE Step 2 CK on his prior attempts to take the exam. Accordingly, in order to demonstrate his true knowledge and achievement level, he needs extended time on the USMLE Step 2 CK. Berger Decl. ¶ 38.

On April 25, 2017, Mr. Berger sat for the USMLE Step 2 CK without any provisions for accommodations after NBME rejected his request for accommodations. Due to Mr. Berger's

---

[2] The ADA's regulations require that a testing entity respond to a request for accommodations in a timely manner (28 C.F.R. §36.309(b)(1)(vi)). The Department of Justice has further stated that a testing entity's failure to act in a timely manner, resulting in an extended delay constitutes discrimination.
(see, https://www.ada.gov/regs2014/testing_accommodations.html).

disabilities, he was unable to complete the exam causing him to guess answers or rush through many of the exams reading vignettes or questions. Berger Decl. ¶ 29. Consequently, Mr. Berger did not pass the April 25, 2017 administration of the USMLE Step 2 CK, receiving a score of 151 with a passing score set at 209. Berger Decl. ¶ 29.

Mr. Berger sat for the USMLE Step 2 CK for the second time on August 31, 2018. Due to Mr. Berger's disabilities, he was unable to complete more than forty percent of the exam causing him to guess answers or rush through many of the exams reading vignettes or questions. In fact, Mr. Berger guessed the same answer letter ("C") more than forty percent of the time on the August 31, 2018 exam. For the second time, Mr. Berger did not pass the August 31, 2018 administration of USMLE Step 2 CK, receiving a score of 166 with a passing score set at 209. Ironically, the USMLE Program, which is sponsored by Defendant, notified Mr. Berger that his responses for August 31 administration of the USMLE Step 2 CK were considered anomalous and that a hold was being placed on his USMLE interactions. The anomalous responses identified by the USMLE Program were that Mr. Berger selected one letter option (i.e. "C") more than 44% of the time. Berger Decl. ¶ 32-39

## III.    ARGUMENT

### A.    Plaintiff Meets the Standards for Preliminary Injunction

The ADA expressly authorizes injunctive relief as appropriate to remedy acts of discrimination against people with disabilities. *See* 42 U.S.C. § 12188(a)(1).[3]  In deciding whether to issue a preliminary injunction, a court must consider (1) the likelihood that plaintiff will succeed on the merits (2) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (3) that granting preliminary relief will not result in even greater harm to others, and (4) the

---

[3] Specifically, the ADA provides, "[t]he remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of section 12183 of this title." 42 U.S.C. § 12188(a)(1).

public interest favors such relief. *Hunter v Hamilton County Board of Elections,* 635 F.3d. 219, 233 (6th Cir. 2011) No one element is determinative of the outcome and the Court must engage in a balance of all the elements. *Welch v. Brown,* 551 F. App'x 804, 808 (6th Cir. 2014) . As will be discussed below, Plaintiff satisfies all four factors.

### B. Plaintiff Has A Reasonable Likelihood Of Success On The Merit

#### 1. Legal Standard

Title III of the ADA requires private entities, like the NBME that administer standardized examinations such as the USMLE Step 2 CK, do so in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. §12189. The purpose of the ADA is to guarantee that those with disabilities are not disadvantaged and "to place those with disabilities on equal footing" with others. *Rush v. National Board of Medical Examiners*, 268 F.Supp. 2d 673 (N.D. Texas 2003); *Agranoff v. Law School Admission Council*, 97 F.Supp.2d. 86 (D. Mass 1999). The regulations implemented in accordance with the ADA provide that an examination is administered to best ensure that, "the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's [disability]" 28 C.F.R. §36.309(b)(1)(i). *See Enyart v. Nat'l Conf. of Bar Exam., Inc.*, 630 F.3d 115 (9th Cir. 2011); *Bonnette v. District of Columbia Court of Appeals*, 796 F.Supp.2d 164 (D.D.C. 2011); *Jones v. National Conference of Bar Examiners,* 801 F.Supp.2d 270 (D. Vt. 2011). One possible modification to an examination, such as the USMLE Step 2 CK, is to "change the length of time permitted for completion of the examination." 29 C.F.R. § 36.309(b)(2). In fact, extended time is an accommodation that the NBME offers to test-takers. (see https://www.nbme.org/students/accomodations.html) Title III of the ADA also prohibits discrimination by testing entities, such as the NBME, on the basis of disability. Such an entity

engages in an impermissible act of discrimination when it fails to provide "reasonable accommodations to known physical or mental limitations" in connection with testing. 42 U.S.C. § 12112(b)(5)(A).

### 2. Mr. Berger Is A Person With Disabilities Under the ADA

An individual is disabled within the meaning of the ADA if that individual is affected by "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2)(A). Mr. Berger's evaluation reports reflect that since his early childhood, he has been diagnosed with a Specific Learning Disorder in Reading and Writing and ADHD. Mr. Berger is substantially impaired in the major life activities of reading, spelling, writing, thinking, cognitive processing speed, attention, and concentration, which individually and collectively impair his ability to take the USMLE Step 2 CK under standard timed conditions. "Major life activities" includes "learning, reading, concentrating [and] thinking 28 C.F.R. §36.105(c)(1)(i). The ADA's rules of construction "are intended to provide for more generous coverage." 28 C.F.R. §36.105(d)(2)(i) While the list of diagnoses that are identified in the ADA are not meant to be an exhaustive list of all disabilities, the ADA also expressly provides that a disability includes impairments such as specific learning disabilities, dyslexia and ADHD. 28 C.F.R. §36.105(b)(1)(ii) and 28 C.F.R. §36.105(b)(2). Accordingly, the ADA expressly asserts that one with a specific learning disability and/or ADHD is entitled to protection under the Act.

The term "substantially limits" is to be construed broadly in favor of expansive coverage. Accordingly, "substantially limits" is not meant to be a demanding standard. 28 C.F.R. §36.105(d)(1)(i). The ADA regulations provide that in determining whether an individual is substantially limited, it may be useful to consider, as compared to most people in the general population, the condition, manner and duration in which the person performs the major life

activity. 28 C.F.R. 36.105(d)(3)(i) Furthermore, when considering the condition, manner or duration, facts such as "the difficulty, effort or time required to perform a major life activity" may be considered when determining whether an individual's impairment substantially limits a major activity."

The documentation provided herein paints a very clear picture of the difficulties that Mr. Berger has encountered as a result of his impairments from his early years in elementary school through the present. In early elementary school he was identified with both reading impairments and ADHD. He received individualized and specialized instruction for these conditions. He has had multiple evaluation conducted by several evaluators, which have concluded that he is a person with disabilities and further recommended that he receive accommodations including extended time on exams. Furthermore, he has received accommodations including extended time throughout his primary, secondary, post-secondary and medical school education and he has been approved for extended time on standardized exams.

The ADA effectively mandates that NBME provide accommodations based on the recommendations from professionals, such as Dr. Beach, who has provided first hand evaluations of Mr. Berger on several occasions over several years. The ADA's regulatory guidance provides that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modifications, accommodation, or aid requested." [4] See 28 C.F.R.

---

[4] "It remains the Department's view that, when testing entities receive documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modification, accommodation, or aid requested, *they shall generally accept such documentation and provide the accommodation....* The Department's intention in using th[e] term [individualized assessment] is to ensure that documentation provided on behalf of a testing candidate is not only provided by a qualified professional, but also reflects that the qualified professional has individually and personally evaluated the candidate as opposed to simply considering scores from a review of documents. *This is particularly important in the learning disabilities context, where proper diagnosis requires face-to-face evaluation.*" 28 C.F.R. Part 36. (Emphasis added.)

pt. 36, app. A, at 782-784. The guidance further explains that, "[r]eports from experts who have personal familiarity with the candidates **should take precedence over those from, for example, reviewers for testing agencies**, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." (Emphasis added) 28 C.F.R. pt. 36, app. A, at 784. *See also D'Amico v. N.Y. State Bd. Of Law* Examiners, 813 F. Supp. 217 (W.D.N.Y. 1993) Dr. Beach conducted several evaluations of Mr. Berger, which included her own observations and administration of various assessment. Based on these evaluations she reported that Mr. Berger is a person with disabilities and recommended several accommodations including 100% extended time. Dr. Beach's recommendations under the regulatory guidance is to be given precedent's over the opinions of NBME's evaluators and consultants.

Moreover, pursuant to the ADA, Mr. Berger's use of accommodations during his primary, secondary and post-secondary education are to be accorded considerable weight when making accommodation determinations. The ADA regulations provides in pertinent part:

> When considering requests for modifications, accommodations, or auxiliary aids or services, the **entity gives considerable weight** to documentation **of past modifications, accommodations**, or auxiliary aids or services **received in similar testing situations**, as well as such **modifications, accommodations**, or related aids and services provided in response to an Individualized Education Program (IEP) provided under the Individuals with Disabilities Education Act or a **plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973**, as amended (often referred to as a Section 504 Plan). 28 C.F.R. §36.309(b)(1)(v). (Emphasis added)

As noted above, Mr. Berger has received extended time throughout his education pursuant to formalized plans and on other standardized exams. Mr. Berger's history of accommodations is to be accorded considerable weight and is not to be ignored or discredited by the NBME.

The accommodation of extended time ameliorates the nature of Mr. Berger's impairments including but not limited to slow and dysfluent reading, impaired reading comprehension, slow

processing speed and diminished concentration .The significant impairments individually and collectively create a barrier that interferes with Mr. Berger's ability to attend to and read through lengthy reading passages such as the passage-based clinical case presentations found on the USMLE Step 2 CK exams. As noted above, Mr. Berger's experience in taking the USMLE Step 2 CK reflects that due to impairments, he was unable to answer nearly half the questions on the exams, resulting in two failures. The inability to complete substantial portions of the USMLE Step 2 CK is tantamount to a denial of access to the exam. Moreover, if Mr. Berger is unable to complete the reading vignettes on the USMLE Step 2 CK due to his impairments, AUC and state-licensing boards would not be in a position to make a proper conclusion about his licensure. As noted by two consultants frequently hired by several testing entities, "[w]ithout accommodations, then, we are left with inaccurate inferences about a student's skill levels, threatening the appropriateness of any decisions that we make regarding that student." Lovett, B.J., Lewandowski, L.J., *Testing Accommodations For Student With Disabilities: Research Based Practice.*, American Psychological Association, 2015 p. 18. Accordingly, to avoid improper conclusions about Mr. Berger's competency and licensure, the NBME must approve his request for extended time.

NBME's denial (Exhibit 11) primarily focuses on the outcome (i.e. scores) on his unaccommodated MCAT and his passing of the USMLE Step 1 as the basis for determining that Mr. Berger does not have a disability. This determination is contrary to the express guidance issued by the Department of Justice in its implementation of the regulations under Title III of the ADA. The Department of Justice expressly rejected this practice of relying upon grades and test scores as a determining factor of whether not a disability exists. The Department of Justice has declared that testing performance has limited relevance and value with respect to disproving disability. The Department of Justice's commentary to the regulations provides:

> In addition, the Department does not agree with the assertions made by testing and educational entities that evidence of testing and grades is objective and, therefore, should be weighted more heavily, while evidence of self-mitigating measures, informal accommodations, or recently provided accommodations or modifications is inherently subjective and should be afforded less consideration. Congress's discussion of the relevance of testing outcomes and grades clearly indicates that it did not consider them definitive evidence of the existence or nonexistence of a disability. While tests and grades typically are numerical measures of performance, the capacity to quantify them does not make them inherently more valuable with respect to proving or disproving disability. 81 Fed. Reg. 53237 (August 11, 2016)

Accordingly, NBME's focus on grades and outcomes on a standardized test has little or no relevance when making accommodation determinations. Such analysis contravenes the Congressional intent when it passed the ADA. NBME's scrutiny in this matter represents the type of conduct that Congress targeted and sought to end when it passed the ADA Amendment Act.  As noted in the Congressional Record:

> Historically, certain individuals with learning disabilities seeking accommodations in higher education – including high stakes exams-have seen their access to testing accommodations severely undercut by testing companies not willing to consider and support that learning disabilities are neurologically based, lifelong disabilities that may exist in students with high academic achievement because the individual has been able to cope and mitigate the negative impact while simultaneously being substantially limited in one or more life activities.

2 Cong.Rec. 8296 (Sept. 17, 2008). Furthermore, Courts have held that comparing outcomes is not useful in determining whether one is substantially limited in the major life activity at issue.  In *Bartlett v. New York St. Bd. Of Law Exam'rs,* 2001 U.S. Dist. LEXIS 11926 (S.D.N.Y. Aug. 15, 2001) Judge (now Justice) Sotomayor notes:

> A definition of disability based on outcomes alone, particularly in the context of learning disabilities, would prevent the court from making a finding of disability in the case of any individual like [Plaintiff] who is extremely bright and hardworking, and who uses alternative routes to achieve academic success.

*Bartlett,* 2001 U.S. Dist. LEXIS 11926 at *122.

### C.    Plaintiff Will Suffer Irreparable Harm
###        If The Injunction Is Not Granted

Courts have presumed irreparable harm when there was a violation of the ADA, since the statute's goals "include assuring that all individuals with disabilities enjoy 'equality of opportunity, full participation, independent living, and economic self-sufficiency.'" *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1084 (N.D. Cal. 1997) (quoting 42 U.S.C. § 12101). Consequently, "[i]njuries to individual dignity and deprivations of civil rights constitute irreparable injury." Id.; see also, e.g., *Burriola v. Greater Toledo YMCA*, 133 F. Supp. 2d 1034, 1040 (N.D. Ohio 2001) (holding that there is irreparable harm when a person is discriminated against on the basis of disability). Courts also view as irreparable injury a person's psychological harm in not being able to pursue his chosen profession. In *Enyart v. Nat'l Conf. of Bar Exam., Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011), the Ninth Circuit affirmed the grant of a preliminary injunction requiring bar exam administrators to provide accommodations for a blind test-taker, explaining that he had "demonstrated irreparable harm in the form of the loss of opportunity to pursue her chosen profession." Id. at 1165. Furthermore, irreparable harm occurs when a disabled person is barred from participating in a normal life activity by virtue of ongoing discrimination related to her disability. *See D'Amico,* 813 F. Supp. at 220 (finding irreparable harm for failure to make accommodations on bar exam); *See also*, *Agranoff v. Law Sch. Admission Council, Inc.,* 97 F. Supp. 2d 86 (D. Mass 1999) (granted preliminary injunction finding irreparable harm for failure to make accommodations on the Law School Admission Test).   Accordingly, Mr. Berger will be irreparably harmed unless this Court issues a preliminary injunction.

The USMLE Step 2 CK is not merely an exam, it is the gatekeeper to completing medical school, qualifying for a residency program, seeking medical licensure and ultimately practicing

medicine. In Mr. Berger's case, if he fails the USMLE Step 2 CK a third time, he will be

dismissed from AUC and will effectively be barred from earning his medical degree.

Accordingly, if Mr. Berger does not take the USMLE Step 2 CK by the end of August 2019 with

accommodations, the USMLE Step 2 CK will effectively become the ultimate barrier to the

medical profession because the resulting score will not "best ensure" that the exam results will

reflect his true ability or achievement level. Rather, his score will reflect the substantial impact

of his disability. *See* 28 C.F.R. §36.309(b)(1)(i). *See Jones v. National Conference of Bar*

*Examiners,* 801 F.Supp.2d 270, 286-288 (D. Vt. 2011) Additionally, if he does not receive

appropriate and reasonable accommodations, he will be placed at a disadvantage of competing

for quality residency positions. NBME's refusal to provide appropriate accommodations places

Mr. Berger at a disadvantage and may end his medical education and career in which he has

invested considerable time and money. This immediate and actual harm cannot be repaired

absent preliminary injunctive relief. Moreover, as noted above, no other remedy at law is

available in that the only relief available under the ADA is injunctive relief.[5] Courts have granted

preliminary injunctive relief against testing agencies under similar circumstances. See e.g., *Jones*

*v. National Conference of Bar Examiners,* 801 F.Supp.2d 270, 286-288 (finding irreparable harm

if Plaintiff is required to take a "high stakes" exam in discriminatory circumstances); *Enyart v.*

*Nat'l Conf. of Bar Exam., Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) (finding irreparable harm in

the form of loss of pursuing chosen profession); *Bonnette v. District of Columbia Court of*

*Appeals*, 796 F.Supp.2d 164, 186-187 (D.D.C. 2011) (irreparable harm found for delay in

---

[5] Section 12188(a)(1) provides, "the remedies and procedures set forth in section 2000a-3(a) are the remedies and procedures of this subchapter." 42 U.S.C. 2000a-3(a) provides: "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved." See also, *Barbosa v. Amer. Osteopathic Bd. Of Surgery*, 2008 U.S.Dist. LEXIS 51457 (S.D. OH May 23, 2008) [dismissing claims for monetary damages]; *Powell v. Nat'l Bd. Of Med. Examiners* 364 F.3d 79, 86 (2d Cir. 2004) (holding that "a private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages.")

practicing profession); *Agranoff v. Law School Admission Council, Inc.*, 97 F. Supp. 2d 86 (Mass. 1999); *Rush v. National BD. Of Medical Examiners,* 268 F. Supp.2d 673 (N.D. Tx. 2003). Furthermore, if Plaintiff is not permitted to take the USMLE Step 2 CK with appropriate accommodations by the end of August, he will be irreparably harmed because he will lose the extensive time he has invested in preparation for the exam. See, *Agranoff*, 97 F.Supp.2d at 88 (found irreparable harm because of loss of time and effort spent in preparatory course and with tutor for the LSAT).

### D.  The Equities Weigh In Favor of Granting The Preliminary Injunction

The NBME's denial of Mr. Berger's accommodation request denies him the opportunity to take the USMLE Step 2 CK in a non-discriminatory manner and on equal footing with non-disabled test-takers, in violation of federal law, and constitutes an irreparable injury, which would be mitigated by the issuance of a preliminary injunction.  By contrast, the harm that an injunction would cause the NBME or others is negligible.

Further, the issuance of an injunction providing Mr. Berger with his requested accommodation will not affect other USMLE Step 2 CK test takers. The nature of the appropriate accommodation requested by Mr. Berger merely places him on equal footing with non-disabled test takers, and does not provide him with an unfair advantage on the exam. *D'Amico,* 813 F.Supp. at 221 (purpose of the ADA "is to place those with disabilities on an equal footing and not to give them an unfair advantage"). Furthermore, it has been held that the threatened injury to the student outweighs any damage that granting the preliminary injunction might cause to the NBME or other licensing entities or to the public. See e.g., *Rush v. National Board of Medical Examiners*, 268 F.Supp. 2d 673, 679 (N.D. Texas 2003).

NBME approves 100% extended time on examinations for other test takers. See, e.g., *Doe v. National Board Of Medical Examiners*, 199 F.3d 146, 150 (3d Cir. 1999) (stating that

NBME provided 100% extended time for test applicant even though he requested only 50% extended time); *Mahmood v. National Board of Medical Examiners*, Civ. A. No. 12-1544, 2013 U.S. Dist. LEXIS 19811, at *8-*9 (E.D. Pa. Feb.14, 2013) (noting NBME has granted 100% extended time). NBME will suffer no harm if it grants Mr. Berger 100% extended time on his examination, in accordance with its policy of providing extra time for students with disabilities.

While NBME will suffer no harm if it grants him 100% extended time, there is a likelihood that Mr. Berger will fail the USMLE Step 2 CK, based on his past performance, if he is not afforded 100% extended time. This will result in a dismissal from medical school and further pursuing his medical degree and leave Mr. Berger in serious debt associated with his medical school tuition and expenses. For these reasons, NBME's refusal to grant the extended time accommodation is outweighed by the significant harm that Mr. Berger will experience.

### E.  Granting an Injunction Will Advance the Public Interest

The ADA was enacted to serve the strong public interest to "elimin[ate] discrimination against people with disabilities." 42 U.S.C. §12101(b)(1).  In the context of preliminary injunctions, courts have found that "[t]he public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA." *Jones v. City of Monroe, MI,* 341 F.3d 474, 490 (6th Cir. 2003); see also, *Agranoff v. Law School Admission Council, Inc.*, 97 F. Supp. 2d 86, 88 (Mass. 1999)("court has an obvious public interest in providing those with disabilities equal footing").  Furthermore, the policy considerations embodied in the ADA are made explicit in the findings and purpose of the Act.  Specifically, the Act provides, "individuals with disabilities continually encounter various forms of discrimination" which includes "the failure to make modifications to existing facilities and practices" and "exclusionary qualification standards and criteria." 42 U.S.C. §12101(a)(5).

In the context of testing accommodations, Congress explained that it enacted 42 U.S.C. § 12189 "to assure that persons with disabilities are not foreclosed from educational, professional

or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation." *Rawdin v. American Bd. Of Pediatrics*, 582 F. App'x 114, 118 (quoting H.R. Rep. No. 101-485(III), at 68-69 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 491-92). For these reasons, granting a preliminary injunction would further the public interest in eradicating discrimination against individuals with a disability. Accordingly, granting the injunctive relief requested by Plaintiff is consistent with the anti-discrimination mandate of the ADA and therefore serves the public interest.

## IV.     CONCLUSION

For the foregoing reasons, Mr. Berger requests that his Motion be granted and that the Court issue a preliminary injunction against Defendant compelling that Defendant to provide appropriate accommodations to Mr. Berger to include 100% extended time over two days of testing, extra break time and distraction limited testing environment.

Respectfully submitted

/s/ Charles Weiner_____          /s/ August T. Janszen_____
Charles Weiner, Esquire                       August T. Janszen (0062394)
LAW OFFICE OF CHARLES WEINER                  THE JANSZEN LAW FIRM
Cambria Corporate Center                      4750 Ashwood Drive, Suite 201
501 Cambria Avenue                            Cincinnati, OH 45241
Bensalem, PA 19020                            Tel: (513) 326-9065
Tel:  (267) 685-6311                          Fax: (513) 326-9066
Fax:  (215) 604-1507                          atjanszen@janszenlaw.com
charles@charlesweinerlaw.com

*Attorneys for Plaintiff, Brendan Berger*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Courts using the Court's CM/ECF system which will send notification of such filing to the counsel of record on this 3rd day of July, 2019.

By: /s/ August T. Janszen_____