IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BRENDAN J. BERGER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:19-cv-00099-SJD |
| | : | |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | : | Judge: Hon. Susan J. Dlott |
| | : | |
| | : | |
| Defendant. | : | |

**DECLARATION OF BRENDAN J. BERGER IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Brendan J. Berger, submit this declaration based upon my personal knowledge. If called upon to testify, I can and will testify truthfully and accurately to the facts contained herein.

1. I am currently an enrolled student at American University of the Caribbean College of Medicine (AUC). I completed my course work on April 29, 2016 and have completed all clinical rotation requirements.

2. The only remaining requirements for me to obtain my medical doctor degree from AUC is to pass the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (Step 2 CK).

3. I must pass the USMLE Step 2 CK in order to maintain my eligibility to remain in medical school. Furthermore, passing the USMLE Step 2 CK is required to graduate from AUC, to enter into a residency program and to ultimately obtain medical licensure. Furthermore, a failed attempt on the USMLE Step 2 CK will result in my dismissal from AUC.

1

4.	I am a person with disabilities pursuant to the Americans With Disabilities Act (ADA) and Section 504 or the Rehabilitation Act of 1973 (Section 504) and have been recognized as such by virtue of being issued formal written accommodations by the University of Cincinnati, AUC and the College Board.

5.	I have a documented history from kindergarten through the present of having disabilities that impair the major life activities of reading, learning, cognitive processing and test taking.

6.	I have been diagnosed with Specific Learning Disorder with impairments in reading and writing and with Attention Deficit Hyperactivity Disorder (ADHD). The notable manifestations of these disorders include, but are not limited, to poor reading fluency (i.e. slow reading) and delayed processing of written information. I have been evaluated for these conditions several times over the course of my life starting in second grade.

7.	At the age of six (1992), I was evaluated and a reading (dyslexia) disorder and writing disorder were reported. In my second grade school year (1994), attention and processing speed limitations compounded my learning problems and ADHD was reported. School based intervention for reading and writing were implemented at my school in first grade, coupled with additional remedial reading support that was arranged by my parents at home.

8.	Because I was making limited progress in school and my parents felt I needed more individualized attention than the school was able to provide, my mother home schooled me from second through fourth grade.

9.	In fifth grade, I returned to school where I attended St. Gabriel Consolidated School. During this time, I continued to experience difficulties with oral reading, reading comprehension, writing, attention and focus. My teachers accommodated these impairments by

providing me with extra time to complete tests and in-class assignments. I was also allowed to take tests in a quiet environment and I was afforded the opportunity to orally explain written test question responses when I encountered difficulty with providing answers that required written explanations. I also utilized audio books when available, to assist me when reading. St. Gabriel Consolidated School provided me with these foregoing accommodations during my entire matriculation from fifth through eighth grades. Proof of St. Gabriel Consolidated School's Accommodations is documented in a letter dated May 28, 2010 and annexed as Exhibit 1.

10. In high school, while attending Archbishop Moeller, I continued to experience difficulty with reading and writing. In particular, I experienced difficulty completing school-based tests within the time limits provided. I was always the last one in my class to complete tests and needed to either stay after class or come back after school to complete a test or assignment.

11. Because of the continuing difficulties and challenges that I encountered in high school, I was referred to an educational specialist to conduct a psychoeducational evaluation.

12. Based on the psychoeducational report coupled with teachers' feedback, Archbishop Moeller developed an Assistance Program that provided accommodations, which included extended time on tests to be administered in a separate area, utilization of audio tapes of novels and direct instruction to develop independent reading and writing strategies. Documentation of Archbishop Moeller's Assistance Program is set forth in a letter dated March 28, 2007 and annexed as Exhibit 2.

13. Throughout my primary, secondary, post-secondary and medical school education, I received extended time on tests and exams because without extended time, particularly on exams that contain lengthy reading passages, I am unable to complete the

examination. For example, in 11th grade (2002) I took the PSAT. Because the PSAT is a practice exam, I took it without extended time. Consequently, I was unable to complete the Critical Reading Sections (Section 1 and Section 3), which contains short paragraphs with reading comprehension questions. Annexed as Exhibit 3 is a copy of my PSAT Score report with answers. The PSAT answers reflect that toward the end of Section 1, I omitted several questions and at the end of Section 3, I omitted six questions because I ran out of time on the exam.

14. During high school, I applied to the College Board for accommodations on the SAT exams. In November 2003, the College Board approved and implemented accommodations including 50% extended time on the SAT and AP exams. A copy of College Board's approval of accommodations is annexed as Exhibit 4.

15. Over the course of my post-secondary education, I have received several psychoeducational evaluations conducted by qualified professionals licensed to administer such evaluations. Specifically, Cheryl M. Beach, Ph.D. evaluated me several times and issued reports June 2010, July 2013, December 2014 and July 2017. Dr. Beach's evaluation reports indicated that I have a Reading Disorder, a Disorder of Written Expression and ADHD. Furthermore, Dr. Beach recommended several accommodations and learning strategies, which included 100% extended time on exams, stop-the-clock rest breaks, testing over multiple days and testing in a distraction limited environment. Annexed hereto and supporting this Declaration and Plaintiff's Motion for Preliminary Injunction are the following reports from Cheryl M. Beach, Ph.D.

- Exhibit 5: June 2010 Psychological and Educational Evaluation.
- Exhibit 6: July 2013 Psychological and Educational Re-Evaluation.
- Exhibit 7: January 29, 2015 Letter to NBME.
- Exhibit 8: July 2017, Psychological and Educational Re-Evaluation.

4

16. In the Fall 2004, I commenced my undergraduate matriculation at the University of Cincinnati (UC). In order to address my impairments, I applied for accommodations with UC's Department of Student Services, which approve several accommodations including double extended time for testing, use of a proof reader and access to books in digital/audio format. These accommodations were implemented throughout my matriculation at UC. Documentation of the UC Accommodation Plan is set forth in a letter dated April 30, 2009 and annexed as Exhibit 9.

17. I received a Bachelor of Arts and a Bachelor of Science from UC in June 2009.

18. During the 2009-2010 Spring quarter, I completed post-baccalaureate science courses at UC in order to prepare for medical school and I continued to receive accommodations, including double extended time on exams during this coursework.

19. In 2009 and 2010, I took the MCAT, which is a standardized exam required for entry into many medical schools. I was not approved for accommodations on the MCAT. Prior to taking the MCAT, I studied extensively. While taking the MCAT, I utilized various compensatory strategies in an attempt to maximize the amount of questions that I could read and answer. Nevertheless, without extended time, I was unable to complete most sections of the MCAT and had to guess on many of the questions. Because I did not receive appropriate accommodations on the MCAT, I was unable to demonstrate my true skills and knowledge.

20. In May 2011, I commence attending AUC.

21. Upon entering AUC, I submitted the most current documentation supporting my request for accommodations. AUC approved 50% extended time on all examinations and quizzes and a distraction reduce environment. While the documentation furnished to AUC supported 100% extended time and I requested 100% extended time, AUC did not approve 100% extended

time citing that they lacked the resources to offer any student 100% extended time and therefore I was required to accept 50% extended time. Documentation of AUC's Accommodation Plan is annexed as Exhibit 10.

22. As part of the graduation requirements and requirement to obtain medical licensure, I am required to pass the USMLE Step 1 and USMLE Step 2 examinations.

23. On or about October 3, 2013, I submitted my request for accommodations on the USMLE Step 1. I provided NBME with hundreds of pages of documents, which included several psycho-educational evaluation reports prepared by psychologists, school records from my primary, secondary and post-secondary education. (See Plaintiff's Complaint ¶ 40) This documentation demonstrated that several qualified professionals who evaluated me at different times, recommended accommodations, including extended time on tests and standardized examinations and that I previously received extended time on exams in grade school, middle school, high school, college and medical school and on the College Board examinations.

24. By letter dated December 23, 2013, (80 days after the request) Defendant NBME advised that my request for accommodations for the USMLE Step 1 was denied and that no accommodations were approved.

25. On March 28, 2014, I sat for the USMLE Step 1. I put forth an extraordinary effort, over a five-month period studying for the USMLE Step 1. I was very confident that I knew the material the exam covered well enough to pass; however, my ability to read through a sufficient number of questions was going to be an extreme challenge given the nature and impact of my impairments.

26. One of the strategies I employed to answer as many questions as possible was to read the last sentence of the vignette first and then back track to the top to skim through reading

each passage, attempting to pick out key words and spend a certain limited amount of time to answer each question. Certain questions, for example question stems involving biostatistics, I would not spend time answering because they consumed too much time to complete successfully. These strategies did not allow me full comprehension of exam questions, but rather meant that I was making answer choices based on a sentence or two out of a long paragraph of material. Despite this approach, as I came to the end of the hour for each block, I would then randomly guess at questions until the clock ran out to be sure nothing was left blank.

27. While I did not believe that I was able to read through the reading vignettes sufficiently on the Step 1 due to my impairments, I nevertheless narrowly passed the examination by six points receiving a score of 198 (192 was set as a passing score). While I was able to pass the Step 1, because I did not receive appropriate accommodations, I was unable to demonstrate my true skills and knowledge.

28. On or about March 18, 2015, I submitted my request for accommodations on the USMLE Step 2 CK. In addition, to the prior documentation furnished to the NBME, I also provided additional documentation from Dr. Beach and AUC supporting my request for accommodations. (See Plaintiff's Complaint ¶47) NBME unreasonably delayed its decision and by letter dated July 24, 2015, (128 days after the request) Defendant NBME advised that my request for accommodations for the USMLE Step 2 CK was denied and that no accommodations were approved.

29. On April 25, 2017, I sat for the USMLE Step 2 CK. My strategy for getting through the Step 2 CK was to utilize a similar strategy that I had used on the USMLE Step 1. However, the reading vignettes on the Step 2 were substantially longer than those contained on the USMLE Step 1. Accordingly, my strategy to get through the exam was unavailing and I was

7

not able to read through a sizeable portion of vignettes in each block. Consequently, I failed to pass with a score of 151, which was 58 points from a passing score of 209. Once again, because I did not receive appropriate accommodations, I was unable to demonstrate my true skills and knowledge.

30. On or about February 24, 2018, I submitted a third request for accommodations to NBME for the USMLE Step 2 CK. My request for accommodations included 100% extended time over two days of testing, extra break time and distraction limited testing environment. The documentation furnished to NBME (See Complaint ¶ 52) included but was not limited to Dr. Beach's various reports (See Exhibits 5-8) dating back to 2010, records concerning accommodations implemented during middle school, high school, college and medical school (See Exhibits 1, 2, 9 and 10) and documentation from the College Board approving accommodations for the SAT and AP exams. (See Exhibit 4)

31. By letter dated May 27, 2018 (92 days after the request) Defendant NBME, for the third time, denied my request for accommodations. (A copy of NBME denial letter is annexed as Exhibit 11)

32. On August 31, 2018 I sat for the USMLE Step 2 CK for the second time. Leading up to this exam, I studied extensively and worked with a testing advisor to improve the condition and manner with which I processed questions. I felt my knowledge base for the exam was strong but my impairments continued to be a barrier for reading the lengthy vignettes and completing the exam.

33. During the August 31, 2018 exam, I decided to use a new strategy to make the most efficient use of my test time. I knew that I would be unable to answer all of the questions within the time allotment, so I chose to answer a large portion of the questions with the same

8

answer choice. I believed that statistically speaking, my chances were better if I marked the same answer rather than leaving answers blank or arbitrarily choosing different letters for the questions I was unable to read. The remaining questions were marked with a single letter (I believe "C").

34. My recollection is that at the beginning of each block, I went to the 21st question preemptively and marked all of the questions from 21 to 40 of each block with the same letter (as noted above, I believe "C") for each ensuing answer. This ensured that no questions were left blank. (It probably took me 2 or 3 seconds per question to do this.)

35. I then returned to the first question of the block and proceeded to read and answer as many questions as I could using my best test-taking strategies for the remainder of the time allotted.

36. This allowed me to work until the very last available moment on reading questions. An additional benefit was that I did not have to split my attention between reading and watching the clock during the last minutes of the exam out of fear that half the block would be left blank.

37. In total, I estimate that I was able to read to some degree approximately 200 of the 320 questions. In sum, the rest of the answers were filled in with the letter "C" which I hoped would give me a 20% statistical chance of correct answers on those questions I did not have sufficient time to read.

38. With respect to the August 31, 2018 Step 2 CK, because I did not receive appropriate accommodations, I was unable to demonstrate my true skills and knowledge.

9

39. The results of my August 31, 2018 USMLE Step 2 CK showed an improvement from the April 2017 USMLE Step 2 CK. However, I received a 166, thereby missing a passing score by 43 points.

40. Ironically, the USMLE Program, which is sponsored by NBME, notified me that my responses for the August 31 administration of the USMLE Step 2 CK were considered anomalous and that a hold was being placed on my USMLE interactions. The anomalous responses identified by the USMLE Program were that I selected one letter option (i.e. "C") more than 44% of the time.

41. I have previously completed all my course work at AUC and have received passes and honors in most of my course work. Moreover, I received honors in all but one of my clinical rotations all of which were completed in New York City hospitals. I am presently considered an enrolled student in good standing at AUC. However, I am presently on a long-term leave of absence.

42. I have also taken and passed all the NBME Shelf exams during my clinical rotations. While I received some level of extended time to accommodate my impairments for my Shelf exams, I still experienced difficulty with the timing of the exam. The accommodations implemented on the Shelf exams were inconsistent with the recommended and prior accommodations I previously received. Accordingly, the accommodations for the Shelf exams were not appropriate. In addition to passing the USMLE Step 1, I have also passed the USMLE Step 2 Clinical Skills, which is a clinical simulation examination.

43. Accordingly, based on the foregoing, I possess the knowledge base and motivation to take and pass the USMLE Step 2 CK examination.

44. I have been studying extensive hours nearly each day for the USMLE Step 2 CK for many months.

45. If I am not able to complete the USMLE Step 2 CK due to the lack of appropriate accommodations, I will be unable to complete my medical school education, graduate and receive consideration for a residency position. Additionally, if I do not receive appropriate and reasonable accommodations, given my past performance on the USMLE Step 2 CK, I run a very real risk of failing the exam. If I do not pass the USMLE Step 2 CK, my aspirations of a medical career will end and I will be left with the enormous debt from medical school costs and fees. AUC has advised me that I have one final chance to pass the USMLE Step 2 CK and if I do not pass, I shall be dismissed from AUC.

46. My experience in requesting accommodations for the USMLE Step exams has been very difficult. I have spent numerous hours gathering documentation and undergoing expensive evaluations. Several highly qualified professionals, who personally evaluated and administered psychoeducational measures, have confirmed my disability. I have further had to expend considerable personal financial resources to pursue my rights under the ADA.

47. My request for extended time is not to gain a competitive advantage, rather I am seeking to level the playing field with my non-disabled peers.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this twenty-first day of June, 2019.

*Brendan J. Berger*
Brendan J. Berger