## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **BRENDAN BERGER,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 1:19cv00099** |
| ) | |
| **v.** ) | **Judge: Hon. Susan J. Dlott** |
| ) | **Magistrate Judge: Hon. Karen L.** |
| **NATIONAL BOARD OF MEDICAL** ) | **Litkovitz** |
| **EXAMINERS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### DECLARATION OF BENJAMIN J. LOVETT, PH.D.

1.     My name is Benjamin J. Lovett. I am over 18 years of age and, unless otherwise stated, I have personal knowledge of the matters addressed herein.

2.     I am currently an Associate Professor of Psychology at the State University of New York (SUNY) at Cortland and an Adjunct Professor of Psychology at Syracuse University. As of September 1, 2019, I will be Associate Professor of Psychology and Education at Teachers College, Columbia University. I am a licensed psychologist. A true and correct copy of my curriculum vitae is attached at Exhibit 1.

3.     My professional expertise includes the diagnosis and management of neurodevelopmental conditions, particularly learning disabilities (LD) and Attention Deficit-Hyperactivity Disorder (ADHD). I have published numerous articles and book chapters on these topics.

4.     Much of my research involves testing accommodations for students with disabilities, and I have published a book on that topic. As part of my work, I frequently meet with young adults who have diagnoses of learning and attention problems, and I assess both their

self-reported symptoms and their objective performance on various tests of cognitive, academic, and behavioral functioning.

5.     In addition to my faculty and research responsibilities, I have served as an independent reviewer for numerous organizations that administer or rely upon standardized tests, including the National Board of Medical Examiners (NBME), the National Board of Osteopathic Medical Examiners (NBOME), and the New York State Board of Law Examiners. For each of these organizations, among others, I have reviewed documentation submitted by examinees seeking testing accommodations based, at least in part, on ADHD and/or LD diagnoses.

6.     It is a common practice for testing entities to seek input from external experts regarding disability-based requests for testing accommodations. The external professionals have expertise in the areas of impairment that provide the basis for an accommodation request. The external professionals are asked to review documentation submitted in support of an accommodation request and to advise on matters of disability assessment and diagnosis, the level of functional impairment experienced by an applicant, and the appropriateness of specific test accommodations in a given case. The practice of reviewing supporting documentation and providing an opinion based upon that documentation is both well established and professionally sound.

7.     For cognitive impairments, certain documentation is routinely expected (*e.g.*, school records of a learning disability, or medical records on ADHD or a brain injury), and reviewers will generally ask to have such materials submitted. By reviewing a complete historical record, an evaluator can determine whether an individual has evidence to support the disability diagnosis and to demonstrate that the individual is substantially limited in one or more major life activities.

- 2 -

8.    I was asked by NBME to review Mr. Berger's request for accommodations on the Step 1 USMLE exam in 2013. At that time, in addition to an application form and personal statement, I reviewed the following documentation: (a) standardized, group-administered test results from grades 2, 3, 4, and 6; (b) transcripts from college and medical school; (c) score reports from the SAT and MCAT; (d) the report from a 1992 speech and language evaluation; (e) the reports from psychological evaluations conducted in 1994, 2003, 2008 (with a 2010 addendum), 2010, and 2013; (f) documentation of eligibility for accommodations in prior settings, generally consistent with what Mr. Berger reported in his application; (g) a supportive letter from Mr. Berger's mother; and (h) a letter from AAMC describing why accommodations on the MCAT were denied.

9.    At that time, I concluded that there was insufficient evidence to show the presence of any disability conditions that would keep Mr. Berger from accessing the Step 1 exam under standard administration conditions, and I prepared a report for NBME based on my review of this information. A true and correct copy of my October 22, 2013 report from that evaluation is attached hereto as Exhibit 2.

10.    It is my understanding that NBME denied Mr. Berger's request for accommodations, and he took the Step 1 exam under standard conditions and passed it.

11.    In 2018, NBME asked me to review Mr. Berger's request for accommodations on the Step 2 CK USMLE exam. At that time, I reviewed his application forms and personal statements, the documents listed in paragraph 8 above, and the following additional documents: (a) a transcript from medical school with additional information about performance there; (b) a score report from the PSAT exam; (c) the report from a 2017 diagnostic evaluation conducted by Dr. Cheryl Beach; (d) NBME's letters to Mr. Berger dated December 23, 2013 and July 24,

- 3 -

2015, denying his prior requests for testing accommodations; (e) letters from Dr. Cheryl Beach; (f) additional evidence of accommodations having been provided in medical school; (g) a letter from an attorney representing Mr. Berger; and (h) miscellaneous correspondence.

12.     I prepared a report for NBME based on my review of this information.  A true and correct copy of my March 14, 2018 report is attached at Exhibit 3.  I have reviewed this report and reaffirm my belief in the opinions expressed the report.

**Mr. Berger's Learning Disabilities Diagnoses**

13.     The current official diagnostic criteria for learning disabilities (LD) require that someone have academic skills that are clearly below the average range for age expectations and that cause problems performing in real-world settings.  These academic skill weaknesses would have been present in the person's childhood and are not better accounted for by other factors (e.g., general low intelligence).  Typically, young adults with valid LD diagnoses can point to evidence of their disorder that includes report cards from their K-12 schooling showing low grades or other indicia of poor performance in the area of their LD (e.g., reading), special education records showing the specialized instruction and related services they were provided, and reports from professional evaluations showing below-average scores on diagnostic achievement tests in the area of their LD.

14.     When applicants request testing accommodations, it is often helpful to examine their history of taking other timed standardized tests, whether they did so with or without accommodations.  An examinee's consistent history of taking standardized tests with accommodations is of course generally supportive of a need for accommodations.  Conversely, performance on similar tests in the past where they did *not* receive accommodations provides

evidence regarding the individual's ability to read and think in the specific context of taking a standardized test and may support the conclusion that accommodations are not needed.

15.    In Mr. Berger's case, two of the most important pieces of information in his record are his score reports from the Medical College Admission Test (MCAT). The MCAT is a rigorous admission test taken by those applying for entry into medical school. The test has a strict time limit, and Mr. Berger took the test without any accommodations (it is my understanding that his accommodation requests were denied). One of the MCAT sections, "Verbal Reasoning," involves reading passages and answering questions about the passages under the applicable strict time limit. Both times that Mr. Berger took the MCAT, his Verbal Reasoning scores were in the average or above average range, compared to all medical school applicants taking that test (a group that is already well above-average compared to the general population). True and correct copies of the MCAT score reports that I reviewed for Mr. Berger are attached as Exhibit 4.

16.    Mr. Berger also took the PSAT exam in 2002, when he was in the 11th grade. He apparently took that exam under standard time limits. All of his scores on this test--in reading, writing, and mathematics--were in the average range or above. The PSAT is taken by essentially a general population group (referred to on his score report as "college bound juniors"). Mr. Berger's scores on the PSAT thus suggest that his academic skills were in the average range or above compared to the population of Grade 11 students (his grade level at that time). A true and correct copy of the PSAT score report that I reviewed for Mr. Berger is attached as Exhibit 5.

17.    While in elementary school, in grades 2, 3, and 4, Mr. Berger took the Stanford Achievement Test, a common group-administered battery of academic skills. Each year, his reading comprehension scores were consistently in the average range or above. It is my

- 5 -

understanding that the Stanford Achievement Test has a strict time limit, and it appears that Mr. Berger did not receive any accommodations.[1]  True and correct copies of the Stanford Achievement Test score reports that I reviewed for Mr. Berger are attached as Exhibit 6.

18.     Mr. Berger took the Iowa Tests of Basic Skills and Cognitive Abilities Test in the 6th grade.  The report states that "Brendan's national percentile rank of 94 on verbal ability means that, compared with other sixth grade students nationally, Brendan scored higher than 94 percent."  I do not know, however, whether he took this test with or without testing accommodations.  A true and correct copy of the Iowa Tests score report that I reviewed for Mr. Berger is attached as Exhibit 7.

19.     Mr. Berger took the SAT in 2004, with 50% extra testing time.  He scored in the 91st percentile nationally on the Reading section of this test.  A true and correct copy of the SAT score report that I reviewed for Mr. Berger is attached as Exhibit 8.  I carefully considered this information, as well as information regarding the other standardized tests that he has taken and information regarding accommodations that he was approved to receive in high school, college and medical school, in forming my opinion about whether Mr. Berger has a disability that warrants testing accommodations on the USMLE.

20.     Mr. Berger also has undergone at least six diagnostic evaluations.

21.     A key indicator of learning disabilities is academic skills that are significantly below average.  In his earlier evaluations (conducted in 1994, 2003, and 2008, when Mr. Berger was 8, 17, and 23 years old, respectively), all of Mr. Berger's reading and writing scores on

---

[1] Mr. Berger does not report receiving any accommodations on these tests, and given that he was being home schooled at the time and there are no records of accommodations (even informal ones) prior to fifth grade, I am not aware of any way that the school could have properly provided them when he came in to take the Stanford Achievement Test. Dr. Beach stated in a report that the Stanford Achievement Test was taken with accommodations, but she provided no basis for that statement and I would be surprised if it were correct.

diagnostic achievement tests were in the average range or above. These scores are not consistent with what I would expect for someone who has a learning disability.

22.     In Mr. Berger's 2010, 2013, and 2017 diagnostic evaluations conducted by Dr. Beach (and a 2010 addendum to a prior evaluation by Dr. Alexander Smith, Jr.), his scores on timed measures of reading and writing became increasingly worse.

23.     In 2010, Mr. Berger's score on the Woodcock-Johnson (WJ) reading fluency test was 85, in the low average range (at the 17th percentile). In his 2013 evaluation, it dropped to 75 (at the 5th percentile), and in 2017, it dropped even further, to 46 (in the bottom $0.1^{st}$ percentile—that is, skills worse than those of 999 people out of 1000 people in the general population at Mr. Berger's age).

24.     Similar patterns are seen in Mr. Berger's WJ writing fluency scores. In 2010, his writing fluency score was 90, at the 32nd percentile. In 2013, his score on the same task was 79, at the 8th percentile. In 2017, his score was 69, at the 2nd percentile.[2]

25.     Moreover, on some other diagnostic tests of academic skills completed in 2010 with Dr. Beach, Mr. Berger's scores were at the estimated level of a typical elementary school child. On the Nelson-Denny Reading Test (NDRT) timed reading comprehension task, his score was at the estimated level of a child in fourth grade. On the Gray Oral Reading Test, his reading fluency score was at the estimated level of a child just starting third grade.

26.     These scores, in my opinion, are not credible. There are two distinct patterns in the data that suggest that the diagnostic test scores are not credible. First, there are significant discrepancies between Mr. Berger's performance on timed, unaccommodated real-world reading

---

[2] I should note that by 2017, a new edition of the WJ was available, and Dr. Beach administered that updated edition. What had been called "reading fluency" and "writing fluency" in earlier editions were then called "*sentence reading fluency*" and "*sentence writing fluency.*"

comprehension tests and his performance in these diagnostic evaluations. On the MCAT timed reading comprehension section (called "Verbal Reasoning"), Mr. Berger's scores were consistently in the average range or above, when compared to other medical school applicants. On the PSAT, under timed conditions, his academic skills were all in the average range or above. And he apparently passed the Step 1 exam on his first attempt, which is a demanding examination. These scores on real-world tests could not be validly obtained by someone with timed reading comprehension skills typical of an elementary school child. The second data pattern involves the decline of the WJ scores over time. I might expect to see such a decline in a patient with a head injury or degenerative neurologic disorder, but not in the case of a learning disability.

27.    The two data patterns just described *are* consistent with an examinee who is motivated to demonstrate impairment to obtain testing accommodations, and in Mr. Berger's case there is evidence consistent with such a motivation. The 2010 testing (i.e., when the low scores began to appear) occurred after Mr. Berger had taken the MCAT without accommodations, and had received a score that Dr. Smith noted was "apparently considered mediocre by many medical school admissions committees. Mr. Berger felt he could have achieved a higher score and optimized a greater opportunity for admission"[3] to medical school if he had had additional testing time.

28.    Dr. Beach has offered a number of explanations for Mr. Berger's score discrepancies. She points out that the testing conducted in 1994, 2003, and 2008 did not involve severely time-pressured reading and writing tasks, in contrast to the 2010, 2013, and 2017

---

[3] See page 2 of Dr. Smith's 2010 addendum.

testing. However, this does not explain either of the two data patterns that I have noted—the continuous score declines between 2010 and 2017, or the difference between the real-world test (PSAT, MCAT, Step 1) scores and the diagnostic test scores. With regard to the first of these patterns, Dr. Beach notes that the norms of the WJ tests changed over time, but I cannot see how this would account for such tremendous changes in scores—indeed, the score changes are so large as to suggest that Mr. Berger actually got significantly fewer items correct each time that he took the test, a bizarre pattern for someone of his age without a degenerative neurologic condition. As for the obvious discrepancies between his average to above-average performance on timed reading tests on the PSAT and MCAT and his very poor performance on the later diagnostic tests, Dr. Beach claims that Mr. Berger made lucky guesses on the MCAT. This is not a persuasive explanation; each item on the MCAT is a distinct, independent variable, and so the chance that he would be able to guess correctly on item after item, enough to get a score much higher than his true ability level, *and* do the same thing a second time on a second MCAT, is so low as to not be credible.

29.     Dr. Beach could have administered a standalone performance validity test (PVT) to Mr. Berger to provide a more objective measure of Mr. Berger's motivation in taking the later diagnostic tests. Such PVTs are assessment tools that are designed specifically for the purpose of ensuring that a client (here, Mr. Berger) is putting forth sufficient effort and appropriate motivation during an evaluation. Some PVTs are time-pressured, which would specifically address the issue of someone seeking extended time accommodations. However, Dr. Beach did not administer any standalone PVTs as part of any of her evaluations, even though Mr. Berger had a clear incentive to demonstrate impairment, and even though research has often shown that

a significant minority of young adults being evaluated for learning and attention problems will exaggerate their impairment.[4]

30.     Interestingly, one of the tests that Dr. Beach *did* administer in 2017—the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV)—contains a time-pressured section that research has found to be an effective embedded indicator of effort and motivation. A recent research study found that the Processing Speed Index from the WAIS-IV relates strongly to PVT performance. In 2017, Mr. Berger's WAIS-IV Processing Speed Index score was 68 (where 100 is exactly average). The research study found that 99 to 100% of individuals scoring at least as poorly as Mr. Berger would be classified by established PVTs as exaggerating impairment or having noncredible data.[5] I would note further that in 2003 and 2008, when Mr. Berger took the WAIS (it was then the WAIS-III), his Processing Speed Index scores were much higher, in the average range (93 and 96, respectively). At those points in time, he had not yet been denied MCAT accommodations.

31.     In 2003, Dr. Smith had entertained the possibility of a learning disability in *writing* (not reading), and in 2008 he did diagnose a learning disability in writing. He used an approach to diagnosis based on discrepancies between different diagnostic test scores that Mr. Berger had obtained. Such a diagnostic approach, while common in some school districts

---

[4] See, for instance, Sullivan, B. K., May, K., & Galbally, L. (2007). Symptom exaggeration by college adults in attention-deficit hyperactivity disorder and learning disorder assessments. *Applied Neuropsychology*, *14*(3), 189-207.

[5] Erdodi, L. A., Abeare, C. A., Lichtenstein, J. D., Tyson, B. T., Kucharski, B., Zuccato, B. G., & Roth, R. M. (2017). Wechsler Adult Intelligence Scale-(WAIS-IV) processing speed scores as measures of noncredible responding: The third generation of embedded performance validity indicators. *Psychological Assessment*, *29*(2), 148-157.

especially at that time, lacks reliability and validity,[6] and the current official clinical criteria for learning disabilities were revised to eliminate such an approach. In both the 2003 and 2008 evaluations, all of Mr. Berger's writing scores were in the average range, in any case, meaning that those scores did not show substantial limitations in his ability to write. Finally, his writing skills are not relevant to his ability to access the Step 2 CK exam, as it does not require any writing.

32.    In 1994, Dr. Jeanne Artner did not make any formal diagnoses of learning disabilities but noted that Mr. Berger presented with "some severe discrepancies" between his academic skills and IQ, "which could lead to him being classified as a student with learning disabilities."[7] Again, all of his academic skills were in the average range or above, but in 1994 (when Mr. Berger was in second grade), the now-discredited discrepancy approach to learning disability diagnosis was quite popular.

33.    Finally, according to the evaluation reports from Dr. Smith and Dr. Beach, it appears that Mr. Berger's (private) high school staff met with a psychologist from the local public-school district and determined that Mr. Berger did not qualify for special education assistance. Dr. Beach reports that this determination was made because Mr. Berger did not meet the public school's LD criteria. This suggests that his academic skills were felt by the school district to be satisfactory.[8]

---

[6] See, for instance, Sternberg, R. J., & Grigorenko, E. L. (2002). Difference scores in the identification of children with learning disabilities: It's time to use a different method. *Journal of School Psychology*, *40*(1), 65-83.

[7] See page 5 of Dr. Artner's report.

[8] Dr. Beach states that Mr. Berger did not meet the district's aptitude (IQ) vs. achievement discrepancy criteria for LD identification. Given Mr. Berger's average and above-average IQ scores, if he did not meet the discrepancy criteria, his academic skills would seem to have been relatively close to his IQ—that is, at least average.

**Mr. Berger's ADHD Diagnosis**

34.     The current official diagnostic criteria for ADHD found in DSM-5 require that someone have unusually high levels of symptoms of inattention and/or hyperactivity/ impulsiveness that begin in childhood (by age 12), occur across settings, and interfere with real-world functioning.  In addition, the symptoms should not be better explained by a different disorder (e.g., an anxiety disorder).  Typically, young adults with valid ADHD diagnoses can point to evidence of their disorder that includes ratings of their symptoms by other parties who know them well (e.g., parents, friends, significant others), documented problems in school (e.g., low grades, problem behavior, or difficulty completing tasks and complying with teacher requests), and significant difficulties with everyday life responsibilities that most people in the general population can successfully perform.

35.     As discussed below, there is not clear, consistent evidence of ADHD from Mr. Berger's historical clinical evaluations.  Mr. Berger also has not provided real-world records (e.g., school reports, teacher comments, work evaluations) showing significant ADHD symptoms or related functional impairment in school or work settings.

36.     Mr. Berger was first diagnosed with ADHD by Dr. Beach in 2013, when he was 27 years old.  The possibility of ADHD was discussed in some of the clinical evaluations that Mr. Berger received before that time, but Dr. Beach was the first clinician to actually diagnose him with this impairment.

37.     In a 1994 evaluation, Dr. Jeanne Artner had noted that Mr. Berger (then eight years old) was highly distractible during the evaluation, and it also appears that Mr. Berger's mother reported some symptoms of inattention at that time.  Dr. Artner did not report administering any norm-referenced rating scales to Mr. Berger or his parents or others who knew

him and did not provide any detailed description of any impairment that Mr. Berger was experiencing in real-world settings (for example, in home, church, or school). Dr. Artner suggested that Mr. Berger's behaviors "raised the possibility" of ADHD, but only recommended that his parents consult with a physician *if* the parents noticed attention problems that "interfered with learning." I have not seen a record of any such consultation.

38.     In a 2003 evaluation, Dr. Alexander Smith reported administering two continuous performance tests[9] and the Brown ADD symptom rating scales[10] to Mr. Berger, who was then seventeen years old. Dr. Smith stated that there did not appear to be "any clinically significant results" suggesting inattention on either of the two continuous performance tests (that is, Mr. Berger did well on those objective tests) and Dr. Smith did not provide any scores from the Brown ADD symptom rating scales. He did not diagnose ADHD, and instead concluded that the diagnostic test data "help rule out specific attention deficits".[11]

39.     Mr. Berger was evaluated by Dr. Smith again in 2008, when he was 23 years old. Dr. Smith concluded that an ADHD-like condition (ADHD NOS - Not Otherwise Specified), which does not reach the full criteria for ADHD, should be further evaluated to be ruled out. Dr. Smith conducted a supplemental evaluation in 2010 and administered diagnostic rating scales to Mr. Berger and his parents. He described the results of the rating scales as "equivocal," and

---

[9] Continuous performance tests (CPTs) administer a series of game-like tasks that are designed to measure an individual's ability to maintain attention over time and carefully choose when to respond and when not to respond to visual or auditory stimuli. For example, one CPT task flashes a series of digits, one at a time, on an electronic display, and the examinee is instructed to press a button every time a "1" is followed by a "9." The test machine records the number of correct responses, incorrect responses, and failures to respond.

[10] The Brown ADD rating scales are normed scales that help assess symptoms of executive function impairments associated with ADHD (known earlier as ADD). Individuals filling out the scales identify the degree to which a client shows particular symptoms of these executive function problems.

[11] His report also states: "the broader 'executive function' issues of self-activation, prioritizing work, and self-monitoring for organization are problematic." However, even here, Dr. Smith noted that Mr. Berger "does actually function quite well despite them," even though deficits "may interfere with his performing in a very superior way.".

stated that "[t]hey did not indicate a clear and significant pattern of difficulties that impaired academic performance, classroom behavioral performance and associated deficits in self-regulation and executive function."

40.     Mr. Berger was also evaluated by Dr. Beach later in 2010, when he was 24 years old. She administered the Behavior Assessment System for Children - Second Edition (BASC-2), a broadband, standardized, norm-referenced self-report behavior rating scale, which has scores for attention problems and hyperactivity.  Dr. Beach concluded that Mr. Berger's self-reports yielded "no significant elevations on clinical problem scales."  She made no mention of ADHD as a diagnosis.

41.     A diagnosis of ADHD would generally be supported with evidence of significant impairment with a childhood onset.  Documentary evidence would generally reflect symptoms that consistently and substantially disrupt the individual's functioning across different settings (for example, school, work, and home).

42.     Although there has been mention of some ADHD symptoms in Mr. Berger's clinical evaluation reports since 1994, this is not clear, consistent evidence of ADHD.  Instead, until relatively recently, it appears that his evaluators had the opportunity to diagnose the condition and instead chose not to do so. And Mr. Berger has not offered any real-world records showing significant ADHD symptoms or related functional impairment at home, in school, or at work.

43.     Even if ADHD were present, this would not necessarily lead to a need for any testing accommodations. Indeed, research has found that postsecondary students with ADHD diagnoses do not, on average, demonstrate deficits in skills needed to access typical reading-

based tests (some do but many do not).[12] In Mr. Berger's case, his unaccommodated PSAT and MCAT scores are again quite relevant; if he had been unable to access reading-based tests without accommodations (whether due to learning disabilities or ADHD), the PSAT scores and especially the MCAT verbal reasoning scores would have been below the average range.

**Disability Status and Testing Accommodation Needs**

44.     As discussed above, there is insufficient credible evidence that Mr. Berger has a learning disability or ADHD.  For similar reasons, there is insufficient evidence that Mr. Berger is disabled within the meaning of the Americans with Disabilities Act.

45.     Individuals who are substantially limited in a major life activity due to an LD or ADHD generally have extensive documentation in their academic and/or employment histories, and in their medical records, reflecting clearly poor performance in diagnostic and real-world settings, because both categories of impairment have childhood onsets.

46.     Here, there is insufficient evidence that Mr. Berger is substantially limited in his ability to read, think, concentrate, or engage in any other activity that is relevant to taking the USMLE Step 2 CK exam, when he is compared to most people in the general population. Although at times Mr. Berger has obtained scores during diagnostic evaluations that would superficially suggest substantial limitations, those scores are not supported by--and are sometimes inconsistent with--other important evidence, including his performance on real-world timed tests that required significant amounts of reading.

---

[12] See Lewandowski, L., Gathje, R. A., Lovett, B. J., & Gordon, M. (2013). Test-taking skills in college students with and without ADHD. *Journal of Psychoeducational Assessment, 31*(1), 41-52.; Miller, L. A., Lewandowski, L. J., & Antshel, K. M. (2015). Effects of extended time for college students with and without ADHD. *Journal of Attention Disorders, 19*(8), 678-686.

47.    There is also insufficient evidence that Mr. Berger requires any accommodations to access Step 2 CK of the USMLE. Given his performance on other, similar high-stakes standardized tests, including the MCAT verbal reasoning sections, there is insufficient credible evidence of deficits in Mr. Berger's access skills (e.g., timed reading comprehension, concentration), relative to most people in the general population, that would make accommodations appropriate.

48.    Although it may seem puzzling for evaluators to ignore real-world evidence that shows diagnostic test scores to be untrustworthy, research has shown that many evaluators view their role as helping a client to secure accommodations.[13] Mr. Berger began to obtain low diagnostic test scores after being denied accommodations on the MCAT, giving him reason to try to demonstrate impairment to seek reconsideration of the denial. Many evaluators would likely have viewed their role here as helping Mr. Berger to do so.

49.    Finally, I understand that counsel for Mr. Berger is relying on a statement in a book that I co-authored to support Mr. Berger's case, as follows:

> Mr. Berger's experience in taking the USMLE Step 2 CK reflects that due to impairments, he was unable to answer nearly half the questions on the exams, resulting in two failures. The inability to complete substantial portions of the USMLE Step 2 CK is tantamount to a denial of access to the exam. Moreover, if Mr. Berger is unable to complete the reading vignettes on the USMLE Step 2 CK due to his impairments, AUC and state-licensing boards would not be in a position to make a proper conclusion about his licensure. As noted by two consultants frequently hired by several testing entities, "[w]ithout accommodations, then, we are left with inaccurate inferences about a student's skill levels, threatening the appropriateness of any decisions that we make regarding that student." Lovett, B.J., Lewandowski, L.J., *Testing Accommodations For Students With Disabilities: Research Based Practice*, American Psychological Association, 2015 p.18.

---

[13] See Gordon, M., Lewandowski, L., Murphy, K., & Dempsey, K. (2002). ADA-based accommodations in higher education: A survey of clinicians about documentation requirements and diagnostic standards. *Journal of Learning Disabilities*, 35(4), 357-363. For a more recent study with similar findings, see Harrison, A. G., Lovett, B. J., & Gordon, M. (2013). Documenting disabilities in postsecondary settings: Diagnosticians' understanding of legal regulations and diagnostic standards. *Canadian Journal of School Psychology*, 28(4), 303-322.

> Accordingly, to avoid improper conclusions about Mr. Berger's competency and licensure, the NBME must approve his request for extended time.

I certainly stand by the quoted sentence.[14] Indeed, it shows quite well that I strongly support accommodations when appropriate. However, the sentence refers to students for whom a disability warranting accommodations has been properly documented -- not to students whose documentation does not support a finding that they are disabled and need reasonable accommodations to access an examination. Mr. Berger is in the latter category. For students like him, it is the provision of unwarranted accommodations that creates a risk of inaccurate inferences regarding his knowledge and skill levels, as my book also discusses (see e.g., page 47). Taken out of context (as it was), the quote would seem to imply that *all* students require accommodations; obviously, this is not the case. Moreover, even if Mr. Berger feels time pressure on the Step 2 CK exam and is not able to complete the reading at the pace that he wishes to, this is *not* evidence of a disability relative to the average person in the general population, as the vast majority of people in the general population are never expected to take a medical licensure exam.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 23, 2019.

Benjamin J. Lovett, Ph.D.

---

[14] The citation by Mr. Berger's counsel is incorrect, incidentally; the passage comes from page 5 of my book, not page 18.

# EXHIBIT 1

# Benjamin J. Lovett, Ph.D.

**Address before September 1, 2019:**
Department of Psychology
SUNY Cortland
PO Box 2000
Cortland, NY 13045
607-753-2040 (office)
Benjamin.Lovett@cortland.edu

**Address after September 1, 2019**
Department of Health and Behavior Studies
Teachers College, Columbia University
525 W. 120th Street
New York, NY 10027
BL2799@tc.columbia.edu

**Current Appointments:**
> Associate Professor of Psychology, SUNY Cortland, Cortland, NY
> Adjunct Professor of Psychology, Syracuse University, Syracuse, NY

**Licensure:**
> Psychologist (New York State) – License #020865

**Education:**
> Ph.D. in School Psychology, 2007
> Syracuse University, Syracuse, NY
> (APA-Accredited Program)
>
> M.S. in Psychology, 2005
> Syracuse University, Syracuse, NY
>
> B.A. in Psychology, 2002, *summa cum laude*, with honors in psychology
> Minor in Educational Policy Studies
> Pennsylvania State University, University Park, PA

**Previous Academic and Clinical Appointments (selected):**
> *July 2007 – June 2014*
> > Associate Professor of Psychology, Elmira College, Elmira, NY
> > (Assistant Professor of Psychology from July 2007 to June 2013)
>
> *August 2006 – June 2007*
> > School Psychology Intern, Jamesville-DeWitt Schools
> > Psychological Evaluator, Elmcrest Children's Center
>
> *September 2005 – June 2006*
> > Psychology Extern, Jamesville-Dewitt Middle School
>
> *September 2003 – December 2005*
> > Senior Research Analyst, Dept. of Psychiatry, SUNY Upstate Medical University
> > (ADHD Clinic Coordinator, from 2003 to 2004)

*Summers 2000 - 2003*
Instructional Staff, Center for Talented Youth, Johns Hopkins University
(Instructor for 2003; Teaching Assistant from 2000 to 2002)

## Publications – total $N$ = 83, and as of 6/1/19, an $h$ index of 24 (2404 total citations)

### Publications: Book ($n$ = 1)

1. **Lovett, B. J.,** & Lewandowski, L. J. (2015). *Testing accommodations for students with disabilities: Research-based practice*. Washington, DC: American Psychological Association Press.

### Publications: Peer-Reviewed Journal Articles ($n$ = 54)

2. Harrison, A. G., **Lovett, B. J.,** Keiser, S., & Armstrong, I. (in press). Learning disability documentation submitted by osteopathic medical students. *Applied Neuropsychology: Adult.*

3. **Lovett, B. J.,** & Bizub, A. L. (2019). Pinpointing disability accommodation needs: Which evidence is most relevant? *Psychological Injury and Law, 12,* 42-51.

4. **Lovett, B. J.,** & Jordan, A. H. (in press). Are ADHD screeners safe to use? *Journal of Attention Disorders.*

5. **Lovett, B. J.,** Lewandowski, L. J., & Carter, L. (in press). Separate room testing accommodations for students with and without ADHD. *Journal of Psychoeducational Assessment.*

6. Nelson, J. M., & **Lovett, B. J.** (2019). Assessing ADHD in college students: Integrating multiple evidence sources with symptom and performance validity data. *Psychological Assessment, 31,* 793-804.

7. Wood, W. L. M., Lewandowski, L. J., & **Lovett, B. J.** (in press). Profiles of diagnosed and undiagnosed college students meeting ADHD symptom criteria. *Journal of Attention Disorders.*

8. **Lovett, B. J.,** & Nelson, J. M. (2018). Assessing adults for ADHD: A systematic, evidence-based protocol. *Journal of Health Service Psychology, 44,* 48-52.

9. **Lovett, B. J.** (2017). For balance in the historiography of psychology. *History of Psychology, 20,* 218-224.

10. **Lovett, B. J.,** & Davis, K. M. (2017). Adult ADHD assessment: An integrated clinical-forensic perspective. *Professional Psychology: Research & Practice, 48,* 438-444.

11. **Lovett, B. J.,** & Nelson, J. M. (2017). Test anxiety and the Americans with Disabilities

Act. *Journal of Disability Policy Studies, 28*, 99-108.

12. **Lovett, B. J.,** Lewandowski, L. J., & Potts, H. E. (2017). Test-taking speed: Predictors and implications. *Journal of Psychoeducational Assessment, 35*, 351-360.

13. Wood, W. L. M., Lewandowski, L. J., **Lovett, B. J.,** & Antshel, K. M. (2017). Executive dysfunction and functional impairment associated with sluggish cognitive tempo in college students. *Journal of Attention Disorders, 21*, 691-700.

14. Wood, W. L. M., Potts, H. E., Lewandowski, L., & **Lovett, B. J.** (2017). Sluggish cognitive tempo and speed of performance. *Journal of Attention Disorders, 21*, 684-690.

15. Lewandowski, L. J., Berger, C., **Lovett, B. J.,** & Gordon, M. (2016). Test-taking skills of high school students with and without learning disabilities. *Journal of Psychoeducational Assessment, 34*, 566-576.

16. **Lovett, B. J.,** & Leja, A. M. (2015). ADHD symptoms and benefit from extended time testing accommodations. *Journal of Attention Disorders, 19*, 167-172.

17. **Lovett, B. J.,** Nelson, J. M., & Lindstrom, W. (2015). Documenting hidden disabilities in higher education: Analysis of recent guidance from the Association on Higher Education and Disability (AHEAD). *Journal of Disability Policy Studies, 26,* 44-53.

18. Lewandowski, L. J., Lambert, T. L., **Lovett, B. J.,** Panahon, C., & Sytsma, M. (2014). College students' preferences for test accommodations. *Canadian Journal of School Psychology, 29*, 116-126.

19. **Lovett, B. J.** (2014). Testing accommodations under the amended ADA: The voice of empirical research. *Journal of Disability Policy Studies, 25*, 81-90.

20. Sparks, R. S., & **Lovett, B. J.** (2014). Learning disability documentation in higher education: What are students submitting? *Learning Disability Quarterly, 37*, 54-62.

21. Harrison, A. G., **Lovett, B. J.,** & Gordon, M. (2013). Documenting disabilities in postsecondary settings: Diagnosticians' understanding of legal regulations and diagnostic standards. *Canadian Journal of School Psychology, 28*, 303-322.

22. Lewandowski, L. J., Cohen, J., & **Lovett, B. J.** (2013). Effects of extended time allotments on reading comprehension performance of college students with and without learning disabilities. *Journal of Psychoeducational Assessment, 31*, 326-336.

23. Lewandowski, L. J., Gathje, R. A., **Lovett, B. J.,** & Gordon, M. (2013). Test-taking skills in college students with and without ADHD. *Journal of Psychoeducational Assessment, 31*, 41-52.

24. **Lovett, B. J.** (2013). The science and politics of gifted students with learning disabilities:

A social inequality perspective. *Roeper Review, 35*, 136-143.

25. **Lovett, B. J.**, & Leja, A. (2013). Students' perceptions of testing accommodations: What we know, what we need to know, and why it matters. *Journal of Applied School Psychology, 29*, 72-89.

26. **Lovett, B. J.**, & Sparks, R. S. (2013). The identification and performance of gifted students with learning disabilities: A quantitative synthesis. *Journal of Learning Disabilities, 46*, 304-316.

27. Sparks, R. S., & **Lovett, B. J.** (2013). Applying objective diagnostic criteria to students in a college support program for learning disabilities. *Learning Disability Quarterly, 36*, 231-241.

28. Jordan, A. H., **Lovett, B. J.**, & Sweeton, J. L. (2012). The social psychology of interracial interactions: Implications for culturally competent practice. *Journal of Multicultural Counseling and Development, 40*, 132-143.

29. **Lovett, B. J.**, Jordan, A. H., & Wiltermuth, S. (2012). Individual differences in the moralization of everyday life. *Ethics and Behavior, 22*, 248-257.

30. Jordan, A. H., Monin, B., Dweck, C. S., **Lovett, B. J.**, John, O. P., & Gross, J. J. (2011). Misery has more company than people think: Underestimating the prevalence of others' negative emotions. *Personality and Social Psychology Bulletin, 37*, 120-135.

31. **Lovett, B. J.** (2011). Auditory processing disorder: School psychologist beware? *Psychology in the Schools, 48*, 855-867.

32. **Lovett, B. J.** (2011). On the diagnosis of learning disabilities in gifted students. *Gifted Child Quarterly, 55*, 149-151.

33. **Lovett, B. J.,** & Hood, S. B. (2011). Realism and operationism in psychiatric diagnosis. *Philosophical Psychology, 24*, 207-222.

34. **Lovett, B. J.,** & Johnson, T. L. (2011). The impact of presentation level on SCAN-A test performance. *Contemporary Issues in Communication Sciences and Disorders, 38*, 135-139.

35. Hood, S. B., & **Lovett, B. J.** (2010). Network models of psychopathology and comorbidity: Philosophical and practical considerations. *Behavioral and Brain Sciences, 33*, 159-160.

36. **Lovett, B. J.** (2010). Extended time testing accommodations for students with disabilities: Answers to five fundamental questions. *Review of Educational Research, 80*, 611-638.

37. **Lovett, B. J.,** & Jordan, A. H. (2010). Levels of moralization: An alternative conception of moral sensitivity. *Journal of Moral Education, 39*, 175-189.

38. **Lovett, B. J.,** Lewandowski, L. J., Berger, C. A., & Gathje, R. A. (2010). Effects of response mode and time allotment on college students' writing. *Journal of College Reading and Learning, 40*(2), 64-79.

39. **Lovett, B. J.,** & Eckert, T. L. (2009). Reinforcement sensitivity and responsiveness to performance feedback: A preliminary investigation. *Journal of Applied School Psychology, 25*, 204-219.

40. **Lovett, B. J.,** & Sparks, R. S. (2010). Exploring the diagnosis of "Gifted/LD": Characterizing postsecondary students with learning disability diagnoses at different IQ levels. *Journal of Psychoeducational Assessment, 28*, 91-101.

41. Sparks, R. S., & **Lovett, B. J.** (2009). Objective criteria for classification of postsecondary students as learning disabled: Effects on prevalence rates and group characteristics. *Journal of Learning Disabilities, 42*, 230-239.

42. Sparks, R. S., & **Lovett, B. J.** (2009). College students with learning disability diagnoses: Who are they, and how do they perform? *Journal of Learning Disabilities, 42*, 494-510.

43. DiGennaro-Reed, F. D., & **Lovett, B. J.** (2008). Views on the efficacy and ethics of punishment: Results from a national survey. *International Journal of Behavioral Consultation and Therapy, 4*(1), 61-67.

44. Lewandowski, L. J., **Lovett, B. J.,** Codding, R. S., & Gordon, M. (2008). Symptoms of ADHD and academic concerns in college students with and without ADHD diagnoses. *Journal of Attention Disorders, 12*, 156-161.

45. Lewandowski, L. J., **Lovett, B. J.,** & Rogers, C. L. (2008). Extended time as a testing accommodation for students with reading disabilities: Does a rising tide lift all ships? *Journal of Psychoeducational Assessment, 26*, 315-324.

46. Mogle, J. A., **Lovett, B. J.,** Stawski, R. S., & Sliwinski, M. J. (2008). What's so special about working memory? An examination of the relationships between working memory, secondary memory, and fluid intelligence. *Psychological Science, 19*, 1071-1077.

47. Jordan, A. H., & **Lovett, B. J.** (2007). Stereotype threat and test performance: A primer for school psychologists. *Journal of School Psychology, 45*, 45-59.

48. Lewandowski, L. J., **Lovett, B. J.,** Parolin, R. A., Gordon, M., & Codding, R. S. (2007). Extended time accommodations and the mathematics performance of students with and without ADHD. *Journal of Psychoeducational Assessment, 25*, 17-28.

49. **Lovett, B. J.,** Eckert, T. L., Talge, N. M., & Akin-Little, K. A. (2007). Attachment

intervention programs: Implications for school psychologists. *Journal of Early Child and Infant Psychology*, *3*, 25-43.

50. **Lovett, B. J.,** & Sheffield, R. (2007). Affective empathy deficits in aggressive children and adolescents: A critical review. *Clinical Psychology Review*, *27*, 1-13.

51. **Lovett, B. J.** (2006). The new history of psychology: A review and critique. *History of Psychology*, *9*, 17-37.

52. **Lovett, B. J.,** & Lewandowski, L. J. (2006). Gifted students with learning disabilities: Who are they? *Journal of Learning Disabilities*, *36*, 515-527.

53. **Lovett, B. J.** (2005). A defense of prudential moralism. *Journal of Applied Philosophy*, *22*, 159-168.

54. **Lovett, B. J.,** & Jordan, A. H. (2005). Moral values, moralism, and the 2004 presidential election. *Analyses of Social Issues and Public Policy*, *5*, 165-175.

55. Akin-Little, K. A., Eckert, T. L., **Lovett, B. J.,** & Little, S. G. (2004). Extrinsic reinforcement in the classroom: Bribery or best practice? *School Psychology Review*, *33*, 343-361.

**Publications: Contributions to Edited Books (*n* = 17)**

56. **Lovett, B. J.,** & Nelson, J. M. (in press). Assessment in educational settings. In J. A. Suhr & M. Sellbom (Eds.), *Cambridge Handbook of Clinical Assessment and Diagnosis*. New York: Cambridge University Press.

57. **Lovett, B. J.,** & Kilpatrick, D. A. (2018). Differential diagnosis of SLD [Specific Learning Disability] versus other difficulties. In D. P. Flanagan & V. C. Alfonso (Eds.), *Essentials of specific learning disability assessment* (2nd ed., pp. 549-571). Hoboken, NJ: Wiley.

58. Lewandowski, L. J., **Lovett, B. J.,** & Gordon, M. (2016). Measurement of symptom severity and impairment. In S. Goldstein & J. A. Naglieri (Eds.), *Assessing impairment: From theory to practice* (2nd ed., pp. 229-245). New York: Springer.

59. **Lovett, B. J.,** Gordon, M., & Lewandowski, L. J. (2016). Legal conceptions of impairment: Implications for the assessment of psychiatric disabilities. In S. Goldstein & J. A. Naglieri (Eds.), *Assessing impairment: From theory to practice* (2nd ed., pp. 125-139). New York: Springer.

60. **Lovett, B. J.,** & Spenceley, L. A. (2016). Use of the Woodcock-Johnson IV in the diagnosis of specific learning disabilities in adulthood. In D. P. Flanagan & V. C. Alfonso (Eds.), *WJ-IV clinical use and interpretation: Scientist-practitioner perspectives* (pp. 253-270). Cambridge, MA: Academic Press.

61. Gordon, M., Lewandowski, L. J., & **Lovett, B. J.** (2015). Assessment and management of ADHD in educational and workplace settings in the context of ADA accommodations. In R. A. Barkley (Ed.), *Attention-Deficit Hyperactivity Disorder: A handbook for diagnosis and treatment* (4th ed., pp. 774-794). New York: Guilford.

62. Lewandowski, L. J., & **Lovett, B. J.** (2014). Learning disabilities. In E. J. Mash & R. A. Barkley (Eds.), *Child psychopathology* (3rd ed., pp. 625-669). New York: Guilford.

63. **Lovett, B. J.,** & Hood, S. B. (2014). Comorbidity in child psychiatric diagnosis: Conceptual complications. In C. Perring & L. Wells (Eds.), *Diagnostic dilemmas in child and adolescent psychiatry* (pp. 80-97). New York: Oxford University Press.

64. Eckert, T. L., & **Lovett, B. J.** (2013). Principles of behavioral assessment. In D. H. Saklofske, C. R. Reynolds, & V. L. Schwean (Eds.), *Oxford Handbook of Child Psychological Assessment* (pp. 366-384). New York: Oxford University Press.

65. Ferrier, D. E., **Lovett, B. J.,** & Jordan, A. H. (2011). Construct-irrelevant variance in achievement test scores: A social cognitive perspective. In L. E. Madsen (Ed.), *Achievement tests: Types, interpretations, and uses* (pp. 89-108). Hauppauge, NY: Nova Science.

66. Lewandowski, L. J., **Lovett, B. J.,** & Gordon, M. (2009). Measurement of symptom severity and impairment. In S. Goldstein & J. Naglieri (Eds.), *Assessment of impairment: From theory to practice* (pp. 5-14). New York: Springer.

67. **Lovett, B. J.** (2009). The science of cheating: A psychologist's perspective. In T. Twomey, H. White, & K. Sagendorf (Eds.), *Pedagogy, not policing: Positive approaches to academic integrity at the university* (pp. 43-48). Syracuse, NY: Syracuse University Press.

68. **Lovett, B. J.,** Gordon, M., & Lewandowski, L. J. (2009). Measuring impairment in disability evaluations: Legal and ethical issues. In S. Goldstein & J. Naglieri (Eds.), *Assessment of impairment: From theory to practice* (93-103). New York: Springer.

69. Jordan, A. H., & **Lovett, B. J.** (2008). Self-theories of intelligence: Implications for school psychology. In D. H. Molina (Ed.), *School psychology: 21st century issues and challenges* (pp. 345-355). Hauppauge, NY: Nova Science.

70. Lewandowski, L. J., & **Lovett, B. J.** (2008). Introduction to neuropathology and brain-behavior relationships. In L. C. Hartlage & R. C. D'Amato (Eds.), *Essentials of neuropsychological assessment: Treatment planning for rehabilitation.* (2nd ed., pp. 31-55).

71. Eckert, T. L., **Lovett, B. J.,** Rosenthal, B. D., Jiao, J., Ricci, L. J., & Truckenmiller, A. J. (2006). Class-wide instructional feedback: Improving children's academic skill

development. In S. V. Randall (Ed.), *Learning disabilities: New research* (pp. 167-185). Hauppauge, NY: Nova Science Publishers.

72. Gordon, M., Barkley, R. A., & **Lovett, B. J.** (2006). Tests and observational measures. In R. A. Barkley (Ed.), *Attention-Deficit Hyperactivity Disorder: A handbook for diagnosis and treatment*. (3rd ed., pp. 369-388). New York: Guilford.

**Publications: Articles in Newsletters and Magazines, and Invited Articles (*n* = 11)**

73. **Lovett, B. J.,** & Harrison, A. G. (2019). Forensic thinking in disability assessment: An introduction to a special issue. *Psychological Injury and Law*, *12*, 1-6.

74. Spenceley. L. M., **Lovett, B. J.,** & Lewandowski, L. J. (2017). Assessing response validity: For SAT accommodation requests and beyond? *New York School Psychologist*, *35*, 41-43.

75. Lewandowski, L. J., Wood, W. L. M., & **Lovett, B. J.** (2016). Sluggish cognitive tempo in college students: Now you see it, now you don't. *ADHD Report*, *24*(1), 1-5.

76. Nelson, J. M., **Lovett, B. J.,** & Lindstrom, W. (2015). Assessing, documenting, and accommodating ADHD in college students. *ADHD Report*, *23*(6), 7-11.

77. Lewandowski, L. J., & **Lovett, B. J.** (2014). The new *Diagnostic and Statistical Manual of Mental Disorders, DSM-5*: Implications for accommodations requests. *Bar Examiner*, *83*(1), 42-54.

78. **Lovett, B. J.** (2013). Who needs more time (on tests)? *Better: Evidence-Based Education*, *5*(3), 14-15.

79. **Lovett, B. J.** (2011). The divorce of behavior analysis and psychology: Think of the children! *(APA) Division 25 Recorder*, *39*(1), 4-6.

80. **Lovett, B. J.** (2011). Extended time testing accommodations: What does the research say? *NASP Communiqué*, *39*(8), 1, 14-15.

81. **Lovett, B. J.,** Lewandowski, L. J., & Miller, L. (2010). Auditory processing disorder and ADHD: What's the relationship? *ADHD Report*, *18*(3), 7-11.

82. Lewandowski, L. J., **Lovett, B. J.,** Gordon, M., & Antshel, K. M. (2006). The case for clinical impairment in the DSM-V criteria for ADHD. *ADHD Report*, *14*(6), 8-16.

83. **Lovett, B. J.,** & Gordon, M. (2005). Test score discrepancies as a basis for the assessment of learning disabilities and ADHD. *ADHD Report*, *13*(3), 1-4.

**Work in Progress**

Hothersall, D., & **Lovett, B. J.** (in preparation). *History of psychology*. [Book manuscript, under contract with Cambridge University Press]

**Lovett, B. J.,** & Spenceley, L. M., & Lewandowski, L. J. (in preparation). Symptom and performance validity: Implications for school-based psychoeducational assessments.

**Lovett, B. J.,** & Nelson, J. M. (in preparation). Adult ADHD: Recent findings and controversies.

**Lovett, B. J.,** Nelson, J. M., & Peck, J. A. (in preparation). Should ADHD evaluations be conducted while a client is on ADHD medication?

**Lovett, B. J.,** & Lewandowski, L. J. (in preparation). Measuring trait distractibility in college students.


**Book, Film, and Test Reviews (selected):**

**Lovett, B. J.** (2019). Review of the book *Learning disabilities: From identification to intervention. NASP Communiqué, 47*(7), 38.

**Lovett, B. J.** (2017). Review of the book *Psychological and psychoeducational assessment of deaf and hard of hearing children. Journal of Psychoeducational Assessment, 35*, 807-810.

**Lovett, B. J.** (2013, January). Review of the film *The D Word. The School Psychologist, 67*(1), 81-83.

**Lovett, B. J.** (2011, August 9). Review of the book *The Science of ADHD. Metapsychology Online Reviews, 15*(32).

**Lovett, B. J.,** & Johnson, T. L. (2010). Review of the test *SCAN-3. Journal of Psychoeducational Assessment, 28*, 603-607.

**Lovett, B. J.** (2010, April 13). Review of the book *Treating ADHD and comorbid disorders. Metapsychology Online Reviews, 14*(15).

**Lovett, B. J.** (2007, March 27). Review of the book *The Last normal child: Essays on the intersection of kids, culture, and psychiatric drugs. Metapsychology Online Reviews, 11*(13).

**Lovett, B. J.** (2005). Review of the book *Assessment for intervention. NASP Communiqué, 34*(4), 13

**Invited Talks (selected):**

Lovett, B. J. (2019, April). "Anxiety and Discomfort during Testing: A Cause for Accommodations?" Invited talk given at the Educational Testing Service, Princeton, NJ.

Lovett, B. J. (2018, May). "Testing Accommodations: From Research to Practice." Invited talk given at the Winsor School, Boston, MA.

Lovett, B. J. (2017, December). "Test Anxiety and the ADA." Invited talk given at the National Board of Medical Examiners, Philadelphia, PA.

Lovett, B. J. (2017, October). "Speededness: What is it Good For?" Invited talk given at the Time Limits and Testing Conference, Philadelphia, PA.

Lovett, B. J. (2017, April). "Testing Accommodations for Students with Disabilities: Myth, Reality, and Practice." Invited talk given to the New Jersey Principals and Supervisors Association, Monroe, NJ.

Lovett, B. J. (2017, March). "Test Anxiety: Assessment, Documentation, Accommodations?" Invited talk given at the High-Incidence Disabilities in Higher Education conference, Toronto, ON.

Lovett, B. J. (2016, October). "Psychoeducational Assessment: An Integrated Clinical-Forensic Perspective." Invited talk given at the Southern Ontario Regional Assessment and Resource Centre, Kingston, ON.

Lovett, B. J. (2016, May). "Testing Accommodations: From Research to Practice." Invited talk given at Academics West, New York, NY.

Lovett, B. J. (2016, May). "The Science and Ethics of Testing Accommodations." Invited talk given at the Masters School, Dobbs Ferry, NY.

Lovett, B. J. (2016, March). "Testing Accommodations for Students with Disabilities: Research-Based Practice." Invited talk, given with L. J. Lewandowski, at the Fayetteville-Manlius Central School District, Fayetteville, NY.

Lovett, B. J. (2016, March). "Developments in Testing Accommodations Research: A Year in Review." Invited talk given at the Association of American Medical Colleges, Washington, DC.

Lovett, B. J. (2015, November). "Putting the History of Psychology into Introductory Psychology." Invited talk given to Syracuse University Project Advance, New York, NY.

Lovett, B. J. (2015, October). "Testing Accommodations for Students with Disabilities: Research-Based Practice." Invited talk, given with L. J. Lewandowski, at the convention of the New York Association of School Psychologists, Verona, NY.

**Lovett, B. J.** (2015, October). "Testing Accommodations for People with Disabilities: Research-Based Practice." Clinician's Corner Webinar, given at the headquarters of the American Psychological Association, Washington, DC.

**Lovett, B. J.** (2015, August). "Testing Accommodations for People with Disabilities: Research-Based Practice." Continuing Education Workshop, with L. J. Lewandowski, given at the convention of the American Psychological Association, Toronto, ON.

**Lovett, B. J.** (2015, March). "Testing Accommodations for Students with High-Incidence Disabilities: Research Informing Practice." Invited talk given to the Department of Counseling and Educational Psychology, University at Albany, SUNY, Albany, NY.

**Lovett, B. J.** (2015, March). "Extended Time Requests on the MCAT: The Need for Rigorous Review." Invited talk given at the American Association of Medical Colleges, Washington, DC.

**Lovett, B. J.** (2014, August). "Testing Accommodations for Students with Disabilities: Research-Based Practice" Continuing Education Workshop, with L. J. Lewandowski, given at the convention of the American Psychological Association, Washington, DC.

**Lovett, B. J.** (2013, November). "Should Medical Licensure Exams Be Timed?" Invited talk given at the National Board of Medical Examiners, Philadelphia, PA.

**Lovett, B. J.** (2013, November). "The Advantages and Disadvantages of Timed Tests." Invited talk given at the Research Advisory Forum of the National Board of Osteopathic Medical Examiners, Conshohocken, PA.

**Lovett, B. J.** (2013, May). "Auditory Processing Disorders: From Research to Practice: The View from School Psychology." Invited talk given to the National Centre for Audiology, London, Ontario.

**Lovett, B. J.** (2013, April). "Learning Disabilities and the Use of Expert Consultants." Invited talk given (with Dr. Lawrence Lewandowski) to the National Conference of Bar Examiners, Boston, MA.

**Lovett, B. J.** (2012, October). "The Science of Testing Accommodations for Students with Disabilities." Invited talk given to the Psychology Department at Suffolk University, Boston, MA.

**Lovett, B. J.** (2012, August). "Testing Accommodations: From Research to Practice." Invited talk to be given at the meeting of the College Board's Office of Services for Students with Disabilities, Seattle, WA.

**Lovett, B. J.** (2012, May). "Classroom Management: A Behavioral Perspective." Invited talk to student-teachers currently in school-based practica at Elmira College, Elmira, NY.

**Lovett, B. J.** (2012, May). "Testing Accommodations for Students with Disabilities: Research-Based Practice." Invited talk at the conference High-Incidence Disabilities in Higher Education: Current Issues and Best Practices, Toronto, ON.

**Lovett, B. J.** (2012, March). "The Psychology of Accomplishment." Invited talk given to the Elmira College Chapter of Phi Beta Kappa, Elmira, NY.

**Lovett, B. J.**, & Sparks, R. S. (2011, December). "Gifted Students with Learning Disabilities: Implications for Testing Accommodations." Invited talk given to the National Board of Medical Examiners, Philadelphia, PA.

**Lovett, B. J.** (2011, April). "The Science and Ethics of Accommodating Employees with Psychiatric Disabilities." Invited talk given at the Tuck School of Business, Dartmouth College, Hanover, NH.

**Lovett, B. J.** (2010, October). "Diagnosing Learning Disabilities in Postsecondary Students." Invited talk given to the Southern Ontario Regional Assessment and Resource Centre, Huntsville, Ontario.

**Lovett, B. J.**, & Sparks, R. S. (2009, November). "Gifted Students with Learning Disabilities: Current Concepts and Controversies." Invited talk at the Test Agencies Disability Forum, Educational Testing Service, Princeton, NJ.

**Lovett, B. J.**, & Johnson T. L. (2009, October). "Auditory Processing Disorder: An Applied Primer for School Psychologists." Invited talk to the Psychology Department, Syracuse University, Syracuse, NY.

**Lovett, B. J.** (2007, March). "Testing Accommodations for Students with Disabilities: Asking the Hard Questions." Presentation to the Jamesville-DeWitt School District, Jamesville, NY.

**Lovett, B. J.** (2005, November). "Putting Statistics into Introductory Psychology: Activities that Work." Presentation to Syracuse University's Project Advance, New York, NY.

**Lovett, B. J.** (2005, October). "Direct Observation: The Royal Road to Child Psychiatric Diagnosis?" Presentation at Child Psychiatry Grand Rounds, Department of Psychiatry, SUNY Upstate Medical University, Syracuse, NY.

**Refereed Conference Presentations (selected):**
Carter, L., & **Lovett, B. J.** (2019, March). Separate room testing accommodations for students with and without ADHD. Poster presented at the Eastern Psychological Association convention, New York, NY.

Johnson, T. L., **Lovett, B. J.,** & White, E. (2018, November). SLP hearing screening: Variability in accuracy and consistency. Poster presented at the convention of the American Speech-Language-Hearing Association, Boston, MA.

Nelson, J. M., & **Lovett, B. J.** (2018, August). Data discrepancies and poor symptom validity in ADHD evaluations of college students. Presented at the annual meeting of the American Psychological Association, San Francisco, CA.

**Lovett, B. J.,** Carter, L., & Porto, A. (2018, March). Predictors of timed test performance in students with disabilities. Poster presented at the Eastern Psychological Association convention, Philadelphia, PA.

Wood, W. L. M., Spenceley, L. A., Scott, M., Marshall, E., & **Lovett, B. J.** (2018, February). Assessment of effort: WJ IV COG clusters as embedded validity indicators. Poster presented at the convention of the National Association of School Psychologists, Chicago, IL.

Johnson, T., **Lovett, B. J.,** & Dillmuth-Miller, S. (2016, November). Attitudes towards noise exposure: CSD vs. non-CSD students. Poster presented at the convention of the American Speech-Language-Hearing Association, Philadelphia, PA.

**Lovett, B. J.,** & Nelson, J. M. (2016, June). Test anxiety: Assessment, Documentation, and Management. Paper presented at the University of Connecticut Center for Postsecondary Education and Disability Postsecondary Training Institute, Philadelphia, PA.

Wood, W., Lewandowski, L. J., & **Lovett, B. J.** (2016, February). Contrasting the impairment profiles of sluggish cognitive tempo and ADHD. Poster presented at the convention of the National Association of School Psychologists, New Orleans, LA.

**Lovett, B. J.,** Drymond, M., & Vita, L. (2015, March). Determinants of college students' time needed to complete a test. Poster presented at the convention of the Eastern Psychological Association, Philadelphia, PA.

Potts, H. E., Lewandowski, L. J., & **Lovett, B. J.** (2015, February). Can we predict time needed on a reading comprehension test? Poster presented at the convention of the National Association of School Psychologists, Orlando, FL.

Potts, H. E., Wood, W. L., Lewandowski, L. J., & **Lovett, B. J.** (2015, February). Does sluggish mean slower test performance? A pilot study. Poster presented at the convention of the National Association of School Psychologists, Orlando, FL.

Spielberger, S., Lewandowski, L. J., **Lovett, B. J.,** & Potts, H. E. (2015, February). Effects of expressive writing on test anxiety and classroom tests. Poster presented at the convention of the National Association of School Psychologists, Orlando, FL.

Wood, W. L., Lewandowski, L. J., & **Lovett, B. J.** (2014, February). Impairment and executive

functioning associated with sluggish cognitive tempo. Poster presented at the convention of the National Association of School Psychologists, Washington, DC.

Sparks, R. S., & **Lovett, B. J.** (2013, November). Examining documentation and applying objective diagnostic criteria to college students in a learning disability support program. Paper presented at the Convention of the International Dyslexia Association, New Orleans, LA.

Leja, A. M., & **Lovett, B. J.** (2013, February). Extended time testing accommodations: Do ADHD symptoms matter? Poster presented at the convention of the National Association of School Psychologists, Seattle, WA.

Johnson, T. L., **Lovett, B. J.**, Widen, S., & Amsterdam, R. (2012, March). Attitudes towards hearing protection among U.S. college students. Poster presented at the convention of the Pennsylvania Speech-Language-Hearing Association, Lancaster, PA.

Lewandowski, L., **Lovett, B. J.**, Panahon, C. J., Lambert, T., & Systma, M. R. (2012, February). Test accommodation preferences in college students. Poster presented at the convention of the National Association of School Psychologists, Philadelphia, PA.

**Lovett, B. J.**, Fredericks, D., Leja, A., & Sparks, R. S. (2012, February). Gifted students with learning disabilities: A quantitative synthesis. Poster presented at the convention of the National Association of School Psychologists, Philadelphia, PA.

Sparks, R. S., & **Lovett, B. J.** (2011, November). The identification and performance of gifted students with learning disabilities: A quantitative synthesis. Poster presented at the convention of the International Dyslexia Association, Chicago, IL.

Johnson, T. L., **Lovett, B. J.**, Kingman, R., & Cronin, C. (2010, November). The measurement of auditory processing: Does presentation level affect performance? Poster presented at the convention of the American Speech-Language-Hearing Association, Philadelphia, PA.

**Lovett, B. J.**, & Johnson, T. L. (2010, March). Auditory processing disorder: A role for the school psychologist. Paper presented at the convention of the National Association of School Psychologists, Chicago, IL.

Cohen, J. A., Lewandowski. L. J., & **Lovett, B. J.** (2010, March). Differences between extended time allotments for learning disabled college students. Poster presented at the convention of the National Association of School Psychologists, Chicago, IL.

Hendricks, K., Lewandowski, L. J., & **Lovett, B. J.** (2010, March). The use of Testtracker for students with ADHD. Poster presented at the convention of the National Association of School Psychologists, Chicago, IL.

**Lovett, B. J.,** & Hood, S. B. (2009, November). Realism and operationism in psychiatric diagnosis. Paper presented at the convention of the Florida Philosophical Association, Gainesville, FL.

**Lovett, B. J.,** Ells, L., & Lewandowski, L. J. (2008, November). Why do you think you need extra time? Poster presented at the convention of the New York Association of School Psychologists, Rochester, NY.

Berger, C., Lewandowski, L. J., **Lovett, B. J.,** Gathje, R. A., & Cohen, J. A. (2008, February). Writing on a computer: No longer a testing accommodation. Poster presented at the convention of the National Association of School Psychologists, New Orleans, LA.

**Lovett, B. J.,** Lewandowski, L. J., Kleinmann, A. E., & Rogers. C. R. (2007, March). Testing accommodations for students with disabilities. Symposium presented at the convention of the National Association of School Psychologists, New York, NY.

Berger, C., Gathje, R. A., Lewandowski, L. J., **Lovett, B. J.** (2007, March). Extended time and laptop format as accommodations for written language tests. Poster presented at the convention of the National Association of School Psychologists, New York, NY.

DiGennaro, F. D., & **Lovett, B. J.** (2006, May). Is punishment effective? Is it ethical? Views of ABA members. Poster presented at the convention of the Association for Behavior Analysis, Atlanta, GA.

Eckert, T. L., **Lovett, B. J.,** & Jiao, J. (2006, March). Does performance feedback serve as reinforcement? Poster presented at the convention of the National Association of School Psychologists, Anaheim, CA.

Lewandowski, L. J., Sheffield, R., & **Lovett, B. J.** (2006, March). "Symptomatic" versus "impaired": Which is more important in ADHD diagnosis? Paper presented at the convention of the National Association of School Psychologists, Anaheim, CA.

Lewandowski, L. J., Parolin, R., **Lovett, B. J.,** & Gordon, M. (2006, March). Effects of extended time on math performance for students with ADHD. Poster presented at the convention of the National Association of School Psychologists, Anaheim, CA.

**Lovett, B. J.,** & Lewandowski, L. J. (2005, March). The gifted/learning disabled child: A critique of current assessment practices. Poster presented at the convention of the National Association of School Psychologists, Atlanta, GA.

**Lovett, B. J.,** & Stawski, R. S. (2004, November). Ergodicity in psychoeducational assessment. Paper presented at the Gardner Conference on Measurement and Statistics, Auburn, NY.

**Lovett, B. J.,** & DiGennaro, F. D. (2004, May). Punishment and aversive interventions, 1980-2000: Change and continuity. Poster presented at the convention of the Association for Behavior Analysis, Boston, MA.

**Courses Taught:**

*Undergraduate Level*
    Introductory Psychology
    Abnormal Psychology
    Child Psychopathology
    Personality Psychology
    Health Psychology
    History and Systems of Psychology
    Psychological Testing
    Research Methods in Psychology
    Educational Psychology
    Psychology of Children with Exceptionalities
    Assessment of Students with Disabilities
    Psychology of Learning
    Applied Behavior Analysis
    Introduction to School Psychology
    Psychology of Intelligence and Creativity
    Seminar: The Psychology of Moral Judgment
    Seminar: Great Experiments in Psychology
    Seminar: Controversies in Child Psychopathology
    Applying Research Methods in Psychology: ADHD
    Supervised Research Experience in Psychology
    Interdisciplinary Freshman Core Course: Order & Chaos

*Graduate Level*
    Statistics in Educational Research
    Applied Behavior Analysis
    History and Systems of Psychology

**Masters Thesis Committee Service:**
Kaitlin Hendricks (Syracuse University, 2010)
Justin Cohen (Syracuse University, 2010)
Whitney Wood (Syracuse University, 2013)
Stephanie Spielberger (Syracuse University, 2015)
Heather Potts (Syracuse University, 2016)

**Doctoral Dissertation Committee Service:**
Mara Jane Schutz (University of NewCastle, 2008)
Kaitlin Hendricks (Syracuse University, 2013)
Laura Miller (Syracuse University, 2014)
Whitney Wood (Syracuse University, 2015)

**Editorial Review Work:**

Editorial board member, *Journal of Psychoeducational Assessment* (2007 - Present)

Editorial board member, *Journal of School Psychology* (2011 - 2014)

Ad-hoc reviewer for:
> *American Educational Research Journal*
> *British Journal of Educational Psychology*
> *Canadian Journal of School Psychology*
> *Clinical Psychology Review*
> *Educational Assessment*
> *European Journal of Psychology of Education*
> *High Ability Studies*
> *History of Psychology*
> *Journal of Adolescence*
> *Journal of Applied School Psychology*
> *Journal of Attention Disorders*
> *Journal of Behavioral Education*
> *Journal of Business Ethics*
> *Journal of Child and Family Studies*
> *Journal of Learning Disabilities*
> *Journal of School Psychology*
> *Journal of Social and Clinical Psychology*
> *Neuropsychology*
> *Psychological Science*
> *Research in Developmental Disabilities*
> *Research in Social and Administrative Pharmacy*
> *Roeper Review*
> *School Psychology Review*
> *Sociology Compass*

Textbook reviewer/consultant for:
> McGraw-Hill Higher Education
> Sage Publications
> John Wiley Publishers
> Worth Publishers
> *Choice* (academic library acquisitions service)

**Service to the Profession:**

Conference proposal reviewer, New York Association of School Psychologists (2006)

Assessment Consultant, ARC of Chemung County, NY (2007 - 2014)

Grant Reviewer, Netherlands Organisation for Scientific Research, (2014)

Grant Reviewer, Michigan State University (2016)

**Institutional Service:**

At SUNY Cortland (2014-)
Chair, Psychology Department Personnel Committee (2018 - )
Chair, Committee on Teaching Effectiveness (2018 - )
FDC Mentor to Haiyan Zhang (2017-2018)
Psychology Club Advisor (2016-2018)
Member, College Writing Committee (2017 - 2018)
Chair, Educational Psychology Faculty Search Committee (2017 - 2018)
Psychology Department Assessment Committee (2016 - 2017)
Sherlach Scholarship Award Committee (2016 - )
Psychology Department Curriculum Committee (2014 - 2016)
Efficiencies Advisory Committee (2016)
FDC Mentor to Dr. Katherine Bonafide (2015-2016)
Psychology Department Writing-Intensive Course Committee (2015 - )
Psychology of Children with Exceptionalities Committee (2014 -)
Chair, Clinical Psychology Faculty Search Committee (2014 - 2015)
Member, Applied Psychology Faculty Search Committee (2014)
Ad Hoc Committee on the 25th Anniversary of the ADA (2014 - 2015)

At Elmira College (2007-2014)
Co-Advisor, Elmira College Chapter of Psi Chi (2009 - 2010)
Co-Chair, Human Research Review Board, Elmira College (2008 - 2014)
Teacher Education Advisory Group, Elmira College (2007 - 2009)
Faculty Development Committee, Elmira College (2008 - 2010; Chair, 2009 - 2010)
Academic Assessment Committee, Elmira College (2008 - 2011)
Advising Committee, Elmira College (2012 – 2014)
Psychology Faculty Search Committee, Internal Member (2008 - 2009)
Nursing Faculty Search Committees, Outside Member (2010, 2012, 2013)
Criminal Justice Search Committee, Outside Member (2012)
Education (Literacy) Search Committee, Outside Member (2012)
Reviewer of Tenure-Track Faculty:
    2008-2009 – Dr. Megan Kennedy, 1st year review
    2009-2010 – Dr. Christopher Terry, 1st year review
    2010-2011 – Dr. Lauren Shaw, 3rd year review
    2013-2014 – Dr. Mark Pinter, 3rd year review

**Awards, Grants, and Honors:**

At SUNY Cortland (2014-)
Fine Teaching Development Award, 2017
Faculty Development Center Small Grant, 2014, 2016
Teaching Innovation Grant, 2015
College Assessment Committee Grant, 2015
UUP Individual Development Award Grant, 2016

At Elmira College (2007-2014)
Summer Faculty Development Research Grant, 2009, 2010, 2011, 2012
Honorary Inductee (student-elected), Phi Eta Sigma National Honor Society, 2009
Psi Chi Faculty Advisor Research Grant, 2010
Journal of School Psychology Editorial Appreciation Award, 2013
Joseph Stein Junior Faculty Prize, 2013

At Syracuse University (Ph.D. student, 2002-2007)
University Fellowship Award, 2002-2003 and 2005-2006
Psychology Department Allport Research Grant, 2004, 2005
College of Arts and Sciences Creative Project Award, 2005
Syracuse University Outstanding Teaching Award, 2005

At the Pennsylvania State University (undergraduate student, 1998-2002)
Induction into Psi Chi, National Honor Society for Psychology, 2000
3rd Place Prize, Social Science Division, Undergraduate Research Fair, 2001
Induction into Phi Beta Kappa, 2002

# EXHIBIT 2

## Review of Accommodation Request

**Applicant Name:** Brendan Berger
**Date of Birth:** August 14, 1985
**Date of Review:** October 22, 2013
**Reviewer:** Benjamin J. Lovett, Ph.D.

This review concerns Brendan Berger, who has requested testing accommodations (50% extended time, extra break time, a 2-day test administration, a test reader/recording, and a distraction-reduced test setting) on Step 1 of the USMLE. He reports diagnoses of ADHD and learning disabilities, as well as a history of testing accommodations dating back to middle school. On the MCAT, he did not receive any accommodations, although on other tests he has generally received at least 50% extended time as well as other accommodations. (Currently, in medical school, he receives 50% extended time and a distraction-reduced setting.)

In a personal statement, Mr. Berger reports a long history of problems with reading and writing that continue to cause impaired "reading comprehension speed" that affects him in a variety of real-world settings. He also reports a "need for absolute silence in order to maintain focus." These reports relate to his requests for extended time and a distraction-reduced setting.

In support of his request, Mr. Berger has submitted the following documents:
- Standardized, group-administered test results from grades 2, 3, 4, and 6
- Transcripts from college and medical school
- Score reports from the SAT and MCAT
- The report from a 1992 speech and language evaluation
- The reports from psychological evaluations conducted in 1994, 2003, 2008 (with a 2010 addendum), 2010, and 2013
- Documentation of prior eligibility for accommodations in medical school, college, part of high school, middle school, and on the SAT
- A supportive letter from Mr. Berger's mother
- A letter from the AAMC describing the rationale for denying accommodations on the MCAT

This review has three purposes: to evaluate the evidence for the disability diagnoses, to determine if the disabilities (if present) cause a substantial limitation in any major life activities, and to determine if the requested accommodations are appropriate for Mr. Berger.

<u>History of Diagnosed Conditions</u>
Mr. Berger reports diagnoses of ADHD and learning disabilities in reading and writing, and indeed, his most recent diagnostic evaluation (July 2013) made formal diagnoses of "severe" learning disabilities in reading and writing and "moderate to severe" ADHD. At that time, he obtained below-average scores on diagnostic tests that measured his reading, writing, and math fluency, his timed reading comprehension, and his phonological skills (measured by asking him to read fake words such as *zeb* or *loratious*), and he and one of his medical school professors both described him as having above-average levels of ADHD symptoms.

Mr. Berger and his evaluator, Dr. Cheryl Beach, claim that he has a long history of formal diagnoses of ADHD and learning disabilities. But in fact, Mr. Berger's actual history is far more equivocal:

- A speech-language evaluation at age 6 (in kindergarten, 1992) did not lead to a formal diagnosis of any learning disabilities (despite Dr. Beach claiming otherwise). The speech pathologist (Ms. Sharon Collins) did diagnose "delays" in certain areas of language development, but she never directly measured Mr. Berger's reading skills. The closest that she came was administering a task (the Letter Sequences subtest of the Detroit Tests of Learning Aptitude) that showed Mr. Berger sequences of letters, removed the stimulus, and asked him to write down the letters that he had seen. This is a visual memory task, not a reading task. Again, his reading skills were never directly measured.

- Mr. Berger's next formal evaluation was in 1994 (in grade 2). Dr. Beach claims that this evaluation "confirmed" a dyslexia diagnosis and added a diagnosis of ADHD. As I noted above, there had never been a dyslexia diagnosis to begin with, and the 1994 evaluator never made such a diagnosis either. Indeed, during this evaluation, all of Mr. Berger's reading skills were measured as being in the average range or above. Even though his IQ score was far above some of his reading scores, the evaluator did not diagnose a learning disability, perhaps because the reading scores were *average*. Moreover, the evaluator did not diagnose ADHD, instead merely noting that "some of his behaviors raised the possibility" of that diagnosis, and so the parents were encouraged, should they find it appropriate, to follow up with a physician.

- Mr. Berger's next formal evaluation was in 2003 (in grade 11), and the evaluator, Dr. Alexander Smith, found his reading and writing scores to again be in the average range or above. Dr. Smith doubted the utility of a learning disability diagnosis, "given the overall context of Brendan's current level of functioning," but admitted that since Mr. Berger's school had been informally providing time extensions, Mr. Berger might well be able to obtain them on college admissions tests. Dr. Smith also felt that the evaluation ruled out ADHD, given Mr. Berger's good performance on computerized tests of attention.

- Mr. Berger's next formal evaluation was in 2008, completed to obtain any needed accommodations on the MCAT. Although Dr. Smith conducted this evaluation as well, his 2008 report is entirely different from the 2003 report. Dr. Smith now clearly diagnosed a learning disability (despite the fact that the achievement scores were again all in the average range) and indicated that it had always been there. He still seemed to doubt that ADHD was present, but he suggested that further evaluation be done to rule out ADHD Not Otherwise Specified (this would be a disorder that does *not* meet full criteria for ADHD).

- Despite Mr. Berger's 2008 evaluation, he was denied accommodations on the MCAT. Dr. Smith conducted additional testing in 2010 and this was submitted to the AAMC, but Mr. Berger was apparently again denied accommodations. The same year, Mr. Berger completed still other testing with Dr. Beach, and despite these results being submitted to the AAMC, Mr. Berger was yet again denied accommodations. The two 2010 evaluations

reiterate the learning disability diagnoses, although neither made an ADHD diagnosis (Dr. Beach did not mention it at all, and Dr. Smith described ADHD as "a possible but improbable alternative diagnostic consideration.")

Looking at this history, it appears clear that the first formal diagnosis of any learning or attention problem was in 2008, when Mr. Berger was 23 years old.

Learning Disability Diagnoses[1]

Until 2010, all of the diagnostic testing showed average or above average scores in reading and writing. Even in 2010, Dr. Smith's evaluation generally showed average or above average scores, but Dr. Beach's evaluation showed far-below average scores—scores that were reprised in her 2013 evaluation of Mr. Berger. In 2010, on the Nelson-Denny Reading Test (NDRT) timed comprehension task, his scores were in the 1st percentile (the bottom 1% of the population), even when compared to scores of high school seniors. On the Gray Oral Reading Test (GORT), his reading fluency score was at the 1st percentile, or at a third-grade level. Then, in 2013, his reading fluency score on the Woodcock-Johnson Tests of Achievement (WJ-Ach) was at the 5th percentile, as was his score on the timed reading comprehension task from the Scholastic Abilities Test for Adults (SATA).

If the recent scores are valid, they suggest significant deficits in academic skills that could justify learning disability diagnoses, but are they valid? Unfortunately, comparing them with the higher scores from earlier diagnostic evaluations is not a genuinely fair comparison, because the earlier higher scores came from untimed tests, and so they might not show deficits in the manner (speed) in which Mr. Berger reads.

A more appropriate comparison would be with Mr. Berger's MCAT scores, obtained without accommodations in 2009 and 2010. The most relevant subtest from the MCAT is the verbal reasoning subtest, since it measures Mr. Berger's ability to answer questions about passages that he had read, and this subtest score is not contaminated by his level of scientific knowledge. On the MCAT verbal reasoning subtest, Mr. Berger scored a 7 in 2009 and a 10 in 2010. Both of these scores are in the average range. Remarkably, Dr. Beach describes the average-range score of 7 as "extremely low," and she never mentions the 2010 score of 10.

In 2010, despite receiving MCAT verbal reasoning scores in the average range, Mr. Berger scored at the 1st percentile on the NDRT timed comprehension test. This discrepancy is so surprising as to call into doubt the NDRT scores. Compared to high school seniors, Mr. Berger's ability to answer questions about passages under timed conditions was in the bottom 1%, but his ability to do the same thing (on more difficult passages) was in the average range for college students applying to medical school. Dr. Beach attributes the MCAT score to guessing; she wrote "he was fortunate to guess so effectively," but it strains credulity to argue that he *twice* (both in 2009 and 2010) guessed so effectively as to have an average score on a difficult exam taken by only a very small, high-performing fraction of the population.

More generally, Dr. Beach undermines her credibility when we consider how she misrepresents

---

[1] In this section, I focus on Mr. Berger's reading disability diagnosis, rather than the writing disability diagnosis, since significant writing skills are not needed on Step 1 of the USMLE.

Mr. Berger's scores (describing average-range scores as "extremely low") and similarly misrepresents his history (describing early evaluations as having led to formal diagnoses when they did not). Unfortunately, then, we need to question the validity of the NDRT scores, as well as the later SATA and WJ-Ach scores, given Mr. Berger's average MCAT scores. In short, we should look to evidence other than the scores in Dr. Beach's assessments, since they are so unlike Mr. Berger's performance on the real-world MCAT.

Without Dr. Beach's scores, we have very little credible, objective evidence of reading and writing skills that are below average for the general population. In sum, I believe that we lack sufficient evidence to support the learning disability diagnoses.

<u>ADHD Diagnosis</u>
As with reading problems, there are credible early reports of some ADHD symptoms, but there is insufficient credible, objective evidence to support an ADHD diagnosis at this time. The following elements of evidence argue against a diagnosis:

- None of the supportive letters from school officials or Mr. Berger's mother discuss poor attention in real-world settings. (One letter describes distractibility observed during the 1994 evaluation, but this is not a real-world setting.)
- Dr. Smith's evaluations in 2003, 2008, and 2010 led him to doubt the appropriateness of a diagnosis, in part due to Mr. Berger's good performance on objective measures of attention (computerized continuous performance tests), and in part because Mr. Berger and his parents' responses to standardized behavior rating scales "did not indicate a clear and significant pattern of difficulties" associated with ADHD.
- Dr. Beach's 2010 evaluation did not lead to the diagnosis being discussed at all.
- Although it is reported that a psychiatrist "confirmed" the diagnosis of ADHD in 2010, we have no record of this, let alone any records regarding the evidence that the "confirmation" was based on.
- Although Dr. Beach's 2013 evaluation suddenly discovered ADHD, and this was supported by Mr. Berger and one of his medical school professors reporting that he exhibited *extremely* high levels of ADHD symptoms (between 2 and 4 standard deviations above the mean; contrast this with the 2010 rating scales in Dr. Smith's evaluation), we lack credible, objective evidence of current impairment in real-world settings. Indeed, on a standardized measure of executive functioning problems (the Behavior Rating Inventory of Executive Function, which would typically show ADHD-related impairment), Mr. Berger did not even report clinically significant levels of impairment in most areas, compared to the scale's norms. Although he reports certain types of impairment in his personal statement (e.g., an inability to live with roommates), it is unclear if these problems genuinely stem from ADHD symptoms.

<u>Disability Status, Accommodation Needs, and Conclusions</u>
As I have discussed above, we lack sufficient evidence that Mr. Berger has any learning or attention disorders. More generally, we lack sufficient evidence that he is deficient in the skills that he needs to access Step 1 of the USMLE under standard administration conditions. I briefly consider each of his accommodation requests below:

- Extended time – As I noted above, Mr. Berger's MCAT scores suggest that he can access tests with standard time allotments. His 2010 and 2013 evaluations showed very poor

performance on timed reading tests, but as I discussed above, these scores are not credible.

- Test reader or recording – This accommodation has perhaps the least support in the documentation. All data seems to agree that Mr. Berger's reading performance is generally in the average range or better; even Dr. Beach only claims that Mr. Berger's reading is slow, not that he cannot read text without someone (or some device) to read the text for him.
- Two day administration and additional break time – These accommodations make sense if extended time is provided; otherwise, we have no evidence showing unusual levels of fatigue or other problems that would necessitate the accommodations.
- Distraction-reduced setting – We lack credible, objective data that suggest unusually high levels of inattention that cause impairment in real-world settings (see discussion above), suggesting that this accommodation is not needed to access the test.

In conclusion, I should note that Mr. Berger's case is an unusually complicated one. There are scattered early signs of delays in cognitive and academic skills in childhood (including slow test-taking speed), but most of the documentation suggests average skills that (rightfully) failed to yield diagnoses until accommodations were desired on the MCAT and now on the USMLE, at which point Drs. Smith and Beach began to make formal diagnoses and alter the historical record to suggest that disabilities had always been present. Moreover, Dr. Beach began to obtain extremely low scores from testing Mr. Berger—scores that lack credibility. (For instance, in 2003, Mr. Berger's working memory score on the Wechsler IQ test was a 128; in 2013, the score was an 80, a fall of over three standard deviations, from the 97th percentile to the 9th percentile.[2]) Unfortunately, such incredible data lead me to be generally skeptical of the evaluators' reports in 2010 and 2013. Generally, we should give substantial weight to such reports, but in this particular case, we have strong reason to doubt their validity.

Mr. Berger's case is also complicated because certain important evidence is missing. Until 2010, his evaluators did not administer *timed* tests of reading skills, and his history of accommodations keeps us from interpreting high achievement in most settings as evidence against his disability status. In addition, we lack objective records to know whether his group-administered standardized achievement tests in elementary and middle school were actually taken with extended time, as Dr. Beach claims. Finally, we have supportive letters from Mr. Berger's mother, a teacher, and a school administrator, but these letters do not address the central questions concerning Mr. Berger's current accommodation needs.

Considering all of the evidence, in the context of these complexities, I believe that there is insufficient credible evidence of any disability conditions that would keep Mr. Berger from accessing Step 1 of the USMLE under standard administration conditions.

Benjamin J. Lovett, Ph.D.

---

[2] Admittedly, the IQ test had changed editions (from the WAIS-III to the WAIS-IV), but this is still a remarkable—and disconcerting—discrepancy.

# EXHIBIT 3

## Review of Accommodation Request

**Applicant Name:** Brendan Berger (Step 2 CK review)
**Date of Birth:** August 14, 1985
**Date of Review:** March 14, 2018
**Reviewer:** Benjamin J. Lovett, Ph.D.

This review concerns Brendan Berger, who has requested testing accommodations (100% extended testing time, extra break time, a 2-day test administration, a test reader/recording, and a distraction-reduced test setting) on Step 2 CK of the USMLE. He reports diagnoses of ADHD and learning disabilities in reading and writing, as well as a history of testing accommodations on some tests dating back to middle school. However, it does not appear that he has ever received all of the accommodations that he is now requesting. (For instance, currently in medical school, he only receives 50% extended time and a distraction-reduced setting.)

In 2013, I reviewed Mr. Berger's request for accommodations on the Step 1 exam. At that time, in addition to an application form and personal statement, I reviewed the following pieces of supportive documentation:
- Standardized, group-administered test results from grades 2, 3, 4, and 6
- Transcripts from college and medical school
- Score reports from the SAT and MCAT
- The report from a 1992 speech and language evaluation
- The reports from psychological evaluations conducted in 1994, 2003, 2008 (with a 2010 addendum), 2010, and 2013
- Documentation of eligibility for accommodations in prior settings, generally consistent with what Mr. Berger reported in his application
- A supportive letter from Mr. Berger's mother
- A letter from the AAMC describing why accommodations on the MCAT were denied

At that time, I concluded that there was insufficient evidence to show the presence of any disability conditions that would keep Mr. Berger from accessing the Step 1 exam under standard administration conditions. Please see my review, dated October 22, 2013, for more details on my analysis and reasoning. The NBME denied Mr. Berger's request, and he took the Step 1 exam under standard conditions and passed it.

In 2015, Mr. Berger applied for accommodation on Steps 2 CK and 2 CS, and his application was denied. I understand that he has since passed Step 2 CS but not Step 2 CK. Now, he has submitted an updated application requesting accommodations on the Step 2 CK exam. This is the first time that I have reviewed his documentation since 2013. In addition to application forms and personal statements, and in addition to the supporting documents listed above, the following newer documents were reviewed:
- A transcript from medical school of Mr. Berger's performance during his clerkships
- A score report from the PSAT
- The report from a 2017 diagnostic evaluation
- The denial letters from the NBME
- Additional letters from Mr. Berger's primary evaluator in recent years, Dr. Cheryl Beach
- Additional evidence of accommodations having been provided in medical school

- A letter from an attorney representing Mr. Berger
- Additional correspondence

This review has three purposes: to evaluate the evidence for the disability diagnoses, to determine if the disabilities (if present) cause a substantial limitation in any major life activities, and to determine if the requested accommodations are appropriate for Mr. Berger.

<u>Evidence of Learning Disabilities</u>
Mr. Berger has been diagnosed with learning disabilities in reading and writing (technically, Specific Learning Disorder with impairment in reading and written expression). However, there is insufficient evidence supporting these disorders. One of the hallmarks of learning disabilities is academic skill levels that are significantly below average; indeed, the official diagnostic criteria for learning disabilities require that someone's academic skills be "substantially and quantifiably below those expected for the individual's chronological age." But in comprehensive evaluations in 1994, 2003, and 2008, all of Mr. Berger's reading and writing scores on diagnostic achievement tests were in the average range or above. Then, in 2010, after Mr. Berger was denied accommodations on the MCAT, he began to get increasingly poor scores on timed measures of reading and writing during evaluations designed to determine his need for extended time (and other) accommodations.

Admittedly, the testing in 1994, 2003, and 2008 did not generally involve severely time-pressured reading and writing tasks, and Dr. Beach (Mr. Berger's evaluator in recent years) argues that this is why all of his scores were at least satisfactory during those earlier evaluations. But this is not the only evidence against the presence of learning disabilities in reading and writing. In addition, Mr. Berger took the MCAT twice without any accommodations, and both times, his verbal reasoning score (measuring his ability to read passages and answer multiple-choice questions about them under a strict time limit) was in the average range or above when compared to other medical school applicants (a group that is already well above average compared to the general population).[1] Moreover, it appears that Mr. Berger did not receive accommodations on the PSAT, and yet all of his scores—in reading, mathematics, and writing—were in the average range or above.[2]

It is not only that the scores from the 1994, 2003, and 2008 evaluations, and the MCAT and

---

[1] Mr. Berger's scores on the writing section of the MCAT were lower, but (a) since the MCAT is not a test with anything approaching general population norms, this is of negligible diagnostic value, and (b) writing is not relevant to Step 2 CK anyway.

[2] Mr. Berger's attorney argues that the PSAT record is evidence of Mr. Berger's need for accommodations, since the record shows that Mr. Berger chose to omit answering some of the items. But it is my understanding that the PSAT (at least at the time that Mr. Berger took it) penalized students for wrong answers more than for omitted answers, and students were typically warned not to answer an item rather than guessing randomly if they had no way of eliminating any of the wrong answer choices. Therefore, choosing to omit answers to some items is in no way evidence of not reaching those items, and the fact that the omitted items are distributed throughout the sections (rather than only being the final items) further suggests that Mr. Berger had time to examine the items at the very least. More importantly, despite choosing to omit his answers to some items, his scores on the PSAT were all in the average range or above; his scores were better than those of most of his peers. If he chose to focus on accuracy rather than speed (by, for instance, rechecking his answers to selected items or slowing down to work on a smaller number of items more carefully), this was his choice, and his resulting scores suggest that it was a good choice (if this was indeed his strategy).

PSAT scores argue against the presence of learning disabilities. In addition, the much lower scores from diagnostic evaluations completed in 2010, 2013, and 2017 are simply not credible. I say this for several reasons:

- There are bizarre discrepancies between real-world test performance and diagnostic test data. For instance, on MCATs administered in 2009 and 2010, Mr. Berger's verbal reasoning (reading comprehension) score was in the average range or above, compared to other medical students. However, when Dr. Beach measured Mr. Berger's timed reading comprehension with the Nelson-Denny Reading Test, his score was at the estimated level of a child in fourth grade. Not only is the latter score implausibly low, but it is clearly inconsistent with the MCAT scores.
- Mr. Berger's scores on timed diagnostic tests keep declining significantly, ever since he was denied accommodations on the MCAT. For instance, in 2010, his score on the Woodcock-Johnson (WJ) reading fluency test was 85, in the low average range, at the 17th percentile. In 2013, it declined to 75, at the 5th percentile. In 2017, it declined to 46, a remarkable drop. The WJ writing fluency score shows the same pattern. Such a pattern can even be observed on measures of processing speed, where we have data from childhood to the present. Even in 2008, at the age of 23, his processing speed index score was in the average range (93). However, by 2013 the score was 68, a very significant drop. Absent head injuries, degenerative neurologic disorders, and similar problems, these score declines are suggestive of increasing motivation to *demonstrate* academic skills problems and a need for extended time specifically. Interestingly, even on nonspeeded tests of academic skills, Mr. Berger has shown substantial declines. For instance, on the WJ word identification test, his score in 2013 was 107, but in 2017, it was only 74, a decline of more than 2 standard deviations. (If the scores were valid, this would suggest that either Mr. Berger's vocabulary or his ability to pronounce words declined very substantially between 2013 and 2017.)
- In the 2010 evaluations and beyond, Mr. Berger has had a clear incentive to work slowly on diagnostic tests: he has been seeking recommendations for extended time accommodations (often after having been denied those accommodations). But despite this clear, obvious incentive, his evaluators have not used formal assessment techniques to ensure that he is putting forth sufficient effort on speeded tests.[3] Indeed, in the most recent (2017) evaluation report, Dr. Beach praised Mr. Berger's slow work style. It appears that on real-world tests, he works much more quickly, but when he can slow down (especially when it would be helpful for the outcome of the evaluation), he does.

I should note that Dr. Beach has offered explanations for some of these apparent problems with score validity (e.g., she claims that Mr. Berger made lucky guesses on the MCAT, and that the norms for different editions of the WJ were substantially different) but these are not persuasive explanations in my opinion.

---

[3] There are a number of *performance validity tests* (PVTs), standalone assessment tools designed specifically for the purpose of ensuring that a client is putting forth sufficient effort and appropriate motivation during an evaluation. Given Mr. Berger's incentive for demonstrating a need for disability accommodations, his evaluators should have administered PVTs. Some PVTs weight speed of response, and those PVTs would be particularly helpful, given that Mr. Berger has been seeking extended time accommodations. I also wonder, however, whether his evaluators sufficiently emphasized the importance of working as quickly as possible on speeded tasks, given Dr. Beach's apparent approval of his slow work style.

Evidence of ADHD

Mr. Berger's ADHD status is a bit more complex to discuss; first, I summarize his history with regard to evidence of ADHD *from diagnostic evaluations*:

- In 1994, an evaluator—Dr. Jeanne Artner—noted distractibility during the evaluation, and it appears that Mr. Berger's parents reported some symptoms of inattention at that time as well. No norm-referenced scores related to attention were reported, and no detailed description of symptom-related impairment in real-world settings was provided. Dr. Artner suggested that some of Mr. Berger's behaviors "raised the possibility" of ADHD but seemed unsure of the diagnosis and recommended that the parents consult a physician *if* they were concerned. (There is no record of such a follow-up.)

- In 2003, when Mr. Berger was 17 years old, a new evaluator—Dr. Alexander Smith— reported administering the Gordon Diagnostic System (a continuous performance test) and the Brown ADHD symptom rating scales. No results from the Brown scales were noted in the evaluation report, and the only information about the Gordon tasks indicated that Mr. Berger had done *well*. Dr. Smith reported that ADHD had been essentially ruled out.[4]

- In 2008, Mr. Berger returned to Dr. Smith for a re-evaluation and although no formal measures of attention or standardized questionnaires regarding ADHD symptoms were administered, Dr. Smith concluded that an ADHD-like condition (ADHD NOS) that didn't reach the full criteria for ADHD should be further evaluated to be ruled out. In a 2010 supplemental evaluation, Dr. Smith gave Mr. Berger and each of his parents the Vanderbilt ADHD diagnostic rating scales to complete, and described the results as "equivocal," saying that "they did not indicate a clear and significant pattern of difficulties."

- Later in 2010, Mr. Berger went to see Dr. Beach for the first time; he completed a broadband, standardized, norm-referenced self-report behavior rating scale, the BASC. This scale has scores for attention problems and hyperactivity, but Dr. Beach found that Mr. Berger's self-reports yielded "no significant elevations on clinical problem scales." She diagnosed learning disabilities in reading and writing but there was no mention of ADHD as a diagnosis, not even as part of the report's lengthy section on Mr. Berger's history. To be clear, Mr. Berger was now 24 years old, and had never received an actual diagnosis of ADHD despite extensive evaluation.

- In 2013, Mr. Berger returned to Dr. Beach, and the report from this evaluation presents a remarkably different portrait of Mr. Berger's ADHD symptoms, when compared to the 2010 report. This time, Mr. Berger and one of his medical school professors both completed a standardized rating scale about his ADHD symptoms, and the ratings suggested extremely severe symptoms. Dr. Beach did not note the conflict between these ratings than those that she herself had obtained in 2010 on the BASC. She also now claimed that Mr. Berger had a long history of ADHD dating to a diagnosis in 1994. She even claimed that Mr. Berger's diagnosis had been "confirmed" by a psychiatrist, though

---

[4] A general point about Dr. Smith: Dr. Smith generally obtained far less "evidence" of disability than Dr. Beach did—at least prior to Mr. Berger's denial of accommodations on the MCAT. Mr. Berger's attorney now suggests that Dr. Smith is less qualified than Dr. Beach, since he "is an educator, not a clinical psychologist." According to his CV, it appears that Dr. Smith has a doctoral degree from a combined program in school and clinical psychology. Perhaps the attorney was confused because the degree happens to be an "Ed.D." but it appears that Dr. Smith is a psychologist, licensed for "general clinical practice."

no evidence of that has been submitted. Interestingly, on a self-report scale of executive function problems (the BRIEF), Mr. Berger's self-ratings only reached clinical significance on one of 8 subscales, and all of his composite scores were in the average range. In any case, Dr. Beach diagnosed ADHD.

- Most recently, in 2017, Dr. Beach reaffirmed the ADHD diagnosis; she claimed that all 9 of the 9 inattention symptoms of ADHD found in the DSM were either reported by Mr. Berger or observed by her.

As the summary above shows, there is really not clear, consistent evidence of ADHD from diagnostic evaluations. In addition, there are no real-world records showing significant ADHD symptoms or related functional impairment in educational or occupational settings. Admittedly, there have been scattered mentions of selected ADHD symptoms since the 1994 evaluation, but for the reasons that I have described, in my opinion there is really not persuasive evidence of ADHD.

<u>Evidence of Disability Status and Accommodation Needs</u>
As I have discussed, there is insufficient credible evidence of learning disabilities or ADHD, and for similar reasons there is insufficient evidence of substantial limitations in Mr. Berger's ability to read, write, concentrate, etc., when he is compared to most people in the general population. Although at times he has obtained scores during diagnostic evaluations that would suggest substantial limitations, those scores (and other evidence from the diagnostic evaluations) are not supported by—and are sometimes inconsistent with—other important evidence.

Finally, there is insufficient evidence suggesting that Mr. Berger requires any accommodations at all to access Step 2 CK of the USMLE. On the reading comprehension ("Verbal Reasoning") section of the MCAT, his scores were in the average range compared to other *medical school applicants* without any accommodations—he obtained those scores in the presence of other examinees, reading the items himself, and under the standard time allotment. Dr. Beach's argument that Mr. Berger is a lucky guesser is not credible, in my opinion. In addition, although it has been argued that the Step 2 CK exam is more difficult than past exams that Mr. Berger has taken (including the MCAT, and even Step 1 of the USMLE), there is insufficient credible evidence of deficits in his access skills (e.g., timed reading comprehension, concentration, stamina), relative to most people in the general population, that would make accommodations appropriate.

<u>Conclusions</u>
Mr. Berger's case is unusually complex. He has a long history of at least some accommodations (not all that he is currently requesting) in some prior settings, and he has multiple evaluators who have diagnosed him with various disorders. However, upon close inspection, much doubt is cast on his claims and those of his evaluators. The low scores that he obtained on a number of diagnostic tests are simply not credible, and on occasions when he has performed without accommodations and has had no incentive to show a need for accommodations, he has sometimes performed well (and far better than some of his diagnostic test scores would suggest). Further complicating matters is the fact that Dr. Beach—Mr. Berger's primary evaluator in recent years—is so disingenuous in her portrayal of her client. She offers an inaccurate history, ignores or dismisses data from her own prior evaluations of Mr. Berger, and characterizes

average-range performance as "severely low"; I appreciate her desire to advocate for Mr. Berger, but many of her comments only erode any confidence that can be placed in her objectivity. There are many reasons, then, for why I must conclude that there is insufficient credible evidence to support the request.


Benjamin J. Lovett, Ph.D.

# EXHIBIT 4

1073061          0-893-419-2
MCAT score report 9/9/10-

## Score Details

|  |  |
|---|---|
| **Name:** | BRENDAN |
| **Middle Name:** | |
| **Last Name:** | BERGER |
| **SSN:** | ▮▮▮▮▮ |
| **Test Date:** | 09/09/2010 |
| **Verbal Reasoning (VR):** | 10    Percentile Range: 67.8 - 83.4 |
| **Physical Sciences (PS):** | 06    Percentile Range: 11.6 - 23.8 |
| **Writing Sample (WS):** | M    Percentile Range: 9.7 - 31.0 |
| **Biological Sciences (BS):** | 08    Percentile Range: 26.8 - 41.9 |
| **Total Score:** | 24M Percentile Range: 38.0 - 43.6 |
| **Gender:** | Male |
| **DOB:** | 08/14/1985 |
| **State of Residence:** | ZZ |
| **Non-Standard Conditions:** | N |
| **Test Format:** | Computer-Based |

RECEIVED

OCT 1 4 2013

Disability Services



1073062        0-893-419-2
MCAT score report  9/10/0

## Score Details

| | |
|---|---|
| **Name:** | BRENDAN |
| **Middle Name:** | |
| **Last Name:** | BERGER |
| **SSN:** | ▮▮▮▮▮ |
| **Test Date:** | 09/10/2009 |
| **Verbal Reasoning (VR):** | 07   Percentile Range: 27.2 - 37.8 |
| **Physical Sciences (PS):** | 08   Percentile Range: 43.1 - 57.9 |
| **Writing Sample (WS):** | M   Percentile Range: 11.9 - 35.1 |
| **Biological Sciences (BS):** | 10   Percentile Range: 57.8 - 76.9 |
| **Total Score:** | 25M   Percentile Range: 44.7 - 50.9 |
| **Gender:** | Male |
| **DOB:** | ▮▮▮▮▮ |
| **State of Residence:** | OH |
| **Non-Standard Conditions:** | N |
| **Test Format:** | Computer-Based |

RECEIVED

OCT 1 4 2013

Disability Services

# EXHIBIT 5

Name: BERGER, BRENDAN   Year: 2002   Grade: 11   School Code: 361033   National Code:   School Code



1123046   0-893-419-2
PSAT–Test Scores (MCAT, G

# EXHIBIT 6

RECEIVED
OCT 1 4 2013

1073053   0-893-419-2
**Student Skills Analysis 5**

| STUDENT SKILLS ANALYSIS FOR | 1991 | STANFORD |
|---|---|---|
| BRENDA J BERGER | NORMS: | GRADE 02 |
| | PERIOD 17 | NATIONAL |
| GRADE: 02 | LEVEL: | PRIMARY 2 |
| TEST DATE: 05/94 | FORM: | J |

Disability Services

| CONTENT CLUSTERS | RAW SCORE/ NUMBER OF ITEMS | BELOW AVERAGE | AVERAGE | ABOVE AVERAGE |
|---|---|---|---|---|
| Word Study Skills | 20/48 | ✓ | | |
| Structural Analysis | 10/12 | ✓ | | |
| Compound Words | 3/4 | | ✓ | |
| Inflectional Endings | 4/4 | H✓ | | |
| Contractions | 3/4 | ✓ | | |
| Phonetic Analysis-Consonants | 5/18 | ✓ | | |
| Single Consonants | 1/6 | ✓ | | |
| Consonant Clusters | 2/6 | ✓ | | |
| Consonant Digraphs | 2/6 | ✓ | | |
| Phonetic Analysis-Vowels | 5/18 | ✓ | | |
| Short Vowel Sounds | 1/6 | ✓ | | |
| Long Vowel Sounds | 2/6 | | ✓ | |
| Other Vowel Sounds | 2/6 | | ✓ | |
| Reading Vocabulary | 32/40 | | ✓ | |
| Synonyms | 25/32 | | ✓ | |
| Context | 4/4 | | H✓ | |
| Multiple Meanings | 3/4 | | ✓ | |
| Reading Comprehension | 29/40 | | ✓ | |
| Recreational | 7/15 | | ✓ | |
| Textual | 11/12 | | | ✓ |
| Functional | 11/13 | | | ✓ |
| Concepts of Number | 23/34 | | ✓ | |
| Whole Numbers | 15/20 | | ✓ | |
| Fractions | 3/3 | | | ✓ |
| Operations and Properties | 5/11 | ✓ | | |
| Mathematics Computation | 21/36 | | ✓ | |
| Addition/Whole Numbers | 10/15 | | ✓ | |
| Addition Facts | 4/5 | | ✓ | |
| Addition/No Renaming | 6/6 | | | ✓ |
| Addition/Renaming | 0/4 | ✓ | | |
| Subtraction/Whole Numbers | 5/12 | ✓ | | |
| Subtraction Facts | 1/3 | ✓ | | |
| Subtraction/No Renaming | 4/6 | | ✓ | |
| Subtraction/Renaming | 0/3 | ✓ | | |
| Multiplication/Whole Numbers | 6/6 | | | ✓ |
| Division/Whole Numbers | 0/3 | | ✓ | |

| CONTENT CLUSTERS | RAW SCORE/ NUMBER OF ITEMS | BELOW AVERAGE | AVERAGE | ABOVE AVERAGE |
|---|---|---|---|---|
| Mathematics Applications | 28/35 | | | ✓ |
| Problem Solving | 14/16 | | | ✓ |
| Solution Sentences | 4/5 | | | ✓ |
| Solve Problems | 10/11 | | | ✓ |
| Graphs | 6/6 | | | ✓ |
| Pictographs | 3/3 | | | ✓ |
| Single Bar Graphs | 3/3 | | | ✓ |
| Geometry | 4/5 | | | ✓ |
| Measurement | 4/8 | ✓ | ✓ | |
| Language | 33/44 | | | ✓ |
| Language Mechanics | 18/24 | | | ✓ |
| Capitalization | 5/8 | | | ✓ |
| Punctuation | 6/8 | | | ✓ |
| Applied Grammar | 7/8 | | | ✓ |
| Language Expression | 14/16 | | | ✓ |
| Study Skills/ABC Order | 1/4 | ✓ | | |
| Spelling | 11/30 | ✓ | | |
| Sight Words | 3/6 | | ✓ | |
| Phonetic Principles | 5/16 | ✓ | | |
| Structural Principles | 3/8 | | ✓ | |
| Environment | 36/40 | | | ✓ |
| Social Environment | 16/20 | | | ✓ |
| Natural Environment | 20/20 | | | ✓ |
| Listening | 42/45 | | | ✓ |
| Vocabulary | 14/15 | | | ✓ |
| Listening Comprehension | 28/30 | | | ✓ |
| Retention | 14/15 | | | ✓ |
| Organization | 14/15 | | | ✓ |

| READING GROUP | LANGUAGE ARTS GROUP |
|---|---|
| Decoding | Spelling |

| MATHEMATICS GROUP | COMMUNICATIONS GROUP |
|---|---|
| Computation | Reading |

Scores based on Normative Data Copyright © 1992 by Harcourt Brace Jovanovich, Inc.  All rights reserved.
COPY 01                                                        PROCESS NO. 19405810-3717-00201-1

 THE PSYCHOLOGICAL CORPORATION
HARCOURT BRACE JOVANOVICH, INC.

# STANFORD

### ACHIEVEMENT TEST SERIES, EIGHTH EDITION


RECEIVED
OCT 14 2013
Disability Services

TEACHER:  NO NAME GIVEN

SCHOOL:  YOUR CITY

DISTRICT:  YOUR CITY

STUDENT NUMBER:  909382

NATIONAL GRADE PERCENTILE BANDS



| TESTS | NO. OF ITEMS | SCALED SCORE | NATL PR-S | GRADE EQUIV |
|---|---|---|---|---|
| Total Reading | 128 | 572 | 42-5 | 2.7 |
| Word Stdy Skills | 48 | 513 | 5-2 | 1.6 |
| Vocabulary | 40 | 607 | 71-6 | 3.9 |
| Reading Comp. | 40 | 604 | 63-6 | 3.5 |
| Total Math | 105 | 565 | 52-5 | 2.9 |
| Concepts of No. | 34 | 560 | 45-5 | 2.7 |
| Computation | 36 | 547 | 39-4 | 2.6 |
| Applications | 35 | 593 | 75-6 | 3.7 |
| Language | 44 | 583 | 46-5 | 2.7 |
| Spelling | 30 | 530 | 15-3 | 2.0 |
| Environment | 40 | 632 | 97-9 | 6.0 |
| Listening | 45 | 659 | 98-9 | 8.7 |
| Basic Battery | 352 | 572 | 47-5 | 2.8 |
| Complete Battery | 392 | 577 | 54-5 | 2.9 |

AGE  8 YRS  9 MOS

Recently this student took the Stanford Achievement Test. This brief description of the scores presented above tells how the student did on the test, compared to the 1991 performance of students in the same grade from across the country. The Complete Battery score is a global indication of how well the student performed on the test. The score for this student is in the middle range for the grade, which means that performance on all subtests combined was well within the average range.

In reading, the total score is in the average range for the grade. Continued opportunities to read a variety of materials should be helpful.

In mathematics, the total score is within the average range for the grade. Continued experiences in working with number concepts, computation, and problem solving could be helpful to future learning in mathematics.

Performance on the Language subtest was in the middle range for the grade. However, the score on the Spelling subtest is low.

The score on the Environment subtest is among the high scores for the grade. The student seems to be developing a good foundation for understanding how people live and interact, as well as understanding plants, animals, states of matter, energy, and the senses.

Performance on the Listening subtest was in the above-average range for this grade, indicating that the student is doing well at processing information that is heard.

It is important to keep in mind that test scores give only one picture of how a student is doing in school and that many things can affect a student's test scores. Therefore, it is important to consider other kinds of information as well. The school has more detailed information about how the student is doing.

COPY 01

PROCESS NO. 19405810-3717-00201-1

Copyright © 1989 by Harcourt Brace Jovanovich, Inc.
All rights reserved. Printed in the United States of America.



```
1073054        0-893-419-2
Student Skills Analysis 5
```

RECEIVED
OCT 1 4 2013
Disability Solutions

STUDENT SKILLS ANALYSIS
FOR

BRENDA J BERGER

GRADE: 03
TEST DATE: 05/95

1988        STANFORD
NORMS        GRADE: 03
PERIOD 17    NATIONAL
LEVEL:       PRIMARY 3
FORM:        J

| CONTENT CLUSTERS | RAW SCORE/ NUMBER OF ITEMS | BELOW AVERAGE | AVERAGE | ABOVE AVERAGE |
|---|---|:---:|:---:|:---:|
| Word Study Skills | 31/48 | | | |
| Structural Analysis | 10/12 | | ✓ | |
| Phonetic Analysis-Consonants | 10/18 | ✓ | | |
| Phonetic Analysis-Vowels | 11/18 | | ✓ | |
| Reading Vocabulary | 37/40 | | | ✓ |
| Synonyms | 25/28 | | | |
| Context | 6/6 | | | |
| Multiple Meanings | 6/6 | | | ✓ |
| Reading Comprehension | 40/54 | | ✓ | |
| Recreational | 13/18 | | ✓ | |
| Textual | 14/18 | | ✓ | |
| Functional | 13/18 | | ✓ | |
| Literal | 20/26 | | ✓ | |
| Inferential | 19/25 | | ✓ | |
| Critical | 1/3 | | ✓ | |
| Thinking Skills | 8/13 | | ✓ | |
| Concepts of Number | 24/34 | | ✓ | |
| Whole Numbers | 14/18 | | ✓ | |
| Fractions | 2/3 | | ✓ | |
| Operations and Properties | 8/13 | | ✓ | |
| Thinking Skills | 4/6 | | ✓ | |
| Mathematics Computation | 18/44 | ✓ | | |
| Addition/Whole Numbers | 10/12 | | ✓ | |
| Subtraction/Whole Numbers | 2/12 | ✓ | | |
| Multiplication/Whole Numbers | 5/12 | ✓ | | |
| Division/Whole Numbers | 1/8 | ✓ | | |
| Mathematics Applications | 23/38 | | ✓ | |
| Problem Solving | 12/20 | | ✓ | |
| Graphs and Charts | 6/6 | | | ✓ |
| Geometry/Measurement | 5/12 | ✓ | | |
| Thinking Skills | 6/12 | | ✓ | |
| Language Mechanics | 18/30 | | ✓ | |
| Capitalization | 4/7 | | ✓ | |
| Punctuation | 7/11 | | ✓ | |
| Applied Grammar | 7/12 | | ✓ | |

| CONTENT CLUSTERS | RAW SCORE/ NUMBER OF ITEMS | BELOW AVERAGE | AVERAGE | ABOVE AVERAGE |
|---|---|:---:|:---:|:---:|
| Language Expression | 15/30 | | ✓ | |
| Sentence Correctness | 7/20 | ✓ | | |
| Sentence Effectiveness | 8/10 | | | ✓ |
| Spelling | 12/36 | ✓ | | |
| Sight Words | 3/8 | ✓ | | |
| Phonetic Principles | 5/16 | ✓ | | |
| Structural Principles | 4/12 | ✓ | | |
| Study Skills | 18/30 | | | ✓ |
| Library/Reference Skills | 13/19 | | | ✓ |
| Information Skills | 5/11 | | | ✓ |
| Thinking Skills | 3/8 | | | |
| Science | 42/50 | | | ✓ |
| Physical Science | 13/16 | | | ✓ |
| Biological Science | 18/20 | | | ✓ |
| Earth/Space Science | 11/14 | | ✓ | |
| Science Process Skills | 24/28 | | | ✓ |
| Knowledge | 9/10 | | | ✓ |
| Understanding | 15/18 | | | ✓ |
| Thinking Skills | 18/22 | | | ✓ |
| Social Science | 47/50 | | | ✓ |
| Geography | 14/14 | | | ✓ |
| History | 8/8 | | | ✓ |
| Political Science | 7/9 | | | ✓ |
| Economics | 9/10 | | | ✓ |
| Psych/Social/Anthro | 9/9 | | | ✓ |
| Knowledge | 16/16 | | | ✓ |
| Understanding | 14/15 | | | ✓ |
| Thinking Skills | 17/19 | | | ✓ |
| Listening | 41/45 | | | ✓ |
| Vocabulary | 13/15 | | | ✓ |
| Listening Comprehension | 28/30 | | | ✓ |
| Thinking Skills | 5/6 | | | ✓ |
| Using Information | 54/70 | | ✓ | |
| Thinking Skills | 61/86 | | ✓ | |

| READING GROUP | LANGUAGE ARTS GROUP |
|---|---|
| Decoding | Spelling |

| MATHEMATICS GROUP | COMMUNICATIONS GROUP |
|---|---|
| Computation | Language |

Scores based on Normative Data Copyright © 1989 by Harcourt Brace Jovanovich, Inc.  All rights reserved.
COPY 01
PROCESS NO. 19502237-4128-00307-1

# STANFORD

ACHIEVEMENT TEST SERIES, EIGHTH EDITION

SCHOOL:     YOUR SCHOOL          STUDENT NUMBER:     20017660

DISTRICT:   YOUR CITY

| TESTS | NO. OF ITEMS | SCALED SCORE | NATL PR-S | GRADE EQUIV |
|---|---|---|---|---|
| Total Reading | 142 | 625 | 63-6 | 4.7 |
| Word Stdy Skills | 48 | 588 | 30-4 | 2.9 |
| Vocabulary | 40 | 680 | 94-8 | 8.5 |
| Reading Comp. | 54 | 631 | 67-6 | 5.1 |
| Total Math | 116 | 579 | 34-4 | 3.4 |
| Concepts of No. | 34 | 606 | 59-5 | 4.3 |
| Computation | 44 | 548 | 14-3 | 2.6 |
| Applications | 38 | 591 | 46-5 | 3.7 |
| Total Language | 60 | 588 | 28-4 | 3.0 |
| Lang Mechanics | 30 | 592 | 32-4 | 3.2 |
| Lang Expression | 30 | 585 | 28-4 | 2.8 |
| Spelling | 36 | 554 | 8-2 | 2.1 |
| Study Skills | 30 | 600 | 36-4 | 3.1 |
| Science | 50 | 644 | 91-8 | 7.5 |
| Social Science | 50 | 682 | 99-9 | 12.6 |
| Listening | 45 | 675 | 98-9 | 10.8 |
| Using Information | 70 | 631 | 68-6 | 5.1 |
| Thinking Skills | 86 | 624 | 75-6 | 5.3 |
| Basic Battery | 429 | 599 | 43-5 | 3.7 |
| Complete Battery | 529 | 610 | 54-5 | 4.3 |

NATIONAL GRADE PERCENTILE BANDS

1   10   30   50   70   90   99

RECEIVED

OCT 1 4 2013

Disability Services

Recently this student took the Stanford Achievement Test. This brief description of the scores presented above tells how the student did on the test, compared to the 1988 performance of students in the same grade from across the country. The Complete Battery score is a global indication of how well the student performed on the test. The score for this student is in the middle range for the grade, which means that performance on all subtests combined was well within the average range.

In reading, the total score is in the average range for the grade. Continued opportunities to read a variety of materials should be helpful.

In mathematics, the total score is just below average for the grade. Additional experience in working with number concepts, computation, and problem solving could be helpful to future learning in mathematics.

Overall, performance on the language subtests was somewhat below average for the grade. Performance on the Study Skills subtest was also somewhat below average. The score on the Spelling subtest is low.

The Science and Social Science subtest scores are among the highest for the grade and indicate good understanding of the concepts and skills measured by these subtests.

Performance on the Listening subtest was in the above-average range for this grade, indicating that the student is doing well at processing information that is heard.

It is important to keep in mind that test scores give only one picture of how a student is doing in school and that many things can affect a student's test scores. Therefore, it is important to consider other kinds of information as well. The school has more detailed information about how the student is doing.

COPY 01                                        PROCESS NO. 19502237-4128-00307-1

1073055    0-893-419-2
**Student Skills Analysis 5**

```
STUDENT SKILLS ANALYSIS
        FOR

   BRENDA J BERGER              GRADE: 04
                             TEST DATE: 05/96
```

```
1991        STANFORD
NORMS:      GRADE 04
PERIOD 18   NATIONAL
LEVEL:      INTERMED 1
FORM:       J
```

| CONTENT CLUSTERS | RAW SCORE/ NUMBER OF ITEMS | BELOW AVERAGE | AVERAGE | ABOVE AVERAGE |
|---|---|---|---|---|
| Reading Vocabulary | 40/ 40 | | | ✓ |
| Synonyms | 24/ 24 | | | ✓ |
| Context | 8/ 8 | | | ✓ |
| Multiple Meanings | 8/ 8 | | | ✓ |
| Reading Comprehension | 44/ 54 | | | ✓ |
| Recreational | 15/ 18 | | | ✓ |
| Textual | 14/ 18 | | ✓ | |
| Functional | 15/ 18 | | | ✓ |
| Literal | 17/ 21 | | ✓ | |
| Inferential | 22/ 26 | | ✓ | |
| Critical | 5/ 7 | | ✓ | |
| Thinking Skills | 14/ 17 | | | ✓ |
| Concepts of Number | 19/ 34 | | ✓ | |
| Whole Numbers | 8/ 16 | | ✓ | |
| Fractions | 1/ 4 | | ✓ | |
| Decimals | 3/ 3 | | | ✓ |
| Operations and Properties | 7/ 11 | | ✓ | |
| Thinking Skills | 3/ 6 | | ✓ | |
| Mathematics Computation | 17/ 44 | ✓ | | |
| Addition/Whole Numbers | 5/ 6 | | ✓ | |
| Subtraction/Whole Numbers | 1/ 6 | ✓ | | |
| Multiplication/Whole Numbers | 5/ 12 | ✓ | | |
| Division/Whole Numbers | 2/ 10 | ✓ | | |
| Add and Subtract/Decimals | 3/ 6 | | ✓ | |
| Add and Subtract/Fractions | 1/ 4 | ✓ | | |
| Mathematics Applications | 29/ 40 | | ✓ | |
| Problem Solving | 15/ 22 | | ✓ | |
| Graphs and Charts | 5/ 6 | | | ✓ |
| Geometry/Measurement | 9/ 12 | | ✓ | |
| Thinking Skills | 12/ 15 | | ✓ | |
| Language Mechanics | 18/ 30 | | ✓ | |
| Capitalization | 1/ 7 | ✓ | | |
| Punctuation | 5/ 11 | ✓ | | |
| Applied Grammar | 12/ 12 | | | ✓ |

| CONTENT CLUSTERS | RAW SCORE/ NUMBER OF ITEMS | BELOW AVERAGE | AVERAGE | ABOVE AVERAGE |
|---|---|---|---|---|
| Language Expression | 16/ 30 | | ✓ | |
| Sentence Correctness | 10/ 20 | | ✓ | |
| Sentence Effectiveness | 6/ 10 | | ✓ | |
| Spelling | 20/ 40 | | ✓ | |
| Homophones | 5/ 8 | | ✓ | |
| Phonetic Principles | 7/ 16 | ✓ | | |
| Structural Principles | 8/ 16 | | ✓ | |
| Study Skills | 14/ 30 | | ✓ | |
| Library/Reference Skills | 5/ 17 | ✓ | | |
| Information Skills | 9/ 13 | | ✓ | |
| Thinking Skills | 3/ 9 | ✓ | | |
| Science | 41/ 50 | | | ✓ |
| Physical Science | 14/ 16 | | | ✓ |
| Biological Science | 18/ 20 | | | ✓ |
| Earth/Space Science | 9/ 14 | | ✓ | |
| Science Process Skills | 25/ 31 | | | ✓ |
| Knowledge | 9/ 10 | | | ✓ |
| Understanding | 14/ 16 | | | ✓ |
| Thinking Skills | 18/ 24 | | | ✓ |
| Social Science | 43/ 50 | | | ✓ |
| Geography | 11/ 13 | | | ✓ |
| History | 7/ 8 | | | ✓ |
| Political Science | 9/ 10 | | | ✓ |
| Economics | 9/ 10 | | | ✓ |
| Psych/Sociol/Anthro | 7/ 9 | | ✓ | |
| Knowledge | 8/ 10 | | ✓ | |
| Understanding | 17/ 17 | | | ✓ |
| Thinking Skills | 18/ 23 | | | ✓ |
| Listening | 40/ 45 | | | ✓ |
| Vocabulary | 13/ 15 | | | ✓ |
| Listening Comprehension | 27/ 30 | | | ✓ |
| Thinking Skills | 7/ 7 | | | ✓ |
| Using Information | 47/ 70 | | ✓ | |
| Thinking Skills | 75/101 | | ✓ | |

RECEIVED

OCT 14 2019

Disability Services

```
         READING GROUP

          Enrichment
```

```
       LANGUAGE ARTS GROUP

       Language Expression
```

```
        MATHEMATICS GROUP

          Computation
```

```
      COMMUNICATIONS GROUP

            Language
```

Scores based on Normative Data Copyright © 1992 by Harcourt Brace Jovanovich, Inc.  All rights reserved.
COPY 01
PROCESS NO. 19602954-4648-00341-1

# STANFORD

### ACHIEVEMENT TEST SERIES, EIGHTH EDITION

SCHOOL: YOUR SCHOOL
SCHOOL CODE: 643      STUDENT NUMBER:    20203493
DISTRICT: YOUR CITY



NATIONAL GRADE PERCENTILE BANDS

| TESTS | NO. OF ITEMS | SCALED SCORE | NATL PR-S | GRADE EQUIV |
|---|---|---|---|---|
| Total Reading | 94 | 682 | 94-8 | 9.8 |
| Vocabulary | 40 | 761 | 99-9 | PHS |
| Reading Comp. | 54 | 657 | 78-7 | 7.5 |
| Total Math | 118 | 608 | 38-4 | 4.5 |
| Concepts of No. | 34 | 614 | 43-5 | 4.6 |
| Computation | 44 | 579 | 19-3 | 3.5 |
| Applications | 40 | 635 | 61-6 | 5.7 |
| Total Language | 60 | 605 | 28-4 | 3.5 |
| Lang Mechanics | 30 | 604 | 28-4 | 3.5 |
| Lang Expression | 30 | 606 | 32-4 | 3.5 |
| Spelling | 40 | 607 | 31-4 | 3.8 |
| Study Skills | 30 | 596 | 26-4 | 3.0 |
| Science | 50 | 664 | 93-8 | 9.9 |
| Social Science | 50 | 668 | 89-8 | 10.3 |
| Listening | 45 | 688 | 98-9 | PHS |
| Using Information | 70 | 629 | 49-5 | 4.8 |
| Thinking Skills | 101 | 642 | 75-6 | 7.4 |
| Basic Battery | 387 | 625 | 51-5 | 5.1 |
| Complete Battery | 487 | 634 | 61-6 | 5.3 |



RECEIVED

OCT 1 4 2013

Disability Services

DOB 08/14/85

    Recently this student took the Stanford Achievement Test. This brief description of the scores presented above tells how the student did on the test, compared to the 1991 performance of students in the same grade from across the country. The Complete Battery score is a global indication of how well the student performed on the test. The score for this student is in the middle range for the grade, which means that performance on all subtests combined was well within the average range.

    The student did well on the reading subtests. The total score is among the highest for the grade.

    In mathematics, the total score is just below average for the grade. Additional experience in working with number concepts, computation, and problem solving could be helpful to future learning in mathematics.

    Overall, performance on the language subtests was somewhat below average for the grade. Scores on the Spelling and Study Skills subtests are also somewhat below average.

    The Science and Social Science subtest scores are among the highest for the grade and indicate good understanding of the concepts and skills measured by these subtests.

    Performance on the Listening subtest was in the above-average range for this grade, indicating that the student is doing well at processing information that is heard.

    It is important to keep in mind that test scores give only one picture of how a student is doing in school and that many things can affect a student's test scores. Therefore, it is important to consider other kinds of information as well. The school has more detailed information about how the student is doing.

# EXHIBIT 7

# Iowa Tests of Basic Skills and Cognitive Abilities Test

RECEIVED
OCT 14 2013
Disability Services

Student: BERGER, BRENDAN
Sex: M   Grade: 6
I.D. No.:
Class/Group: HENKEL
Age: 12 Yrs 2 Mos
Birth Date: 12/k
Building: ST GABRIEL CONSOLIDA
LvlForm: 12/K
Bldg. Code: 021
System: CINCINNATI DIOCESE
Test Date: 10/97
Order No.: 306-A7010969-00-001
Norms: FALL 1992
Page: 96

**Service 2a: Profile Narrative Report — Parent Copy**

## Iowa Tests of Basic Skills

| Iowa Tests of Basic Skills | Predicted Scores | | Obtained Scores | | | National Percentile Rank |
|---|---|---|---|---|---|---|
| | PGE | PNPR | GE | NS | NPR | |
| Vocabulary | 8.888 | 12.7 | 8 | 91 | 8 | 99 |
| Rdg. Comprehension | 9.887 | 9.1 | 7 | 82 | | |
| Reading Total | 9.287 | 11.1 | 9 | 96 | | |
| Spelling | 8.278 | 7.2 | 6 | 66 | | |
| Capitalization | 10.080 | 5.9 | 4 | 47 | | |
| Punctuation | 10.480 | 5.5 | 4 | 43 | | |
| Usage & Expression | 11.435 | 8.0 | 6 | 67 | | |
| Language Total | 9.883 | 6.5 | 5 | 55 | | |
| Concepts/Estimate | 9.283 | 6.5 | 5 | 74 | | |
| Probs/Data Interp. | 9.281 | 8.4 | 6 | 75 | | |
| Math Total | 8.682 | 7.9 | 6 | 75 | | |
| Core Total | 9.285 | 8.4 | 7 | 78 | | |
| Social Studies | 9.936 | 12.7 | 9 | 96 | | |
| Science | 10.183 | 13.8 | 9 | 99 | | |
| Maps & Diagrams | 10.082 | 9.0 | 7 | 77 | | |
| Reference Mat'ls | 9.684 | 10.8 | 8 | 89 | | |
| Sources of Info Total | 9.884 | 9.8 | 8 | 84 | | |
| Composite | 9.787 | 10.4 | 8 | 91 | | |
| Math Computation | 7.677 | 5.6 | 5 | 42 | | |

PGE=Pred Grade Equivalent, PNPR=Pred Nat'l %ile Rank, GE=Grade Equivalent, NS=Nat'l Stan, NPR=Nat'l %ile Rank

National Grade Percentile Rank — Low 10 25 40 50 60 75 90 High

## Cognitive Abilities Tests

| Cognitive Abilities Tests | N Items Att | N Raw Score | Age Scores SAS | AS | APR | NS | Grade Scores APR | NS | NPR |
|---|---|---|---|---|---|---|---|---|---|
| Verbal | 65 | 65 | 59 | 121 | 8 | 91 | 8 | 94 | |
| Quantitative | 65 | 60 | 44 | 109 | 6 | 71 | 7 | 77 | |
| Nonverbal | 65 | 59 | 56 | 117 | 7 | 86 | 8 | 89 | |
| Composite | | | | 117 | 7 | 86 | 8 | 90 | |

SAS=Standard Age Score, AS=Nat'l Age Stan, APR=Nat'l Age %ile Rank

---

Brendan was given the Iowa Tests of Basic Skills in October, 1997. He is in sixth grade at St Gabriel Consolida in Cincinnati Diocese.

Brendan's Composite score is the score that best describes his overall achievement on the tests. Brendan earned a Composite grade equivalent of 10.4 on the level 12 test. This means that his test performance was approximately the same as that made by a typical student in the tenth grade at the end of the fourth month. Brendan's Composite national percentile rank of 91 means that he scored higher than 91 percent of sixth grade students nationally. His overall achievement appears to be well above average for sixth grade.

A student's scores can be compared with each other to determine relative strengths and weaknesses. The following are areas of relative strength for Brendan: Vocabulary and Science. Some of these strengths might be used to help improve other areas. The following areas are relative weaknesses which may need the most work: Spelling, Capitalization and Punctuation, Usage & Expression, Math Concepts & Estimation, Math Problems & Data Interpretation, Maps and Diagrams, and Math Computation.

Different students bring different patterns and levels of abilities to learning tasks. He was given the Cognitive Abilities Test to help find out about his abilities. Brendan's national percentile rank of 94 on verbal ability means that, compared with other sixth grade students nationally, Brendan scored higher than 94 percent. Brendan appears to be well above average in verbal ability. Brendan's national percentile rank is 77 in quantitative ability and 89 in nonverbal ability. Brendan seems to be above average in quantitative ability and well above average in nonverbal ability. Brendan's composite percentile rank of 90 is a general statement of his ability. He seems to be well above average in overall cognitive ability.

How are Brendan's achievement scores compared to his cognitive abilities scores? Brendan's actual achievement is higher than expected in two test areas: Vocabulary and Science. Brendan's actual achievement is lower than expected in two test areas. These are Capitalization and Punctuation. These represent areas in which Brendan is not doing as well as his aptitude might be expected. Brendan might do better in these areas with additional effort and with continued encouragement.



1073058   0-893-419-2
Iowa Test of Basic Skills

# EXHIBIT 8

# SAT

**STUDENT SCORE REPORT**

REPORT DATE: 07/12/13

1073058          0-893-419-2
SAT score report 1/24/04-

SEQ#    0000087    TR

BRENDAN J BERGER
27 CREEKWOOD SQ
CINCINNATI OH 45246-3838

## YOUR SCORES

**Test Date:  JAN 24, 2004**

| SAT | Score | Score Range | Percentiles College-bound Seniors National | State |
|---|---|---|---|---|
| Reading | 660 | 650–690 | 91 | 86 |
| Math | 680 | 650–710 | 90 | 87 |

## WHAT DOES YOUR SCORE RANGE MEAN?

Your performance is best represented by the score ranges above instead of a single score. The score range is an estimate of how your scores might vary if you were tested at different times within a short time period. Most of the time, your score would vary slightly within your score range, but it would likely fall within the range given. Colleges know this, and they receive the score ranges along with your scores.

## HOW DO YOU COMPARE WITH COLLEGE-BOUND SENIORS?

Percentiles compare your scores to those of other students who took the test. The percentile for your reading score of 660 is 91, indicating that you scored higher than 91% of last year's group of college-bound seniors. The percentile for your math score of 680 is 90, indicating you scored higher than 90% of last year's group of college-bound seniors.

## WHAT ARE THE AVERAGE SCORES?

For college-bound seniors in the class of 2012, the average reading score was 496 and the average math score was 514.

## WILL YOUR SCORES CHANGE IF YOU TAKE THE TEST AGAIN?

Among students with reading scores of 660, 46% score higher on a second testing, 46% score lower, and 8% receive the same score. On average, a person with a reading score of 660 gains 2 point(s) on a second testing.

Among students with math scores of 680, 42% score higher on a second testing, 49% score lower, and 9% receive the same score. On average, a person with a math score of 680 loses 3 point(s) on a second testing.

Your verbal scores appear in the area marked Reading, because verbal scores from the SAT taken before March 2005 are comparable to the current reading scores. Math scores from the SAT taken before March 2005 are comparable to current math scores. There was no writing section on the version of the SAT you took, so any information about the writing section is not applicable to your score report. For more information on understanding your SAT score on tests prior to March 2005, please see **sat.collegeboard.org/scores.**

RECEIVED
OCT 1 4 2013
Disability Services

## SENDING YOUR SCORES

This Student Score Report, showing all your scores, is intended for your use only.
Sending official SAT® score reports through College Board is the only way to ensure that colleges receive your scores. Score Choice gives you the option to choose which scores (by test date for the SAT and by individual test for SAT Subject Tests™) you send to colleges -- in accordance with an institution's stated score-use practice. Visit sat.collegeboard.org/scores for detailed information about your scores, to review your essay and to send scores.

## SUMMARY OF SCORES

| SAT | | | | | | | | SAT Subject Tests [2] | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Test Date MM/DD/YY | Grade Level | Reading | Math | Writing | Writing Subscores Multiple Choice | Essay | Test Date MM/DD/YY | Grade Level | Test 1 | Score | Writing Subscores Multiple Choice | Writing Sample | Listening Subscores Reading | Listening | Usage/Pro | Test 2 | Score | Test 3 | Score |
| 01/24/04 | 1Z | 660 | 680 | | | | | | | | | | | | | | | | |

[1]Prior to March 2005, the reading section was known as the verbal section. Scores from these two sections are comparable.

[2]Not all tests have subscores.

[3]Scores from the SAT Subject Test in Writing and the writing section on the SAT are not comparable.

## ID INFORMATION

Register online to take the SAT again.  To set up an online SAT account you will need the date you tested and the registration number below.

| Sex | Date of Birth MM/DD/YY | Registration Number | Test Center Number | High School Name and Code | |
|---|---|---|---|---|---|
| M | | B7364249 | 36185 | MOELLER HIGH SCHOOL | 361033 |



**The College Board**

Services for Students with Disabilities
SAT® and PSAT/NMSQT® Programs
PO Box 6226 • Princeton, NJ 08541-6226
Voice: 609 771-7137   TTY: 609 882-4118
Fax: 609 771-7944   E-mail: ssd@info.collegeboard.org

April 10, 2009

1073064          0-893-419-2
College Board Accomm Ltr

Brendan Berger
27 Creekwood Square
Cincinnati, OH  45246

Dear Brendan Berger:

You asked for confirmation that you were approved to take College Board Exams, which includes SAT, PSAT and AP, with accommodations.

This letter confirms that in January of 2004 you were approved to take College Board Exams with 50% Extended Time accommodations.

We can confirm only that you received non-standard administrations of College Board Exams in 2004.

We caution any reader of this letter that our confirmation of accommodations approved in the past does not mean an endorsement of the accommodations at the present time.

Sincerely,

Marcia Ricks, Senior Customer Service Representative

RECEIVED

OCT 1 4 2013

Disability Services