**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| BRENDAN J. BERGER, | |
| Plaintiff, | Case No. 1:19cv00099 |
| v. | Hon. Karen L. Litkovitz |
| NATIONAL BOARD OF MEDICAL EXAMINERS | |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO LIFT STAY AND
VACATE THE COURT'S PRELIMINARY INJUNCTION OF AUGUST 27, 2019**

Plaintiff offers two main arguments for denying NBME's Motion: (1) that NBME did not establish "procedural defects or irregularities" in seeking Rule 60(b) relief, and (2) that "several of the delays and changes to the exam dates" were NBME's fault. Doc. 43 ("Opp."), at 1. Setting aside that both arguments are meritless (the first has no basis in the law, and the second has no basis in the facts), Mr. Berger *never* argues that he will be irreparably harmed if the Court vacates the preliminary injunction.

That is because Mr. Berger will *not* be irreparably harmed, as demonstrated by his own pattern of conduct since the Court entered its preliminary injunction order in August (Doc. 37, "Order"). It has been nearly eight months since the Order was entered, and Mr. Berger has yet to take Step 2 CK. He has repeatedly postponed his testing dates, most recently for the inexplicable reason that his case is pending appeal and the parties requested extensions to the briefing schedule. Simply put, Mr. Berger is in no rush to take Step 2 CK, and that reality, which not even Mr. Berger denies, is incompatible with a finding of irreparable harm—an "indispensable" element of the Court's ruling. *See D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019). And because the

interests in finality and reliance are not at issue (Plaintiff has, by his own doing, not yet tested), and NBME was disadvantaged by the expedited proceedings, the Court should vacate the Order and direct the parties to litigate with the benefit of full discovery.

I. **Mr. Berger misconstrues the factual record to shift blame and obfuscate his own failure to test in a timely manner.**

Likely recognizing that he cannot demonstrate irreparable harm, Mr. Berger blames NBME and "its affiliates" for "initial delays." Opp. at 8; *see* Opp. at 2-4. That assertion is meritless. Mr. Berger is responsible for his failure to test in a timely manner, and his numerous post-ruling delays negate the Court's finding of irreparable harm.

1) Failure to test in August 2019. Mr. Berger did not test on or near his "must test by August 28, 2019" date (*see, e.g.*, Doc. 20-1, at 2), because of *his own* failure to register with the Educational Commission for Foreign Medical Graduates ("ECFMG")—the entity responsible for registering foreign medical students for the USMLE. ECFMG and NBME are distinct entities; they are not, as Mr. Berger claims, "affiliates," and NBME is in no way responsible for any problems that arose between Mr. Berger and ECFMG, as Mr. Berger suggests. Opp. at 2; Berger Decl. ¶¶ 6-7; *see* Doc. 30 ("Tr.1"), at 165 (statement by NBME's counsel that "[ECFMG is] a distinct organization from us"). Mr. Berger concedes that his eligibility to test "expired during the course of the litigation," Opp. at 2, but omits that his three-month eligibility period, which began in April 2019, expired in the ordinary course on June 30, 2019. *See* Doc 43-3 ("Pl.'s Ex. 2"), at 1. Mr. Berger was not registered with ECFMG when he sought a preliminary injunction, and he had been ineligible to take Step 2 CK for almost two months by August 28. *See id.*

As far as NBME is aware, Mr. Berger (and, by extension, his counsel) mistakenly assumed that his eligibility period was "on hold" (*see, e.g.*, Tr.1 at 163-64), without confirming that with ECFMG at any point between early 2019 (when he first registered) and his August 2019 test date—a quick and simple step one would fully expect from someone claiming under oath that he *must* test by August 28, and who was clearly uncertain about the logistics of his eligibility. *See e.g.*,

Tr.1 at 163 ("*I guess* [ECFMG] interface[s] with the USMLE or NBME" (emphasis added)), 164 ("*I don't know* if it's NBME that would be issuing that . . . or if it's the Court's decision or not. *I'm not certain exactly how that would work.*" (emphasis added)). Consistent with the ECFMG's published requirements, examinees must monitor their eligibility status, test within their three-month eligibility period, or request that ECFMG extend their eligibility. *See ECFMG Information Booklet: ECFMG Certification 2019*, at 1, 59, www.ecfmg.org/2019ib/2019ib.pdf ("[Applicants] are required to read and become familiar with the information contained in . . . the ECFMG Information Booklet," which explains that "[i]f you do not take an exam during your assigned eligibility period, you must reapply[.]").

Ignoring his own failure to test during his eligibility period, monitor the status of his eligibility to take Step 2 CK, or keep his eligibility up to date by extending it through the litigation, *see id.*, Mr. Berger tries to shift the blame to NBME, noting that "NBME did not promptly respond [to the Order] with its approval of accommodations," Opp. at 2; Berger Decl. ¶¶ 2-4 ("On the days following the August 27, 2019 Order, I did not receive any confirmation from NBME regarding the accommodations."). But Mr. Berger did not need a letter from NBME approving the accommodations to monitor and update his exam eligibility or re-register with ECFMG (and he does not indicate otherwise). And regardless, Mr. Berger could not have tested at this time—even assuming he did need letter from NBME (and he did not)—because, as discussed above, he failed to register with ECFMG and was thus ineligible to test.[1] Although Mr. Berger suggests otherwise, NBME was not responsible for keeping Mr. Berger apprised of his eligibility status with ECFMG, even though NBME did remind him, as a courtesy, that he was not registered. *See* Pl.'s Ex. 2; Berger Decl. ¶ 5. NBME is in no way responsible for Mr. Berger's failure to test on August 28.

2) Failure to test in November 2019. Nearly a week before his November 18 test date, Mr. Berger received conflicting information about his accommodations from Prometric, the third-party

---

[1] "ECFMG cannot begin to process a subsequent application for this exam until at least four weeks after the end of the eligibility period for the exam you did not take." *ECFMG Information Booklet: ECFMG Certification 2019*, at 59, www.ecfmg.org/2019ib/2019ib.pdf.

vendor that administers Step 2 CK. *See* Doc. 42 ("Mot."), at 5 n.2. Mr. Berger was "uncertain how long it would take for this to get resolved," so—instead of contacting NBME or his attorney—he just "scheduled the Step 2 CK for December 27 and 28[.]"[2] Doc. 43-1 ("Berger Decl.") ¶ 11. Mr. Berger's attempt to blame Prometric and NBME for his failure to test ignores that any issue could have been quickly and easily resolved, many days before his testing date, with minimal effort on his part. *See* Ex. 1 hereto (Dec. 13, 2019 letter from NBME's counsel to Mr. Berger's counsel) ("If he had simply contacted you or NBME at that time, I suspect the issue could have been addressed immediately, thereby allowing him to test on the November dates as scheduled.").

But, more importantly, Mr. Berger's lack of urgency is wholly incompatible with his claim that the preliminary injunction—granted despite incomplete discovery and based on Plaintiff's claim that he must test *now*—"continues to be necessary." Opp. at 1. Mr. Berger's actions would be expected from someone who, at best, is ambivalent about testing now or later, and, at worst, prefers to wait. If Mr. Berger's assertions about irreparable harm were true, wouldn't he have done everything in his power to ensure he could test in November (and, at a minimum, picked up the phone or sent a short email)? Mr. Berger's conduct speaks far louder than his words and belies any claim of irreparable harm.

3) Failure to test in December 2019. Mr. Berger says he rescheduled his December test dates due to illness, but also claims, with no support, that the "December 2019" test date was somehow delayed "due to NBME and its affiliates." Opp. at 8. NBME does not know if illness caused Mr. Berger to delay his December testing. It notes, however, that Mr. Berger rescheduled his December testing dates on December 20, a full week before the testing was to occur. *See* Doc. 42-1 ¶¶ 8, 9. And Mr. Berger's claim that NBME somehow delayed his December test administration is completely unfounded and untrue. NBME was not responsible in any way for this further delay, contrary to what Mr. Berger has represented to the Court.

---

[2] Mr. Berger's Opposition correctly notes that his counsel wrote NBME's counsel regarding the call with Prometric, Opp. at 3, but omits that that the letter was sent several weeks later, long after Mr. Berger had rescheduled, *see* Doc. 43-5 (Plf's Ex. 4) (Dec. 3, 2019).

4) Failure to test in January 2020. The next month, Mr. Berger postponed his January 2020 test date because of supposed "issues relating to the pending appeal and briefing extensions[.]" Opp. at 4; *see also* Berger Decl. ¶ 14 ("I rescheduled . . . due to the appeal to the Sixth Circuit and various briefing adjournments."). NBME has no idea how the pending appeal or requests for briefing extensions, which are being handled by his counsel, could possible warrant a delay in Mr. Berger taking the Step 2 CK exam. NBME's opening brief is not due until early June, and nothing about the appeal justifies a delay in testing. Mr. Berger has not offered a valid reason for not testing in January, and there was none.[3]

\* \* \* \*

Mr. Berger's post-ruling pattern of conduct makes clear that he will not suffer irreparable harm if required to fully litigate his case before obtaining the relief he seeks, as other plaintiffs must do. Contrary to Mr. Berger's assertions, NBME does not seek "a second chance to convince the court to rule in [its] favor by presenting new explanations, legal theories, or proof." *See* Opp. at 4, 6 (quoting *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001)). Rather, NBME urges the Court to vacate the Order based on changed factual circumstances since the Court's Order (set forth above)—all of which are of Plaintiffs' own making—and settled case law (set forth below) requiring irreparable harm to support the "extraordinary" relief awarded to Plaintiff.

## II. Mr. Berger misinterprets the relevant legal standard.

Mr. Berger's Opposition rests on two fundamental misinterpretations of the relevant legal standard. Each is discussed below.

First, Mr. Berger seems to argue, without explanation, that Rule 60(b) cannot be based on a change of factual circumstances because it must arise from a "procedurally defective foundation or irregularity." Opp. at 4-5, 7 (citing *LM Ins. Corp. v. Szuhay*, No. 5:15-CV-2647, 2017 WL

---

[3] Mr. Berger also suggests he postponed his January test date because "it was evident that I was not going to be eligible to complete the normal application and interview process for the 2020 Residency Match Program." Berger Decl. ¶ 14. To the extent *that* was the reason for the delay, Mr. Berger concedes that his eligibility for the 2020 Match was in fact the sole ground for his claimed irreparable harm, and that there is thus no longer any ground to sustain a finding of irreparable harm. *See id.*

2226723 (N.D. Ohio May 19, 2017)). But that is incorrect. It is well settled that courts can modify an injunction "if the circumstances, whether of law or *fact*, obtain[ed] at the time of its issuance *have changed, or new ones have since arisen*." *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426 (6th Cir. 2016) (emphasis added); *see also* Mot. at 6-7.[4] Accordingly, a material post-ruling change in factual circumstances can support such a motion. As set forth above, there has been a change in factual circumstances since the late July that warrants vacating the Order under Rule 60(b)(5) (or, alternatively, Rule 60(b)(6)).

Second, Mr. Berger contends that Rule 60(b) relief should only be granted in "unusual and extreme situations where principles of equity mandate relief," relying on *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519 (6th Cir. 2001). Opp. at 5. But *Blue Diamond* undercuts Mr. Berger's position. In that decision, this Circuit reasoned "that Rule 60(b)(6) relief is *especially appropriate* in cases where the interest in finality is somehow abrogated," for example, where a judgment is not final or has not yet been executed, or "a timely appeal is still pending." 249 F.3d at 528 (citations omitted) (distinguishing these scenarios from the facts at hand, where "four years had elapsed" between the final judgment and post-judgment relief, and payments had already been made to cover the benefits of numerous retirees); *see Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir. 1985) (holding that the district court abused its discretion by *not* granting Rule 60(b)(6) relief where, "at the time the plaintiffs filed the motion, the judgment was not final" and the state Supreme Court had anomalously reversed itself within a year).

Here, "Rule 60(b) relief is especially appropriate." *Blue Diamond*, 249 F.3d at 528. Although the Court effectively awarded Mr. Berger all the relief sought in his complaint, he has yet to test, and will not do so anytime soon. Berger Decl. ¶ 15. Far from relying on the Court's

---

[4] "An injunction is an ambulatory remedy that marches along according to the nature of a proceeding. It is executory and subject to adaptation as events may shape the need, except where rights are fully accrued or facts are so nearly permanent as to be substantially impervious to change." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984) (citation omitted).

order to his detriment, Mr. Berger has repeatedly delayed testing. *See supra*, Part I. Moreover, the preliminary injunction Order is currently pending appeal. *See Blue Diamond*, 249 F.3d at 528; Doc. 38 (notice of appeal). In sum, the equitable interests in finality and reliance simply do not weigh in Mr. Berger's favor. Regardless of whether Rule 60(b) motions are "generally not favored," Opp. at 4 (citation omitted), "the unique facts of *this case* compel the granting of [NBME's] motion," *Overbee*, 765 F.2d at 580 (emphasis added); *see Blue Diamond*, 249 F.3d at 529 ("[T]he decision to grant Rule 60(b)(6) relief is a case-by-case inquiry[.]").[5]

### III. Mr. Berger sidesteps the question of irreparable harm.

NBME argued that to obtain a preliminary injunction—an "extraordinary remedy"—the moving party *must* establish irreparable harm. Mot. at 7 (citation omitted). This Court recently stressed that a showing of irreparable harm "is *indispensable*," and "perhaps the single most important prerequisite for the issuance of a preliminary injunction." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (emphasis added). "If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Id.* (citations omitted). "That's why this circuit has held that a district court abuses its discretion 'when it grants a preliminary injunction without making specific findings of irreparable injury.'" *Id.* (citation omitted). The need to demonstrate likely irreparable harm is even more important here, where Mr. Berger was awarded a mandatory preliminary injunction, relief that alters the status quo and thus "should be granted only in extreme or exceptional cases." *Oliver v. Michigan State Bd. of Ed.*, 508 F.2d 178, 188 (6th Cir. 1974); *see also Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) ("[A]mandatory [preliminary] injunction is an extraordinary remedy to be employed only in *the most unusual case*." (emphasis added)).

---

[5] Mr. Berger does not dispute that Rule 60(b) applies, but even if it did not, this Court has the authority to dissolve the mandatory preliminary injunction given a "significant 'changes in fact, law, or circumstance since the previous ruling.'" *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (citation omitted) ("The power to modify or dissolve injunctions springs from the court's authority 'to relieve inequities that arise after the original order.'"). "Where 'significant changes . . .' threaten to convert a previously proper injunction 'into an 'instrument of wrong,' the law recognizes that judicial intervention may be necessary to prevent inequities." *Id.* (citation omitted).

Tellingly, Mr. Berger's Opposition *never* directly argues that he will be irreparably harmed if he cannot test "*now* as opposed to at the end of the lawsuit." *Sumner Cty.*, 942 F.3d at 327. Instead, Mr. Berger argues that the equities weigh in his favor based on *the merits* of his claims, *i.e.*, that, without accommodations, he "risks failing the Step 2 CK" and "will not be tested on his aptitude or knowledge." Opp. at 6. But, again, the relevant question is not whether Mr. Berger will be irreparably harmed if he cannot test with accommodations, but whether he will be irreparably if he cannot test with accommodations *now*. *Sumner Cty.*, 942 F.3d at 327. Indeed, if Mr. Berger were to prevail after the case is fully litigated, he would test with accommodations.

And, to the extent Mr. Berger suggests it would be "inequitable" to vacate an order that is not legally supportable—simply because he "has prepared for the Step 2 CK with the assumption of receiving accommodations," Opp. at 6—the Court should reject that position. If it is clear Mr. Berger will not be irreparably harmed (and it is) he should not be allowed to short-circuit the normal litigation process.

Turning to the question of irreparable harm as an afterthought, Mr. Berger does not explain why, in light of his post-ruling conduct, the Court's finding of likely irreparable harm remains valid. *See* Opp. at 6-7. Presumably recognizing it no longer is, Mr. Berger simply asserts that NBME has not met its burden (though he does not say why), and quotes the Court's decision, which obviously was issued *before* the change of factual circumstances prompting the present Motion. Opp. at 7. Regardless, NBME reiterates that—given Mr. Berger's conduct since July 2019—none of the bases on which the Court's Order relied can sustain the extraordinary relief awarded to Mr. Berger:

- <u>Lost effort in preparing</u>. The Court found that Mr. Berger will be forced to "forego[] the time and effort he has already expended in preparing for the exam[.]" Order at 56-57. But Mr. Berger's time studying will not be wasted: he still intends to take Step 2 CK, and his lack of urgency or concern over postponing his testing dates, on multiple occasions, demonstrates that he himself does not view any delay as harmful.

- <u>Delay in practicing medicine</u>.  The Court also reasoned that Mr. Berger would be irreparably harmed by a delay in "pursuing his chosen career path as a physician," caused by a delay in taking Step 2 CK and applying for a residency.  Order at 56.  But, again, if this were true, Mr. Berger should have been—but was not—motivated to test in a timely manner.  His own actions are the best evidence that he will not be irreparably harmed if he tests after litigating his case, as other plaintiffs must do.

- <u>Inability to apply for 2020 Match</u>.  It is undisputed that Mr. Berger will not participate in the 2020 Match.  *See* Berger Decl. ¶ 14; Order at 58-60; *see also* Tr.1 at 11 (argument by Mr. Berger's counsel that "[w]e are requesting the injunction at this point because the residency match is coming up . . . [T]his is why we are requesting the injunction be entered now."); *infra* note 3.  The 2020 Match, which occurred in March 2020, clearly cannot support a finding of irreparable harm.

Mr. Berger flips the relevant question, arguing that *NBME* has not been harmed "by the changes in dates" because NBME "was not precluded in any way from taking depositions or pursuing discover [*sic*]."  Opp. at 7-8.  Setting aside that Mr. Berger cites no authority requiring NBME to demonstrate harm, he is wrong.  NBME *was* disadvantaged by the expedited proceedings.  In noting that there "was ample opportunity for defendant to conduct discovery" because the complaint was filed in February 2019, Opp. at 8, Mr. Berger ignores that the preliminary injunction hearing was held in late July, *less than a month* after Mr. Berger sought a preliminary injunction on July 3, *see* Docs 20, 30, 33.  Mr. Berger also overlooks that under the May 2019 case schedule—entered just over a month before Plaintiff requested a preliminary injunction—fact discovery and expert discovery would not close until October 2019 and January 2020, respectively, and trial would not start for a year, until May 2020.  *See* Doc.15 (Calendar Order).  That case schedule was scrapped to permit an expedited timeline and hearing based on Mr. Berger's allegations of irreparable harm, leaving NBME with anything but "ample" time to conduct discovery.  *See* Opp. at 8.

For example, because NBME had insufficient time to depose Mr. Berger, Mr. Berger's expert, or Mr. Berger's parents, NBME was confronted with numerous inaccurate and inconsistent statements for the first time at the hearing.  Moreover, under the original case schedule, NBME

likely would have presented additional witnesses at trial, including a third-party testifying expert. The disadvantages to NBME caused by the expedited proceedings highlight why the Federal Rules provide for depositions and expert discovery, during which parties can test propositions in advance of trial, and why plaintiffs are not allowed to bypass this process except only in the most unusual case. Facts since the hearing have made it crystal clear that the key basis for granting the mandatory injunction—irreparable harm—is absent now, and apparently was absent all along.

## IV.     NBME's Motion was timely.

Mr. Berger half-heartedly asserts, without providing the relevant legal standard or any authority, that "it is *questionable* whether Defendant has filed a timely motion" under Rule 62.1, as NBME has known about the first delay since November. Opp. at 8 (emphasis added); *see* Fed. R. Civ. P. 62.1(a) (a motion must be "timely"). Under Rule 60(b), a motion "must be made within a reasonable time[.]" Fed. R. Civ. P. 60(c). Here, NBME filed its Motion within a "reasonable" period—just over six months after the Court's ruling, before he has tested, and after giving Mr. Berger multiple opportunities to test. NBME should not be punished for giving Mr. Berger the chance to change course and make his actions match the urgency he claimed existed when he sought "extraordinary" relief in an expedited proceeding.

## CONCLUSION

Mr. Berger has shown, by his own actions subsequent to the Court's ruling, that time is not of the essence, contrary to his sworn statements on which the Court relied in granting a preliminary motion—an extreme remedy hinging necessarily on a finding of irreparable harm. The equitable interests in finality and reliance are also inapplicable here, *Blue Diamond*, 249 F.3d at 52, whereas NBME has been disadvantaged by being ordered to provide relief that the Court might conclude was improvidently granted after fulsome discovery and the normal protections afforded by the Federal Rules. Because Mr. Berger's post-ruling actions make clear that he will not be irreparably harmed if he must wait to test, the Court should grant NBME's motion to vacate. *See Hustler*

*Cincinnati*, 810 F.3d at 426 ("[The] parties may receive modified relief when 'the original purposes of the injunction are not being fulfilled in any material respect.'" (citation omitted)).

DATED:  April 10, 2020

/s/ Erin D. French
Erin D. French (0090813)
**Vorys, Sater, Seymour and Pease LLP**
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Phone: 513-723-4022
edfrench@vorys.com

Robert A. Burgoyne
**Perkins Coie LLP**
700 Thirteenth Street, N.W. Suite 600
Washington, D.C. 20005-3960
Phone: 202-654-1744
RBurgoyne@perkinscoie.com

Counsel for Defendant NBME

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2020, a true and correct copy of the foregoing document was filed electronically on the Court's CM/ECF system and thus will be provided to all attorneys of record in this case.

/s/ Erin D. French

# EXHIBIT 1



700 13th Street, NW
Suite 600
Washington, D.C. 20005-3960

+1.202.654.6200
+1.202.654.6211
PerkinsCoie.com

Robert A. Burgoyne
RBurgoyne@perkinscoie.com
D. +1.202.654.1744
F. +1.202.624.9548

December 13, 2019

Via Email

Charles Weiner
Law Offices of Charles Weiner
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020

**Re:   Berger v. NBME,** No. 19-cv-00099 (S.D. Ohio)

Dear Chuck:

    I am responding to your letter of December 3, which reported that Mr. Berger did not test on November 18 and 19 because of an issue that arose with Prometric. Your letter was the first I had heard of this issue.

    According to your letter, "Mr. Berger contacted Prometric several days prior to the scheduled November 18 and 19 examination to ensure that his accommodations were all set for his testing." He was apparently "advised by Prometric that the accommodations profile showed double time but did not include 30 minute off-the-clock rest breaks as stated on Mr. Berger's accommodations letter," and Prometric "suggested that Mr. Berger reschedule his exam in order to straighten out the accommodations issue." He is now scheduled to test on December 27 and 299, 2019.

    I am sorry to learn that Mr. Berger encountered this issue. As you will see from the attached email, NBME notified Prometric in late September of the accommodations that Mr. Berger was authorized to receive. I am not sure what happened between that time and Mr. Berger's scheduled November test dates.

    Mr. Berger apparently rescheduled his November 18 and 19 test dates on November 12th. If he had simply contacted you or NBME at that time, I suspect the issue could have been addressed immediately, thereby enabling him to test on the November dates as scheduled. We had of course anticipated that he would have tested some time ago, given his statement to the Court in seeking a preliminary injunction that he had to test by August 28, 2019 to avoid irreparable harm.

Perkins Coie LLP

Mr. Charles Weiner
December 13, 2019
Page 2

    I do not anticipate that any issues will arise in connection with the test administration he has scheduled for December 27 and 28, 2019. If anything does come up, however, please have him notify you immediately so that you can let me know. I will then coordinate directly with NBME so that we can get back to you promptly.

    Thanks very much.

Very truly yours,

*[signature]*

Robert Burgoyne

Perkins Coie LLP

# Prometric Email

| | | | |
|---|---|---|---|
| **From:** | disabilityservices@nbme.org | **Sent:** | 09/23/2019 11:23:46 AM |
| **To:** | clarissa.beltran@prometric.com ;NBMETA@prometric.com | **Created:** | 09/23/2019 11:17:36 AM |
| **Cc:** | JYarrison@ECFMG.org;LJohnson@ecfmg.org; | **Employee:** | Jennifer Cohen |

**Subject:** Candidate with Test Accommodations / Berger, Brendan James

ref:_00D46pfBg._5004663y6V:ref

Name: Berger, Brendan James

Candidate ID: 0-893-419-2

Phone#: 15134443568

Exam: STEP2

Eligibility begins: 01-OCT-2019

Eligibility ends: 31-DEC-2019

Region: United States and Canada

The above named applicant has been approved the following accommodations:

- Extended time

- Off the clock (computer shut down) additional break not to exceed 30 minutes each day
Exminee will alert the test center staff to shut down the computer, which will stop the examination clock. Standard break time and off-the-clock break time must be taken between test blocks. When ready to resume, examinee wukk ask the test center staff to restart the computer.

- Separate testing room